IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv627 |
| | ) | (TSE/JFA) |
| NAME.COM LLC, D/B/A PROTECTED | ) | |
| DOMAIN SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

3M's world famous mark and logo has been brazenly lifted and used as the prominent identifier for a mass of illegal online gambling sites. The number and location of sites are shifting by the day, and the shell game continues as 3M acts to track down the responsible parties. A screen shot of the home page from Defendants' cornerstone website (www.mmmbet.net) is shown below:

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

CAMERON/McEVOY
PLLC



3M is suffering irreparable harm from Defendants' purposeful infringement and dilution from this illicit activity, and unless Defendants are enjoined from continuing this course of action, irreparable harm will continue.  3M thus asks the Court to enter an order preliminarily enjoining Defendants' illegal and fraudulent activity.

## I.   FACTUAL BACKGROUND

### A.   3M and the 3M Marks

Plaintiff 3M Company ("3M") is a long-established, multi-national company that provides a wide variety of products and services in a number of different fields.  See Appendix 1, Declaration of Anne Greer ("hereinafter "Greer Decl.") at ¶¶ 3-5, 8-16, 22.  For decades, 3M has built and maintained substantial goodwill in its operations and trademarks.  *Id.* at ¶¶3-8, 18-30.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898  FAX 703.273.8897

Cameron/McEvoy
PLLC

Beginning at least as early as the 1900's, 3M adopted and has continuously used the famous

mark and trade name 3M, as well as various other marks and names that include 3M (the "3M

Mark"), to indicate the source, affiliation, and sponsorship of its products and services. *Id.* The

3M Mark distinguishes 3M's products and services from those of others, and the public has come

to equate the 3M Mark with quality products and services. In accordance with federal law, 3M

has registered the 3M Mark on the Principal Register of the United States Patent and Trademark

Office, and 3M now owns numerous federal registrations for its 3M Mark covering various

goods and services. *Id.* at ¶ 3. These registrations include:

| MARK | REG. NUMBER | GOODS |
|---|---|---|
| 3M | 405,413 | (Int'l Class: 1) Adhesive Cements. |
| 3M | 561,157 | (Int'l Class: 3) Coated abrasives. |
| **3M** | 587,909 | (Int'l Class: 21) Polishing sheet or strip material (frequently sold in the form of endless belts) comprising a flexible backing upon which is bonded a layer of resilient particles |
| 3M COMPANY | 612,848 | (Int'l Class: 17) Masking tape, cellophane tape, acetate fiber tape, and other pressure-sensitive adhesive tapes |
| **3M** | 700,268 | (Int'l Class: 1, 17) Light reflective materials in sheet, strip, and liquid form |
| 3M | 766,144 | (Int'l Class: 1)  Primer for adhesives. |
| **3M** | 793,456 | (Int'l Class: 10) Dental restorative materials |
| **3M** | 887,227 | (Int'l Class: 5) Medical cold pack |
| **3M** | 893,544 | (Int'l Class: 6) Thin metallic strips for concealment in books or periodicals |
| **3M** | 901,982 | (Int'l Class: 3) Abrasive wheels |
| **3M** | 906,050 | (Int'l Class: 22) Synthetic fibers embedded in a resinous backing and sold in the form of sheets, discs, strips or continuous rolls, for general use in the |

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy PLLC

| | | |
|---|---|---|
| | | industrial arts |
| 3M | 985,125 | (Int'l Class: 10) Orthoptic eye patch |
| **3M** | 1,042,074 | (Int'l Class: 3) Soap pads |
| **3M** | 1,361,367 | (Int'l Class: 5) Culture media for use in biological laboratories |
| **3M** | 1,398,525 | (Int'l Class: 17) Plastic film used for making labels |
| **3M** | 1,410,228 | (Int'l Class: 9) Protective equipment-namely, disposable hoods and breathing tubes for supplying fresh air to painters during spray painting of vehicles |
| **3M** | 1,416,082 | (Int'l Class: 26) Bows made from decorative ribbon |
| **3M** | 1,426,563 | (Int'l Class: 17) Adhesive masking tape |
| **3M** | 1,434,585 | (Int'l Class: 9) Electrical connectors |
| **3M** | 1,445,795 | (Int'l Class: 1) Small ceramic shperes for industrial use as a filler |
| **3M** | 1,467,108 | (Int'l Class: 9) Prerecorded video tapes |
| **3M** | 1,475,808 | (Int'l Class: 9) Electromechanical control units for diluting and dispensing cleaning chemicals for use in the custodial market and units for preventing backflow to the water source therefrom |
| **3M** | 1,492,238 | (Int'l Class: 17) Reinforcing materials, not of metal, for use on electrical and communications cable |
| **3M** | 1,531,747 | (Int'l Class: 9) Fabric woven from ceramic fibers for use as a high temperature resistant textile in the aerospace and other industries |
| **3M** | 1,540,295 | (Int'l Class: 9) Optical fiber splicing kits, comprising an assembly tool and a module for holding the splice fibers together |
| 3M | 1,550,833 | (Int'l Class: 9) Connectors for electrical and communications wires for use in the telephone industry. |
| **3M** | 1,584,213 | (Int'l Class: 1) Fire extinguishing compositions |

