IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| 3M COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:11cv627 |
| | ) |
| CHRISTIAN INVESTMENTS LLC, | ) |
| D/B/A PROTECTED DOMAIN | ) |
| SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On July 29, 2011, this Court held a hearing and issued an order that certain defendants be temporarily enjoined from certain activities alleged in this lawsuit (the "Order").[1] The Order is limited to those defendants that have been formally served with the Summons and Complaint, namely, Christian Investments LLC, GoDaddy.com, Inc. and Domains by Proxy, Inc. Order at Dkt. # 46. The Order is a temporary restraining order, effective for only ten days after Plaintiff 3M Company ("3M") posts bond, renewable for another ten days after that. *Id.* 3M submits that the Order should not be so limited, but rather it should be entered as to all defendants in the case (including those that have not yet been formally served with summonses), and it should be a preliminary injunction, *i.e.*, it should remain in effect pending final determination at trial or otherwise. This result is supported by precedent and the equities of this case.

---

[1] The Court invited briefing from 3M as to the issue of whether the injunction should issue against all defendants, and allowed counsel the additional opportunity to argue why the injunction should be a preliminary injunction instead of temporary restraining order. The undersigned is pleased to provide Chambers with a courtesy copy of this and any future pleadings on behalf of 3M, but has been present when the Court has instructed other attorneys not to do so unless asked.

## I. FACTUAL BACKGROUND

3M filed its original complaint ("OC") on June 10, 2011. The complaint (as amended) names 25 defendants, 18 of which are located or purport to be located outside the United States.

On June 13 and 14, 2011, 3M sent courtesy copies of the OC by email to those entities and persons named as defendants at that time (the "Original Defendants"), explaining to them in a cover letter that 3M had filed a lawsuit against them, and 3M was in the process of formally serving the complaint and summons and would soon be filing a motion for preliminary injunction, which would be served separately.[2] Larson Decl. at ¶ 2. 3M filed its Motion for Preliminary Injunction, Memorandum in Support of Motion for Preliminary Injunction, Declarations from Anne Greer and Steven Espenshade with exhibits, Proposed Order, Notice of Hearing, and copies of decisions finding the mark 3M to be famous (3M's "Motion Papers") on June 24, 2011. Dkt. #7-15.

On June 27, 2011, 3M formally served its Motion Papers on the Original Defendants by mailing it to their last known address, or, if 3M was aware that any party was represented by an attorney, to that attorney's address. *See* Certificate of Service at Dkt. # 17. On June 25, 27 and 30, 2011, 3M sent courtesy copies of the Motion Papers, except for the exhibits to the declarations, to the Original Defendants by email. Larson Decl. at ¶3. As for the exhibits to the declarations, they were too voluminous to transmit by email. *Id.* at ¶4. Consequently, 3M's attorneys set up a webpage with links to these exhibits, as well as the rest of the Motion Papers, and sent an email to the Original Defendants on June 30, 2011 with a live link to this webpage, advising them of the availability of those documents to review and download from this webpage. *Id.*

---

[2] This was not the first time the defendants had heard from 3M regarding the dispute; 3M's counsel had previously sent cease and desist correspondence to all of them as discussed in the Motion.

On July 18, 2011, 3M filed its First Amended Complaint (3M's "FAC"). Dkt. # 25. 3M sent courtesy emails on July 18 and 19, 2011 to the new parties named as defendants in the FAC (the "New Defendants") attaching copies of the Motion Papers, except for the voluminous exhibits to the declarations; however, as it did with the Original Defendants, 3M provided a link to a webpage where the defendants could (and still may) access and download these documents. *Id.* at ¶5. Also, on July 18, 2011, 3M formally served its Motion Papers on the New Defendants by mailing them to their last known address. See Certificate of Service at Dkt. # 24.

3M promptly sought new summonses from the Court for those defendants named in the FAC that had not yet been served. Such summonses were issued on July 25 and 26, 2011.[3] 3M is in the process of serving the OC, FAC, and summons on each of the defendants that have not yet been served. In addition to the United States, the defendants have provided addresses in Thailand, India, Malaysia, Sri Lanka, Italy, Australia, Poland, and Hong Kong. *See* FAC at 3-8. 3M intends to serve these foreign parties through the Hague Convention or by Letters Rogatory. Fed. R. Civ. P. 4(f). Unlike domestic service which may take a few days or weeks, service in these countries may take from three months to more than a year, a delay driven to some extent by the requirement that the pleadings must be translated into the language of each defendant's country of residence. *See* Larson Decl. ¶ 6.