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
P.L.L.C.

| | | |
|---|---|---|
| **3M** | 1,584,310 | (Int'l Class: 5) Teat dip for use as a protective barrier on the teats of dairy cows to keep common bacterial organisms known to cause mastitis from entering the teat canal |
| **3M** | 1,611,779 | (Int'l Class: 1) Adhesive coated plastic film for use in the printing industry for attaching printing plates to printing machines |
| 3M | 1,717,559 | (Int'l Class: 8) hand held tool; namely, a dispenser for adhesive tape used in the construction industry. |
| **3M** | 1,831,027 | (Int'l Class: 5) House mark for pharmaceuticals for the treatment of angina, arrhythmia, asthma, rheumatoid arthritis and osteoarthritis, acid indigestion and heartburn, inflammation, pain, muscle tenseness, food craving, metal poisoning and urinary septicemia |
| **3M** | 1,958,973 | (Int'l Class: 3) Carpet cleaning preparations |
| 3M | 1,958,974 | (Int'l Class: 3) Carpet cleaning preparations |
| 3M | 1,959,107 | (Int'l Class 4) Dust control spray and dust laying and absorbing compositions for use on spray booth walls for use in the automotive industry. |
| **3M** | 1,997,394 | (Int'l Class: 17) Plastic sheet materials and laminations thereof to plastic for use in manufacturing limited use garments |
| 3M | 2,025,128 | (Int'l Class: 16) Disposal wipes not impregnated with chemicals or compounds. |
| 3M | 2,063,090 | (Int'l Class: 9) Computer mouse pads. |
| **3M** | 2,072,006 | (Int'l Class: 3) Preparations for cleaning, polishing, glazing, waxing, restoring or preserving finished surfaces of motorized vehicles; rubbing compound, gloss enhancer, plastic, chrome and metal polish, plastic cleaner, vinyl cleaner and restorer, tire and wheel cleaner, tire dressing for motorized vehicles |

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030

TEL 703.273.8898   FAX 703.273.8897

CAMERON McEVOY

| | | |
|---|---|---|
| **3M** | 2,829,934 | (Int'l Class: 5) Insect repellent<br>(Int'l Class: 8) Fishing hand tools, namely, cutters, clamps [ and pliers ]<br>(Int'l Class: 28) Fishing tackle, equipment and accessories; namely, fly lines, leaders, tippets, reels, fly boxes, fishing poles and rods; [ fly tying tools and materials, namely, feathers, furs, tinsels, yarn, chenille and magnifiers; fishing bags, creels, ] cases and wallets, [ rod holders, ] rod and reel cases, reel pouches; [ full line of fishing flies; ] and golf gloves<br>(Int'l Class: 38) Pre-recorded audio and video cassettes, discs, tapes and films featuring instruction and information about fishing |
| 3M | 3,208,474 | (Int'l Class: 40) Manufacturer of transdermal patches containing pharmaceutical preparations to the order and specification of others |
| **3M** | 3,457,691 | (Int'l Class: 14) Clocks |

These registrations are valid and subsisting, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.*

3M has long maintained and operated an official website at the domain names 3m.com and mmm.com. *Id.* at ¶ 7. 3M also operates various other websites accessible via domain names incorporating "3m," such as 3mtechnologies.com, 3mcompany.com, 3mtouchsystems.com, and 3munitek.com. *Id.* 3M extensively uses its 3M Mark and 3M Logo on its official websites, with the 3M Logo nearly always appearing in the upper left corner of the webpage. *Id.*

**B.   Defendants' Activities**

The Registrant Defendants[1] own and operate online gambling websites. The Registrant Defendants own numerous domain names that include the terms "3m" or "mmm" (the "Infringing Domains") and others, and operate interconnected websites at these domains (the

---

[1] As that term is defined in paragraph 7 of the Complaint.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
PLLC