Moreover, 3M expects that service may be further frustrated and/or delayed by the fact that some defendants have provided what appears to be incomplete or false contact information in the Whois records related to their domain name ownership, which is the only contact information currently available for some defendants. For example, the defendant "MS" has provided the address "Bangkok, BangKhen, Thailand 10230," and the defendant "John B.

---

[3] Moreover, despite requests by 3M, the clerk did not issue summonses for most of the original Registrant Defendants (i.e., those originally named as "Does") until after 3M filed its FAC.

LeStrange" has provided the address "154/11 Warsaw, 01-747 Poland" which appear to be false or incomplete. Larson Decl. ¶ 7. Accordingly, there is substantial reason to believe that the effort by 3M to serve the foreign Registrant Defendants[4] by electronic means is more reliable than any other method. Accordingly, no defendant can argue that the interests of due process have not been satisfied.

## II. ARGUMENT

### A. A Preliminary Injunction May Issue Before The Summons And Complaint Are Formally Served.

"Rule 65 of the Federal Rules of Civil Procedure . . . only requires that a party have *notice* of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order." *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370-71, *on reconsideration*, 563 F. Supp. 2d 1349 (N.D. Ga. 2008) (emphasis in original, granting motion for preliminary injunction in part where defendants had actual notice of the motion and hearing but had not been served with summonses). Indeed, "Rule 65(a) does not require service of process. The Rule does require notice to the adverse party." *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302 (5th Cir. 1978) (affirming grant of preliminary injunction where the adverse claimant had not yet been made a party by substitute service of process before the order was issued); *see also Kanda v. Walker*, CIV S092197MCEGGHP, 2010 WL 95203 (E.D. Cal. Jan. 6, 2010), *report and recommendation adopted*, 2:09CV02197MCEGGHP, 2010 WL 699173 (E.D. Cal. Feb. 25, 2010) (although denying motion on the merits, finding that service of summons need not be made before court considers motion for preliminary injunction); *U.S. v. Lund*, 301 F.2d 818, 823 (5th Cir. 1962) ("The grant of a temporary injunction need not await any procedural steps perfecting the

---

[4] As that term is defined in the First Amended Complaint.

pleadings or any other formality attendant upon a full-blown trial of this case"); *Patel v. Moron*, 5:10-CT-3121-FL, 2011 WL 2112023, *2 (E.D.N.C. May 26, 2011) (although summons and complaint had not been formally served, court considered preliminary injunction motion, though denying it on the merits). Indeed, a leading treatise observes, "although it is preferable to file the complaint first, a preliminary injunction may be granted upon a motion made before a formal complaint is presented." 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2949, at 213 (2d ed. 1995).

The Federal Rules of Civil Procedure require only that adverse parties have fair notice of the preliminary injunction motion and hearing. Fed. R. Civ. P. 65(a) (preliminary injunction may issue "on notice to the adverse party"). The Supreme Court has explained that the rule only requires that "the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 434 n. 7, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). As the Fourth Circuit has observed, "the notice requirement . . . is more substantive than technical, requiring that a defendant be given 'a fair opportunity to oppose the application,' as distinct from a specified number of hours or days." *United States Dep't. of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 283 (4th Cir. 2006) (affirming preliminary injunction order entered with one day notice to defendant), *quoting Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000). This requirement is met "so long as the opposing party is given a reasonable opportunity, commensurate with the scarcity of time under the circumstances, to prepare a defense and advance reasons why the injunction should not issue." *Id.*

In *Ciena*, the Fourth Circuit affirmed the entry of a preliminary injunction even though the defendant only received notice of the plaintiff's intent to *seek a TRO* two days earlier.

Moreover, the trial court converted the TRO motion to one for a preliminary injunction only on the morning of the hearing in light of the "facial breach" of the applicable law by the defendant and the risk of immediate harm to the plaintiff. *Ciena,* 203 F.3d at 320. The Fourth Circuit indicated that notice and the nature of the remedy must be considered fluidly depending upon the circumstances, and with regard for the equities:

> In the specific and time-sensitive context of interlocutory injunctions, in virtually *every* case the court establishes the timing of hearings based on the immediacy of the factual circumstances and the relevant equities of the parties. Moreover, whether an interlocutory injunction entered is labeled a TRO or a preliminary injunction is not of particular moment, so long as the party opposing the injunction is given notice and an opportunity to oppose that is commensurate with the duration of the injunction. [Emphasis in original]

*Id.* at 319-20. *See also Wolf Run,* 452 F.3d at 279-280, 283 (preliminary injunction issued only one day after notice to defendant despite conflicting statements by trial court as to whether it was addressing a TRO or a preliminary injunction).