"Infringing Websites").  *See* Appendix 2, Declaration M. Espenshade (hereinafter "Espenshade Decl.") at ¶¶ 2, 3, Exs. A, B.  The Registrant Defendants promote their online gambling activities displaying virtually identical copies of the 3M Logo (the "Infringing Mark(s)") on the Infringing Websites.  *Id.* at ¶3, Ex. B.[2]  The Infringing Websites display the Infringing Marks, and many of the Infringing Websites redirect and link to each other.  *Id.*  The domain name mmmbet.net appears to be the centerpiece of Defendants' infringing activity, as most, if not all, of the other Infringing Domains and Infringing Websites are connected or related to that website in some manner.  *Id.*

The Hosting Service Defendants[3] each provide Internet hosting services and/or otherwise have control over one or more of the Infringing Websites.  *Id.* at ¶4, Ex. C.

**C.      3M's Attempts to Resolve This Dispute Amicably**

On April 14, 2011, 3M's counsel sent letters to many of the Registrant Defendants using the contact information they provided in the Whois record for each respective Infringing Domain, demanding that they cease use of the Infringing Domains and Infringing Marks, and transfer the Infringing Domains to 3M.  *Id.* at ¶5, Ex. D.  3M's counsel also sent letters to the corresponding Hosting Service Defendants, demanding that they cease providing hosting services for the Infringing Websites.  *Id.* at ¶6, Ex. E.  3M's counsel have sent additional letters as appropriate, including where the content changed, hosting services were switched, and additional problematic sites were discovered.  *Id.*  As of the date of filing the Complaint,

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898    FAX 703.273.8897

Cameron/McEvoy
PLLC

---

[2] Some of these printouts include screen shots for websites taken before content was removed by hosting services or otherwise.
[3] As that term is defined in paragraph 16 of the Complaint.

Registrant Defendants and Hosting Service Defendants had either refused to fully comply with or had ignored 3M's demands.[4]  *Id.* at ¶7.

## II.   ARGUMENT

To obtain preliminary injunctive relief in this Circuit, the movant must clearly establish: "'[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'"  *The Real Truth About Obama, Inc. v. Federal Election Comm'n,* 575 F. 3d 342, 345 (4th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S. Ct. 365, 374-376 (2008)).   Consideration of each of these factors demonstrates that 3M is entitled to a preliminary injunction in this case.

### A.   3M Is Highly Likely to Succeed on Its Trademark Infringement and Unfair Competition Claims

The first factor requires a showing that the movant has a substantial likelihood of success on the merits.  In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff must show that "it has a trademark that (1) is valid and (2) can be protected, and that (3) the defendant's use of an imitation of that trademark is likely to confuse consumers."  *Toolchex, Inc. v. Trainor,* 634 F.Supp.2d 586, 593 (E.D. Va. 2008); *Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 170 (4th Cir. 2006).   3M easily meets each of these elements.

### 1.   The 3M Mark is Valid and Protectable

To show that a mark is valid and can be protected, a party must provide evidence "that (1) the mark has been used in such a manner that its nature and function are readily apparent and

---

[4] Or their letters were returned undeliverable.  3M notes that there were several additional hosting services that did respond cooperatively to 3M's demands by immediately removing the content from the problematic websites. Those companies are not named as defendants here.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

recognizable without extended analysis or research, (2) the party registered and owns the mark; and (3) the party is exclusively entitled to use the mark in commerce." *Toolchex*, 634 F. Supp. 2d at 593-594 (internal quotations omitted).   Here, there is no question that 3M owns a valid and protectable mark.

First, 3M has consistently used its 3M Mark is such a manner that its nature and function are readily apparent and recognizable.  Greer Decl. at ¶ 7, 8, 10, 18-23.  3M has plainly labeled its numerous products with the 3M Mark and 3M Logo, and has used its Mark in a manner clearly communicating to consumers that 3M is the source of all products and services bearing the 3M Mark. *Id.* 3M has also made extensive use of its 3M Mark on its official website, as the 3M Logo is prominently displayed in the upper left had corner of the webpage as users navigate the 3M website. *Id.* at ¶ 7.

Second, 3M owns numerous federal registrations for its 3M Mark. *Id.* at ¶ 3.  As 3M has secured hundreds of federal registrations for its 3M Mark, it is entitled to a presumption that the mark is valid and owned by 3M, and that 3M has the exclusive right to use the mark in commerce.  15 U.S.C. § 1057(b); *see also U.S. Search, LLC v. U.S. Search.com Inc.,* 300 F.3d 517, 524 (4th Cir.2002) ("It is well established that when the PTO issues a certificate of registration, that registration provides the registrant with *prima facie* evidence of 1) the validity of the mark and its registration, 2) the registrant's ownership, and 3) the registrant's exclusive right to use the mark on or in connection with the goods and services specified in the certificate of registration.") (internal quotations omitted).