3M has met the notice obligation of Rule 65(a). Moreover, the notice provided to the defendants in this case far exceeds the notice provided in either *Ciena* or *Wolf Run,* where preliminary injunctions were affirmed based on the equities despite the argument that only a TRO should have been entered (if any injunction at all). In addition to formally serving the Motion Papers pursuant to Fed. R. Civ. P. 5(a) and (b), 3M sent copies of the Motion Papers by email, with the exception of certain exhibits which were made available on a website due to their large size, with a link provided by email to the defendants. The Original Defendants were provided courtesy copies of the Motion Papers nearly a month before the hearing, and the New Defendants had courtesy copies over ten days prior to the hearing.

Therefore, 3M's motion should not be converted to a motion for temporary *ex parte* relief under Rule 65(b) and limited to only those defendants that have been served with summonses.

As reflected in Rule 65(a) and confirmed in the cases cited above, there is no requirement that a defendant be served with summons before a preliminary injunction may issue. Rather, the only procedural prerequisite for securing such relief is that the defendant receives fair notice. 3M has easily met that requirement as to all the defendants, particularly given the conscious attempts by many of them to conceal their true places of business, and therefore asks the Court to reconsider the scope and duration of its Order.

### B. Requiring Formal Service Of Summonses Before Issuing The Preliminary Injunction Would Be Highly Inequitable To 3M.

It will likely take from three months to over a year for 3M to serve summonses on the majority of the remaining defendants, who are outside of the United States. In this case, 3M's service company cautions that they may need to work with foreign authorities, and navigate war conditions and terrorist activities. A substantial equitable consideration concerns the suspicious nature of some of the addresses the defendants have provided, and the nefarious conduct alleged in the pleadings, such that 3M will likely be searching for residences that may not exist. 3M has received estimates of time for serving documents in each foreign country, which, in some cases, exceed one year. 3M has already begun the process of translating and serving the documents through its service company; however, due to forces outside of its control, 3M does not expect formal service to be completed for many months.

In sum, therefore, a temporary restraining order for up to 20 days will have a very limited effect on the irreparable harm and public disservice that this Court has already found is being inflicted by the defendants, as 3M does not expect many (if any) of the un-served defendants to be served by that time, or anytime soon thereafter. There is no question that the defendants' conduct is unlawful, nor is there any question that many of them have gone to great lengths to conceal their identities and locations in order to further their improper and/or illegal activities.

The equitable powers of this Honorable Court should not be exercised in a manner that would essentially reward the defendants. Rather, a preliminary injunction should issue on the facts of this case as to all defendants. That would equitably shift the burden to defendants to file motions to dissolve or modify any injunction which they contend is not supported in law.

    **C.    A Preliminary Injunction Would Be Useful and Equitable Even Before 3M Secures Service of Process On All Foreign Defendants And/Or Seeks To Enforce the Order Against the Defendants in Foreign Jurisdictions.**

Rule 65 provides that an injunction binds not only the specific parties named in the order, but also their "officers, agents, servants, employees, and attorneys;" and "other persons who are in active concert or participation" with them; provided they "receive actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2). Thus, even if 3M encounters difficulty and delays in tracking down all of the defendants, securing formal service of the summonses and/or seeking to enforce the preliminary injunction order in foreign jurisdictions, the order sought by 3M will still serve a valuable purpose in the meantime. 3M can provide notice of the order to others who may be involved in some way with defendants' domain names and websites (e.g. registrars, internet service providers, etc.) to obtain their cooperation in shutting down defendants' websites in accordance with the Court's order. Thus, while this Honorable Court raised a legitimate question about the enforceability of an injunction against some of the defendants, concerns about enforceability should not prevent the entry of an order that is supported by the merits. This is particularly true where it is clear that the collateral effect of a preliminary injunction may go a long way towards remediating the clear and palpable harm being suffered by 3M.