## 2.    Defendants' Use is Likely to Confuse Consumers

Defendants' use of the Infringing Websites and Infringing Domains is highly likely to confuse consumers as to the source, affiliation and sponsorship of their services.  15 U.S.C. §§

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

1114(1), 1125(a)(1)(A).   In determining whether a likelihood of confusion exists, the Fourth

Circuit considers a number of factors:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the
> marketplace; (2) the similarity of the two marks to consumers; (3) the similarity
> of the goods or services that the marks identify; (4) the similarity of the facilities
> used by the markholders; (5) the similarity of advertising used by the
> markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the
> defendant's product; and (9) the sophistication of the consuming public.

*George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 393 (4th Cir. 2009); *see also*

*Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984) (setting forth factors one

through seven); *Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455, 463-64 (4th Cir.

1996) (identifying factors eight and nine).   Not all of these factors will be relevant in every

trademark dispute, and there is no need for each factor to support a plaintiff's position on the

likelihood of confusion issue. *Synergistic Int'l, LLC,* 470 F.3d at 171.   Analysis of these factors

compels the conclusion that Defendants' calculated behavior is highly likely to cause confusion.

    The 3M Mark is highly distinctive due to its inherent distinctiveness as well as 3M's

long, extensive use and promotion of the Mark.   Defendants are[5] using virtually identical

imitations of the 3M Mark and Logo on their Infringing Websites.   Moreover, the Infringing

Domains each include the term "3m" or "mmm" with generic terms (such as "casino" or "thai")

and are therefore highly similar.   Both the distinctiveness and similarity factors weigh heavily in

favor of a likelihood of confusion.

    The similarity of the methods employed by the parties to transact their business also

favors a likelihood of confusion.   3M and the Registrant Defendants all operate Internet websites

as an integral part of their business.   Thus, each of the parties is "using the Internet as a facility

through which services are advertised and provided, which increases the likelihood of confusion

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy   P.L.L.C.

---

[5] Or were, until such sites were removed by the hosting services or otherwise.

between the two marks." *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.

Supp. 2d 488, 499 (E.D. Va. 1999).   Certain aspects of the Internet make it more likely that

consumers seeking 3M on the Internet will instead find Defendants' websites, which extensively

use the 3M Mark, and become confused. As this Court explained in *Washington Speakers:*

> [A] domain name allows a user to access directly the website associated with that domain
> name. When a user wishes to find a particular website, but does not know the domain
> name of that website, he or she will likely use an Internet "search engine" to pull up
> websites using keywords specified by the user in his or her search. Searches may yield
> hundreds or even thousands of websites, if the user's keywords commonly appear in
> websites. Thus, a search engine can be an unwieldy and cumbersome tool. To facilitate
> access to their websites, individuals and companies typically prefer to have a domain
> name that is memorable and that may even be surmised by users who do not know their
> exact website address... Thus, a company that owns an intuitive domain name owns a
> potentially valuable asset...

*Id.*

Defendants' intent also compels a finding of likelihood of confusion.  This factor has

been recognized as "a crucial one" in domain name infringement cases.  *Id.* at 500 (holding that

evidence suggesting that domain names were selected because of their similarity to others'

trademarks suggests bad faith and is compelling evidence that the domain name will in fact

confuse consumers by its similarity to the protected mark).   Here, Defendants registered

numerous domains that feature the terms "3m" and "mmm," and have made extensive use of an

imitation of the 3M Logo on their Infringing Websites.  As this Court has recognized, "[t]he

logical purpose of registering [an infringing domain name] and using Plaintiff's marks ...

prominently on the website, is to capitalize on consumer confusion as to the source, sponsorship,

affiliation,  or  endorsement  of  its  products  and  services."  *Volkswagen,  AG  v.*

*Volkswagentalk.com*, 584 F. Supp. 2d 879, 885 (E.D. Va. 2008).   Moreover, providing

"materially false contact information to a domain name registrar, domain name registry, or other

domain name registration authority in registering, maintaining, or renewing a domain name used

in connection with the violation" raises a presumption of a willful violation.  15 U.S.C. §1117(e).

Here, many of the registrant details displayed in the Whois record are materially false or

incomplete.[6] Espenshade Decl. at ¶¶ 2, 9.  This factor strongly favors 3M.