## III. CONCLUSION

This Court has already found that 3M is likely to succeed on the merits of its trademark claims, that it is being irreparably harmed by defendants' illegal activity, that the balance of the equities tips in 3M's favor and that the public interest would be served by the entry of a preliminary injunction. 3M has given every defendant in this case more than a fair and reasonable opportunity to oppose 3M's motion, which is all that is required to empower this Court to grant preliminary injunctive relief. Requiring 3M to wait until it can effect formal service of summonses on all of the defendants – most of whom appear to be located in foreign countries and some of whom have provided incomplete or inaccurate names and addresses – would be highly inequitable and damaging not only to 3M, but also to the public who is being deceived by defendants' unlawful use of 3M's marks. Consequently, 3M respectfully requests that this Court grant its Motion for Preliminary Injunction as to all of the defendants.

DATED: August 2, 2011

Respectfully submitted,

/s/_____
Timothy J. McEvoy, VSB No. 33277
Sean Patrick Roche, VSB No. 71412
CAMERON MCEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 460-9341 (Direct)
(703) 273-8898 (Main)
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
sroche@cameronmcevoy.com
Attorneys for Plaintiff 3M Company


William G. Barber, Esquire
(Admitted *Pro Hac Vice*)
Wendy C. Larson, Esquire
(Admitted *Pro Hac Vice*)
PirkeyBarber LLP
600 Congress Avenue, Suite 2120

Austin, Texas  78701
(512) 322-5200
(512) 322-5201 (Facsimile)
bbarber@pirkeybarber.com
wlarson@pirkeybarber.com
Attorneys for Plaintiff 3M Company

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2011 I electronically filed Plaintiff's SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF WENDY C. LARSON IN SUPPORT OF SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; and exhibits thereto, with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

C. Paul Chalmers
Wilson Sonsini Goodrich & Rosati PC
1700 K Street NW, 5th Floor
Washington, D.C. 20006
**Attorney for GoDaddy.com, Inc. and Domains by Proxy, Inc.**

Further, I served the foregoing documents via United States first class mail, postage prepaid, to each Defendant at the addresses below, on August 2, 2011:

Paul Keating
Law.es
Calle Balmes, 173 2-2
08006 Barcelona
Spain
**Attorney for Christian Investments LLC D/B/A Protected Domain Services**

**Directi Internet Solutions Pvt. Ltd., D/B/A Publicdomainregistry.com, and D/B/A Privacyprotect.Org**
330 Link-Way Estate,
Malad Link Road
Mumbai, Maharashtra 400069
India

**Whoisprotection.cc**
Lot 2-1, Incubator 1, Technology Park Malaysia
Bukit Jalil
Kuala Lumpur, Wilayah Persekutuan
Malaysia 57000

**Marcos A/K/A 3M Specialist**
323 Srilankamatan Road
Columbo
Columbo, Sri Lanka 52211

**Luca Toni A/K/A Luca Tony**
Fiorentina
Italian Street
Genoa City, Genoa, Italy 66666

**K.C.**
8 King Street
Blacktown, Victoria 3600
Australia

**John B. LeStrange**
154/11
Warsaw, 01-747
Poland

**3MBKK**

Mario Beraheg
115/6 wipawadeerugsit Road
Dindane
Dindane, Bangkok 10400
Thailand

**Arthrit**
SSS Company
Bangkok
Sa Kaew Sa Kaeo
Thailand
27120

**Wattana**
Sudtiangtae
111
Hangdong, Chaingmai
Thailand 50230

**Hoon Hoe Lau**
Eitak Enterprise Limited
406, New Village
Ayer Tawar

Perak Malaysia
32400

**Hyper**
Chanapai Tangneam
13 Moo 7 Sao Thong Hin,
Bangyai, Nonthaburi 11140,
Thailand

**Tharinee Pinidrak**
570 Khannayao
Bangkok 10230
Thailand

**M.S.**
Bangkok,
BangKhen
Thailand 10230

**Pramote Polchocke**
Prachachuen Bangsue
Bangkok, 10800
Thailand

**Bettinghouse99**
Siriwatd 144/16 bkk
bkk, Chon Buri
10900, Thailand

**Cat Telecom Public Company Ltd.**
72 Charoenkrung Road,
Bangrak, Bangkok, Thailand 10501

Sean D. Garrison
Lewis and Roca LLP
40 North Central Avenue
Phoenix, Arizona 85004
**Attorney for Asia Netcom Asia Pacific Ltd, D/B/A Pacnet**

/s/_____
Timothy J. McEvoy, VSB No. 33277
Attorney for Plaintiff 3M Company