Considering all relevant factors, confusion is highly likely and 3M is likely to succeed on

the merits of its federal trademark and unfair competition claims.[7]

**B.      3M Is Likely to Succeed on Its Dilution Claims**

In order to show trademark dilution under the Trademark Dilution Revision Act of 2006

("TDRA"), 15 U.S.C. § 1125(c), a plaintiff must show that "it (1) owns a distinctive famous

mark, (2) the use by another in commerce of which (3) is likely to cause dilution by blurring or

tarnishment, regardless of the presence or absence of actual or likely confusion, of competition,

or of actual economic injury." *Volkswagen,* 584 F. Supp. at 882.

The fame of the 3M Mark cannot reasonably be disputed.  Indeed, several courts have

found the mark to be famous.  *See, e.g., 3M Co. vs. 3M Technology,* No. 04-589, 5 n.1 (C.D. Cal.

July 6, 2004); *3M Company v. 3M, Inc.,* No. 02-599, 5 (N.D. Ohio 2002); *Minn. Mining & Mfg.*

*Co. v. Evans,* No. 99-1285, 2 (D. Minn. 1998).  (*See* Appendix 3.)  The Mark has acquired such

goodwill and recognition through national and international advertising and promotion that the

general consuming public of the United States has come to associate the 3M Mark as a

designation of source of the goods and services of 3M.  *See generally,* Greer Decl.  3M has used

---

[6] For example, emails sent to the listed email addresses for 3mbkk (the listed registrant for 3mbkk.com), Luca Toni (registrant for thai3m.com) and 3M Specialist (registrant for thailand3m.net), were returned undeliverable. Espenshade Decl. at ¶9, Ex. F.  Additional details about the false and incomplete contact information for the Registrant Defendants are listed at Espenshade Decl. at ¶9.

[7] 3M also raises claims for trademark infringement and unfair competition under Virginia law.  Because the tests for trademark infringement and unfair competition under federal law and Virginia law are essentially the same, with all addressing likelihood of confusion, a finding that 3M is likely to succeed on the merits of its claim under Section 43(a) of the Lanham Act also establishes that 3M is likely to succeed on its common-law claims.  *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 930 n. 10 (4th Cir. 1995); *Sweetwater Brewing Co. v. Great Am. Rests., Inc.,* 266 F. Supp. 2d 457, 460-61 (E.D. Va. 2003).

-12-

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
PLLC

its 3M Mark for over a century, and through such time has expanded its use of the 3M Mark to more than 55,000 products and services in a wide variety of fields.  Greer Decl. at ¶¶ 8, 10.  3M has invested substantial resources and time in promoting its 3M Mark in the United States and foreign countries.  *Id.* at ¶¶ 3 - 5, 7, 9, 15-24, 26-27.  As a result of 3M's extensive use and promotion of its 3M Mark, the Mark became famous long before the Defendants' infringing activity commenced.  *See, e.g., Minn. Mining & Mfg. Co. v. Evans*, No. 99-1285, 2 (finding 3M mark to be famous in 1998); *see generally*, Greer Decl.  Defendants' use of the Infringing Marks and Infringing Domains in conjunction with websites providing gambling services is in commerce.  *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir.2001) (noting no dispute that the defendant's use of the mark PETA in the domain peta.org was "in commerce").

Defendants' conduct is highly likely to cause dilution by blurring of the famous 3M Mark.  The TDRA defines "dilution by blurring" as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of a famous mark." 15 U.S.C. § 1125(c)(2)(A).  The statute provides the following factors to consider in determining whether a mark is likely to cause dilution by blurring:  "(i) The degree of similarity between the mark or trade name and the famous mark[;] (ii) The degree of inherent or acquired distinctiveness of the famous mark[;] (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark[;] (iv) The degree of recognition of the famous mark[;] (v) Whether the user of the mark or trade name intended to create an association with the famous mark[; and] (vi) Any actual association between the mark or trade name and the famous mark."

These factors weigh heavily in favor of a finding of dilution by blurring. The names and logos used on the Infringing Websites are identical to the 3M Mark, and many are virtually identical to the 3M Logo in that they are displayed in red in the identical font style. Espenshade Decl. at ¶3, Ex. B. Moreover, they are often displayed in the top left-hand corner of the website, as 3M does on nearly every page of its own site. *Id.*; Greer Decl. at ¶ 7. Indeed, it appears the Registrant Defendants may have simply copied and pasted the 3M Logo into their own site designs (see below):



| 3M Logo | Infringing/Diluting Mark |

This high similarity supports the conclusion that the Registrant Defendants intended to create an association with the 3M Mark.

As discussed above, the 3M Mark is highly distinctive. Moreover, 3M is engaging in substantially exclusive use of the mark; indeed, it appears there are no federally registered marks that include "3M" that are *not* owned by 3M. The 3M Mark is prominently and consistently featured on nearly all of its products. Defendants are intending to create a mental association among consumers between the Infringing Domains with the 3M Mark, impairing the distinctiveness of the 3M Mark. *See People for the Ethical Treatment of Animals,* 113 F. Supp. 2d at 920 (finding dilution by blurring where "Defendant used the identical PETA Mark to mentally associate PETA.ORG to the PETA Mark").

Defendants' conduct is also likely to cause dilution by tarnishment of 3M's mark. The TDRA defines "dilution by tarnishment" as the "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Here, the Defendants' actions are highly likely to damage the reputation

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
P.L.L.C.

-14-

of the 3M Mark by associating it with online gambling, a service which is illegal in the United States and many other countries. Courts have not hesitated to find dilution by tarnishment when a famous mark is used in conjunction with illegal or unsavory activities. *See, e.g., J&B Wholesale Distributing, Inc. v. Redux Beverages, LLC,* 85 U.S.P.Q.2d 1623, 2007 WL 4563457 (D. Minn. 2007) (issuing a preliminary injunction after holding Plaintiff's NO NAME mark for food products was infringed and diluted by defendant's NO NAME mark for an energy drink formerly called "Cocaine"); *see also Kraft Foods Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 948 (N.D. Ill. 2002) (finding use of KING VELVEEDA in adult film tarnished VELVEETA mark, stating, "[t]arnishment is often found when the senior mark is placed in the context of sexual activity, obscenity or illegal activity"); *Am. Online, Inc. v. IMS,* 24 F. Supp. 2d 548, 552 (E.D. Va. 1998) (finding dilution by tarnishment where defendant sent thousands of spam emails displaying Plaintiff's AOL mark).

Consequently, 3M is likely to succeed on the merits of its dilution claims.

### C.    3M Is Likely to Succeed on Its Cybersquatting Claims

The Defendants' actions also violate the Anticybersquatting Consumer Protection Act ("ACPA"). The ACPA imposes liability in a civil action on a person by the owner of a mark if, without regard to the goods or services of the parties, that person:

> (i)  has a bad faith intent to profit from that mark and
> (ii) registers, traffics in, or uses a domain name that—
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]
>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark....

15 U.S.C. § 1125(d)(1)(A); *International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco,* 192 F. Supp. 2d 467, 484 (E.D.Va. 2002). The infringing Domain Names are all identical or confusingly similar to the 3M Mark, as they all include the

-15-

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy
PLLC

distinct identifier "3M" or "MMM." Moreover, as discussed above, 3M is likely to succeed on

its claims of trademark infringement and trademark dilution.

A review of the nine nonexclusive statutory factors for courts to consider in determining

whether a domain name has been registered or used in bad faith weighs heavily against

Registrant Defendants.[8] The Registrant Defendants have no legitimate rights in the 3M Mark–

there is no evidence that the Registrant Defendants own, or claim to own, any rights in any

trademark or service mark that is identical or similar to the 3M Mark.   The Registrant

Defendants have not engaged in prior, bona fide use of the 3M Mark, as 3M has used the Mark

for over one-hundred years and there is absolutely no evidence that the Registrant Defendants'

use pre-dates 3M's use of its Mark.   The Registrant Defendants have not engaged in any bona

fide non-commercial or "fair use," of the 3M Mark.  This Court has recognized that the purpose

of this factor is to "protect domain name registrants and users engaged in protected activities,

such as political criticism or parody." *International Bancorp.* at 486.   As the Registrant

Defendants use the Infringing Domains to provide a commercial service, namely online

gambling, this factor also supports a finding of bad faith intent.   The Registrant Defendants'

---

[8] The factors are: (1) the trademark or other intellectual property rights of the registrant, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having intent to use, the domain name in the bona fide offering of any goods or services or the person's prior conduct indicating a pattern of such conduct; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (8) the person's registration or acquisition of multiple domain names that the person knows are identical or confusingly similar to the distinctive marks of others or are dilutive of the famous marks of others; and (9) the extent to which the mark incorporated in the domain name is distinctive and famous within the meaning of the Federal Trademark Dilution Act. *See* 15 U.S.C. § 1125(d)(1)(B)(i).

1325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy PLLC

intent to divert consumers from 3M's online location is evidenced by their wholesale inclusion of the marks "3m" and "mmm" into the Infringing Domains.   Further, the Registrant Defendants provided material and misleading contact information when applying for the registration of the Infringing Domains, as the contact information listed in the Whois records for many of the Infringing Domains is incomplete, inaccurate, or false. Espenshade Decl. at ¶¶ 2, 9, Exs. A, F-H.   The Registrant Defendants registered numerous domain names that contain 3M's mark, raising an inference of bad faith under the eighth factor. *International Bancorp.* at 487 (noting the fact that the plaintiff companies registered forty-three domain names that contain the term "Casino de Monte Carlo" raised an inference of bad faith).   As the overwhelming majority of the statutory factors set out by § 1125(d)(1)(B)(i) favor a finding of bad faith, 3M is likely to succeed on the merits of its cybersquatting.

**D.     3M is Likely to Succeed on Its Claims for Contributory Liability**

To be liable for contributory trademark infringement, a defendant must "(1) intentionally induce another to infringe a trademark, or (2) continue to supply a product to a third party with actual or constructive knowledge of the infringement." *Size, Inc. v. Network Solutions, Inc.,* 255 F.Supp.2d 568, 573 (E.D.Va. 2003).   The Hosting Service Defendants continued to supply the Infringing Domains and Infringing Websites with Internet hosting services after the sites were specifically brought to the Hosting Service Defendants' attention.   Thus, 3M is likely to succeed on the merits of its contributory infringement, cybersquatting, dilution, and related claims. *See Microsoft Corp. v. Shah,* 98 U.S.P.Q. 2d 1404, 1406-08 (W.D. Wa. 2011) (denying motion to dismiss claims for contributory infringement and contributory dilution stemming from defendants' provision of hosting services).

-17-

Importantly, the Hosting Service Defendants provide Internet hosting, rather than functioning simply as domain name registrars.  In *Size*, this Court relied on the analysis of *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir.1999) in finding that domain name registrars are not liable for contributory trademark infringement.  *Size* at 572-773. However, "*Lockheed Martin* does not foreclose the possibility that ISPs may be liable for contributory trademark infringement." *Gucci Am., Inc. v. Hall & Assocs.,* 135 F.Supp.2d 409, 413 (S.D.N.Y.2001); *see also Microsoft,* 98 U.S.P.Q. 2d at 1408 ("As with contributory cybersquatting, contributory dilution is a tort-like cause of action which naturally lends itself to the theory of contributory liability.").  The *Gucci* court accordingly denied a motion to dismiss a claim of contributory trademark infringement against a provider of internet hosting services. *Id.* at 422.  Another court recently stated regarding internet hosting service providers:

> Defendants physically host websites on their servers and route internet traffic to and from those websites.  This service is the Internet equivalent of leasing real estate.   Defendants' services, combined with Defendants' ability to remove infringing websites, entails a level of involvement and control that goes beyond 'rote translation'... Defendants cannot remain 'wilfully blind' to trademark infringement taking place on their servers ...[A] reasonable jury could find that Defendants knew third-parties were infringing Plaintiffs trademarks and remained wilfully blind despite the ability to terminate its services to those third parties.

*Louis Vuitton Malletier, SA v. Akanoc Solutions, Inc.,* 591  F.Supp.2d 1098, 1112 (N.D. Cal. 2008) (finding a reasonable jury could conclude that the defendant internet hosting provider was liable for contributory trademark infringement where plaintiff sent defendant notices of infringing activity on websites to which defendant was providing internet hosting services, with no action taken by defendant to remove or cease service to infringing websites).  As was the case in *Louis Vuitton,* counsel for 3M has sent notices to the Hosting Service Defendants of the infringing activity occurring on the Infringing Websites to which the Hosting Service Defendants provide hosting services, and the Hosting Service Defendants have failed to cease providing

-18-

hosting to these websites.  Espenshade Decl. at ¶¶ 7, 8.  Accordingly, 3M is likely to succeed on the merits of its claims for contributory liability.

### E.      3M Will Suffer Irreparable Harm Without Injunctive Relief

Courts consistently find that injury to reputation or goodwill is not easily measured in monetary terms and, thus, is deemed irreparable.  *See Multi-Channel TV Cable Co. v.Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("[W]hen the failure to grant preliminary relief creates the possibility of . . . the loss of goodwill, the irreparable injury prong is satisfied."); *see also S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.").

In trademark infringement cases, it is well settled that once a likelihood of confusion has been established, irreparable harm is presumed.  *See Scotts Co.* v. *United Industries Corp.,* 315 F. 3d 264,273 (4th Cir. 2002) ([A] presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion.");  *Toolchex,* 634 F. Supp. 2d at 591 ("The Fourth Circuit has recognized that 'irreparable injury regularly follows from trademark infringement.'") (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995)).  A defendant's unauthorized use of a plaintiff's trademarks gives rise to irreparable injury, as "it causes the plaintiff to lose control of its business reputation, and there is a substantial likelihood of confusion to the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the goodwill and reputation of the plaintiff." *Allegra Network LLC v. Reeder*, 2009 WL 3734288, *2 (E.D. Va., Nov 04, 2009) (quoting *Merry Maids Ltd. P'ship v. Kamara,* 33 F. Supp. 2d 443, 445 (D. Md. 1998)).

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron/McEvoy

Here, the confusion created by Defendants' brazen misuse of the 3M Mark establishes that the public is likely to be deceived into believing that 3M endorses or approves of Defendants' activities. 3M's reputation and goodwill are also likely to be tarnished and damaged by Defendants' association of 3M's famous logo with illegal gambling activities. This consumer confusion and resulting damage to goodwill are precisely the types of harm that the Lanham Act and its injunctive remedies are designed to cure.

### F.     The Balance of the Equities Favors 3M

The harm to 3M from Defendants' infringement and dilution far outweighs any inconvenience to Defendants if their use is enjoined. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l, inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Any claimed harm by Defendants from being forced to cease infringing activity is not cognizable. *See Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1333-34 (7th Cir. 1977) (finding that the hardship of requiring one who willfully infringes on another's mark to cease that infringement "merit[s] little equitable consideration"); *KFC Corp. v. Goldey*, 714 F. Supp. 264, 267 (W.D. Ky. 1989) ("[C]ourts have usually held that where the plaintiff is an authorized trademark holder and the defendant is improperly using the trademark, then the threatened harm to the trademark owner outweighs the threatened harm to the defendant."). Here, the only consequence to Defendants of the Court's issuance of a preliminary injunction would be that Defendants would no longer be able to fraudulently promote their gambling websites as though they were sponsored by 3M. Defendants can continue operating their gambling websites using non-

-20-

infringing marks and domains.   Consequently, this factor weighs in favor of preliminary injunctive relief.

**G.      The Public Interest Weighs in Favor of Preliminary Injunctive Relief**

This Court has held that in trademark infringement cases, the public interest lies in favor of granting a preliminary injunction, because "preventing infringement … serves the public interest in preventing consumer confusion." *Allegra,* 2009 WL 3734288 at *3. "Preventing consumers from being confused serves the public interest … as does preventing trademarks from being used deceptively." *Toolchex,* 634 F.Supp.2d at 594 (internal citations omitted).   In this case, the injury to the public is clear, and the injunctive relief which 3M seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has a right not to be confused or defrauded as to the source of the services offered by Defendants, or as to the identity of the owner of trademarks and services marks used in connection with those services.   Unless Defendants' continuing misuse of the 3M Mark is enjoined, the public will continue to be confused and misled by Defendants' conduct.

**III.      CONCLUSION**

For the foregoing reasons, 3M respectfully requests that this Court grant its Motion for Preliminary Injunction.  A proposed order is attached.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron / McEvoy
P.L.L.C.

DATED:  June 24, 2011.                    Respectfully submitted,


                                          /s/_____
                                          Timothy J. McEvoy, VSB No. 33277
                                          Sean Patrick Roche, VSB No. 71412
                                          CAMERON MCEVOY, PLLC
                                          11325 Random Hills Road, Suite 200
                                          Fairfax, Virginia 22030
                                          (703) 460-9341 (Direct)
                                          (703) 273-8898 (Main)
                                          (703) 273-8897 (Facsimile)
                                          tmcevoy@cameronmcevoy.com
                                          sroche@cameronmcevoy.com
                                          ATTORNEYS FOR PLAINTIFF
                                          3M COMPANY


                                          William G. Barber, Esquire
                                          (Admitted *Pro Hac Vice*)
                                          Wendy C. Larson, Esquire
                                          (Admitted *Pro Hac Vice*)
                                          PirkeyBarber LLP
                                          600 Congress Avenue, Suite 2120
                                          Austin, Texas  78701
                                          (512) 322-5200
                                          (512) 322-5201 (Facsimile)
                                          bbarber@pirkeybarber.com
                                          wlarson@pirkeybarber.com

                                          ATTORNEYS FOR PLAINTIFF
                                          3M COMPANY

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

CAMERON / McEvoy
PLLC

-22-