IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:11cv627 |
| CHRISTIAN INVESTMENTS LLC, | ) | |
| d/b/a PROTECTED DOMAIN | ) | |
| SERVICES, et al., | ) | |
|     Defendants. | ) | |

FILED
AUG 19 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

In this trademark infringement dispute, the plaintiff, a large, multi-national company, alleges that numerous defendants, many of which are foreign companies and individuals, are using its famous mark to promote online gambling websites. Soon after filing its complaint, but before completing service of process on all defendants, the plaintiff filed a motion for a preliminary injunction. By Order dated July 29, 2011, a temporary restraining order was issued against only those defendants that had already been served with a copy of the complaint and summons, in accordance with Rule 4, Fed. R. Civ. P. (hereinafter "service of process"). *See 3M Company v. Christian Investments LLC*, No. 1:11cv627 (E.D. Va. July 29, 2011) (Order). At the July 29, 2011 hearing, the plaintiff was invited to submit supplemental briefing on whether it was appropriate, as plaintiffs requested, to convert the temporary restraining order into a preliminary injunction applicable to all non-domain-name defendants, including those that have not yet received service of process. Plaintiff has now submitted supplemental briefing, and the question squarely presented is whether it is permissible to issue a preliminary injunction addressed to persons and entities that have not yet received service of process.

## I.

Plaintiff, 3M Company ("3M"), a Delaware corporation with its principal place of business in St. Paul, Minnesota, is a long-established, multi-national company that provides a wide variety of products and services in a number of different fields. For decades, 3M has continuously used the mark and trade name "3M," as well as various other marks and names that include 3M, to indicate the source, affiliation, and sponsorship of its products and services. In this regard, 3M has long maintained and operated an official website at the domain names 3m.com and mmm.com. 3M also operates various other websites accessible via domain names incorporating "3m," such as 3mtechnologies.com, 3mcompany.com, 3mtouchsystems.com, and 3munitek.com.

Defendants in this action, many of which are foreign, fall into three groups. The first group of defendants, the "Registrant Defendants,"[1] consists of eighteen companies and individuals who own and operate online gambling websites. The Registrant Defendants direct customers to their websites by registering and using domain names that, according to 3M, are identical or confusingly similar to 3M's mark. Moreover, 3M alleges that the Registrant Defendants prominently display an identical or highly similar copy of 3M's logo on their websites. In short, 3M alleges that the Registrant Defendants are using 3M's mark to direct customers to their online gambling websites and to give those websites a sense of legitimacy by implying an affiliation with 3M, a reputable multi-national company.

---

[1] *See* First Am. Compl. ¶¶ 2-19.

The second group of defendants, the "Hosting Service Defendants,"[2] consists of seven corporate entities that provide internet hosting services to the Registrant Defendants, or otherwise have control over the infringing websites.

The final group of defendants, the "Defendant Domain Names,"[3] consists of the fifty-one domain names that, according to 3M, are identical or confusingly similar to 3M's mark. The domain names are all registered to the Registrant Defendants and appear on a registry of domain names owned and controlled by VeriSign, Inc. ("VeriSign"), which is located in Dulles, Virginia.[4]

On June 10, 2011, 3M filed a nine-count complaint stating claims for (i) trademark infringement, under 15 U.S.C. §§ 1114(1), 1117(a); (ii) trademark dilution, under 15 U.S.C. § 1125(c); (iii) unfair competition, under 15 U.S.C. § 1125(a); (iv) cybersquatting, under 15 U.S.C. § 1125(d)(1); (v) common law trademark and trade name infringement; (vi) common law unfair competition; (vii) common law unjust enrichment; (viii) business conspiracy, under Va. Code § 18.2-499 *et seq.*; and (ix) contributory liability. A few days after filing its complaint, 3M sent courtesy copies of the complaint to the non-domain-name defendants by email, explaining to them in a cover letter that: (i) 3M had filed a lawsuit against them, (ii) 3M was in the process of formally serving the complaint and summons; and (iii) 3M intended to file a motion for a preliminary injunction.

---

[2] *See* First Am. Compl. ¶¶ 21-27.

[3] *See* First Am. Compl. ¶ 29.

[4] A "registry" is "the single official entity that maintains all official records regarding registrations in the TLD (top level domain) . . . ." *Fleetboston Fin. Corp. v. Fleetbostonfinancial.com*, 138 F. Supp. 2d 121, 123 n.2 (D. Mass. 2001) (internal citations and quotations omitted). A "registrar" is "one of several entities, for a given TLD, that is authorized by ICANN [Internet Corporation for Assigned Names and Numbers] to grant registration of domain names to registrants." *Id.*

3M moved for a preliminary injunction against all non-domain-name defendants on June 24, 2011. Three days later, on June 27, 2011, 3M served its motion papers on the non-domain-name defendants by mailing the papers to each non-domain-name defendant's last known address, or, if 3M was aware that a non-domain-name defendant was represented by an attorney, to that attorney's address. 3M also provided the non-domain-name defendants with courtesy copies of its motion papers by email. Because the exhibits were too voluminous to transmit by email, the email did not include copies of the exhibits to the declarations supporting 3M's motion. Instead, 3M set up a webpage with links to these exhibits, as well as the rest of its motion papers, and sent an email to the non-domain-name defendants on June 30, 2011 with a live link to this webpage.

After filing its motion for a preliminary injunction, 3M filed a first amended complaint on July 18, 2011. The first amended complaint dropped some of the defendants named in the original complaint and added a few new defendants.[5] The same day it filed the first amended complaint, 3M served the papers underlying its motion for a preliminary injunction on the new defendants (except for the new Defendant Domain Names) by mailing a copy to each new defendant's last known address. Moreover, over the following two days, 3M sent courtesy emails to the new defendants, attaching copies of their motion papers, except for the voluminous exhibits to the declarations; however, as it did with the original defendants, 3M provided a link to a webpage where the new defendants could (and still may) access and download these documents.

---

[5] Specifically, 3M added six defendants and dropped three defendants from the Registrant Defendants. 3M also dropped one of the Hosting Service Defendants. Also, 3M added five domain names and dropped one domain name from the Defendant Domain Names.

A hearing on 3M's motion for a preliminary injunction was held on July 29, 2011. Following the hearing, a temporary restraining order issued against the three defendants that had already been served with a copy of the summons and complaint, namely: (i) Christian Investments LLC, d/b/a Protected Domain Services, (ii) Domains By Proxy, Inc., and (iii) GoDaddy.com. *See 3M Company v. Christian Investments LLC*, No. 1:11cv627 (E.D. Va. July 29, 2011) (Order). In essence, the temporary restraining order enjoins these three defendants from using the 3M mark or any other mark that is confusingly similar to the 3M mark. *Id.* The temporary restraining order also prohibits these three defendants from providing internet hosting services for any websites using 3M's mark. *Id.* Initially granted for ten days, this temporary restraining order was later modified to run for fourteen days from the date of entry and also renewed, for good cause, for an additional fourteen days so that the temporary restraining order is now effective until August 26, 2011. *See 3M Company v. Christian Investments LLC*, No. 1:11cv627 (E.D. Va. Aug. 12, 2011) (Order). At the July 29, 2011 hearing, 3M was invited to submit supplemental briefing on whether a preliminary injunction could properly be issued against the remaining non-domain-name defendants who have not yet been served with a copy of the complaint and summons, pursuant to Rule 4, Fed. R. Civ. P.[6] 3M has submitted a supplemental brief, and hence this issue is now ripe for disposition.

## II.

Analysis of the question whether service of process is required prior to the issuance of a preliminary injunction properly begins with Rule 65, Fed. R. Civ. P., which governs the issuance

---

[6] A domain name is not a proper party unless personal jurisdiction cannot be asserted over the registrant, or the registrant cannot be found. In that event, the action may only proceed *in rem* against the domain name under the Anticybersquatting Consumer Protection Act ("ACPA"), which requires sending notice to the registrant's listed email and postal addresses and publishing notice of the action as the court may direct. *See, e.g., Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 615 (E.D. Va. 2003) (citing 15 U.S.C. § 1125(d)(2)(A)(ii)(aa) & (bb)).

of both temporary restraining orders and preliminary injunctions. As it happens, neither the Rule's text nor the advisory committee notes provide a clear answer to this question. Although the Rule's text notes that it binds only those persons "who receive actual notice of it by personal service," *see* Rule 65(d)(2), Fed. R. Civ. P., the Rule does not specify whether that service must be made pursuant to Rule 4, Rule 4.1, or Rule 5, nor does the Rule specify whether service of the summons and complaint must precede the service of the temporary restraining order or preliminary injunction.

Accordingly, analysis must then proceed to case law, which at it happens, is somewhat sparse and neither clear nor entirely uniform. What is clear is that service of process is not required prior to the issuance of a temporary restraining order. Indeed, the Fourth Circuit has stated that "the power to enter temporary restraining orders is a power to preserve the status quo for the purposes of the litigation and the power to enter such orders in advance of the service of process is universally recognized." *Internatio-Rottterdam, Inc. v. Thomsen*, 218 F.2d 514, 516 (4th Cir. 1955). This sensible result is necessary if temporary restraining orders are to do the work contemplated by Rule 65, namely to preserve the status quo and prevent irreparable harm while service of process is completed and a motion for a preliminary injunction is adjudicated.

Although a temporary restraining order is in the nature of an injunction, it is plainly quite different from a preliminary injunction, as it may last for, at most, only twenty-eight days.[7] Preliminary injunctions, by contrast, may last far longer; indeed, a preliminary injunction may continue in effect until final disposition of the dispute or until vacated, whichever occurs earlier. This significant difference has understandably led some courts to a different conclusion with

---

[7] A temporary restraining order may initially last for fourteen days, but may also be extended for a "like period" if good cause is shown, or for a longer period with consent of the adverse party. Fed. R. Civ. P. 65(b)(2).

respect to whether service of process is a required antecedent to the issue of a preliminary injunction.

Although the case law is not entirely uniform, decisions in this circuit and the better reasoned decisions elsewhere point persuasively to the conclusion that service of process is a prerequisite to the issuance of an enforceable preliminary injunction. For example, in *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999), the Fourth Circuit held that a district court's preliminary injunction against a company was unenforceable because the district court did not obtain personal jurisdiction over the company through valid service of process. In *Titanic*, the district court issued a preliminary injunction prohibiting a company from visiting and photographing the wreckage of the Titanic. On appeal, the Fourth Circuit began its analysis of the enforceability of the preliminary injunction by reiterating the settled principle of law that "a party cannot obtain injunctive relief against another without first obtaining *in personam* jurisdiction over that person or someone in legal privity with that person." *Id.* at 957. The Fourth Circuit then concluded that the district court lacked *in personam* jurisdiction because process was neither issued nor served on the company, and, as a result, the preliminary injunction was vacated. *Id.* at 958. *Titanic*, therefore, may be viewed as standing for the principle that service of process on a defendant is a prerequisite to the issuance of a preliminary injunction against that defendant.

Similarly, in *Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 301 (4th Cir. 2001), the Fourth Circuit confronted the question whether creditors in a bankruptcy action initiated in the Southern District of Georgia had standing to appeal an injunction entered against them in a related debt collection action filed in the District of South Carolina, even though the Georgia creditors were not parties to the debt collection action. In resolving that issue, the Fourth Circuit

cited *Titanic* for the proposition that "any injunction entered against individuals is an *in personam* action that may be enforced against individuals only over whom the court has personal jurisdiction." *Id.* The Fourth Circuit then stated that "unless the district court had personal jurisdiction over the Georgia creditors *and they were served with process*, the district court could be without power to enforce an injunction against them, unless, of course, they could be shown to have been 'in active concert or participation with' parties over whom the court had jurisdiction." *Id.* (citation omitted) (emphasis added). Thus, under *Titanic* and *Gilchrist*, the Fourth Circuit has made clear that an injunction, including a preliminary injunction, cannot be enforced against a defendant over whom a district court has not obtained personal jurisdiction through valid service of process.[8]

Courts outside the Fourth Circuit have also concluded that service of process is a prerequisite to the issuance of an enforceable preliminary injunction.[9] The rationale articulated

---

[8] *See also Baines v. City of Danville, Va.*, 337 F.2d 579, 598-99 (4th Cir. 1964), *overruled on other grounds by Mitchum v. Foster*, 407 U.S. 225 (1972) ("If, as here, the court refuses [a temporary restraining order], no process of any kind having issued, nothing remains before the court unless and until process is served. *After service of process, the applicant may apply for a temporary injunction, but, if there has been no service, there is no foundation for further proceedings against unserved parties.*") (emphasis added).

It is worth noting, however, that the issue of personal jurisdiction does not need to be fully litigated before a court may issue a preliminary injunction. Even if there is a dispute about whether the facts provide a basis for the court's jurisdiction over the defendant, a court may issue a preliminary injunction binding that defendant as long as there is "'a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *See Catalog Mktg. Servs., Ltd. v. Savitch*, No. 88-3538, 1989 WL 42488, at *2 (4th Cir. Apr. 24, 1989) (quoting *Visual Scis., Inc. v. Integrated Commc'ns, Inc.*, 660 F.2d 56, 58 (2d Cir. 1981)). Of course, a plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing. *See Prod. Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004).

[9] *See Schuh v. Michigan Dep't of Corrections*, No. 1:09cv982, 2010 WL 3648876, at *2 (W.D. Mich. July 26, 2010) ("When a preliminary injunction is sought under Rule 65(a), service of the summons and the complaint is required. It is well settled that without service of process, a court

by these courts is largely the same, namely that a district court may not issue an injunction until it has personal jurisdiction over the defendant,[10] and such jurisdiction does not exist until there is valid service of process.[11] Indeed, a review of federal case law reflects that many courts, without analysis, clearly decline to issue preliminary injunctions before there has been service of process.[12]

---

has no jurisdiction over defendants named in a lawsuit.") (citations omitted); *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 309 (D.S.D. 2009) (holding that motion for preliminary injunction against foreign defendant was premature and could be re-filed after defendant had been served with the summons and complaint); *Sangui Biotech Intern., Inc. v. Kappes*, 179 F. Supp. 2d 1240, 1241 (D. Colo. 2002) (holding that district court did not have jurisdiction to enter preliminary injunction against foreign defendant because he had not yet been served with process under the provisions of the Hague Convention); *Carty v. R.I. Dept. of Corrections*, 198 F.R.D. 18, 20 (D.R.I. 2000) ("When an injunction is sought, service of the summons and the complaint is required. It is well settled that without service of process, this Court has no jurisdiction over the named defendants. Personal jurisdiction is established either by proper service of process, or by the defendant's waiver of any defect in the service of process.") (citations omitted).

[10] *See, e.g., Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

[11] The support for the position that a district court may not assert jurisdiction over a defendant until that defendant receives service of process is not insubstantial. *See Omni Capital Int'l, Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Choice Hotels Int'l, Inc. v. Bonham*, No. 96-2717, 1997 WL 600061, at *1 (4th Cir. Sept. 30, 1997) ("Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction.") (internal quotations and citations omitted); *Farm Credit Bank of Baltimore v. Ferrera-Goitia*, 316 F.3d 62, 68 (1st Cir. 2003) ("Personal jurisdiction usually is obtained over a defendant by service of process.").

[12] *See Universal Licensing Corp. v. Paola del Lungo, S.p.A.*, 293 F.3d 579, 582 (2d Cir. 2002) ("The court invited Universal to return to court six days later, after service of process had been properly effected on PDL, at which time the court would entertain a motion for a preliminary injunction."); *Burns v. First. Am. Trustee Servicing Solutions, LLC*, No. 11-0023, 2011 WL 175503, at *2 (N.D. Cal. Jan. 19, 2011) ("If Plaintiffs seek a preliminary injunction, they must serve the summons and complaint on any Defendant against whom relief is sought."); *Lakner v. Balke*, No. 08-cv-1791, 2008 WL 4473916, at *2 n.1 (S.D. Cal. Oct. 2, 2008) ("If Plaintiff wants to pursue a motion for a preliminary injunction, he must first serve Defendants with the

To be sure, a few courts, relying chiefly on *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300 (5th Cir. 1978), have held that service of process is not a prerequisite to the issuance of a preliminary injunction.[13] These cases are not persuasive. In *Corrigan*, an interpleader action brought under 28 U.S.C. § 1335, the district court issued a preliminary injunction requiring delivery of perishable goods held by a warehouseman. On appeal, the Fifth

---

summons, Complaint and preliminary injunction motion."); *North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083, 2006 WL 838993, at *7 (S.D.N.Y. Mar. 30, 2006) ("The Court will grant Plaintiffs' application to convert the TRO into a preliminary injunction against SDT USA at such time as Plaintiffs submit proof of service of process upon SDT USA."); *Mark v. Shui-Kuen*, No. 86 Civ. 7494, 1986 WL 11567, at *1 (S.D.N.Y. Oct. 8, 1986) ("Plaintiffs may move for a preliminary injunction after the summons and complaint have been served and defendants have served and filed their answers."); *but see Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008) (holding that it was not an abuse of discretion for the district court to issue a preliminary injunction prior to formal service of process in anticipation that such service would promptly follow, but also noting that it took no position on whether the injunction was enforceable against a party that violated the injunction prior to service of process).

[13] *See Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 2008) ("Rule 65 of the Federal Rules of Civil Procedure, however, only requires that a party have notice of the motion and hearing; perfecting service on a defendant is not a prerequisite to the entry of a preliminary injunction order.") (citing *Corrigan*); *Sochia v. Federal-Republic's Cent. Government*, No. SA-06-CA-1006, 2006 WL 3372509, at *3 (W.D. Tex. Nov. 20, 2006) ("Although Rule 65(a) does not require formal service of process, the sufficiency of written and actual notice to adverse party prior to issuance of preliminary injunction is a matter for trial court's discretion.") (citing *Corrigan*); *see also S.E.C. v. Kimmes*, 753 F. Supp. 695, 700-01 (N.D. Ill. 1990) ("[I]n the context of *preliminary* injunctive relief such as that granted by the Order, [the requirement for personal jurisdiction] must read simply in terms of *notice* to the enjoined party . . . rather than as demanding the existence of in personam jurisdiction via service of process. If it were otherwise, the entire structure of Rule 65—with its basic concept of issuing *binding* TROs and preliminary injunctions—would be sapped of strength entirely."); 11A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (2d ed. West 2011) ("The grant of a temporary injunction need not await any procedural steps perfecting the pleadings or any other formality attendant upon a full-blown trial of this case.") (internal quotations and citation omitted); 13 J. Moore et al., *Moore's Federal Practice* § 65.21 (3d ed. Lexis 2011) ("[A]lthough the notice requirement of Rule 65(a)(1) does not explicitly require a subpoena, summons, writ, or other legal process, proper service of the complaint and summons on the adverse party and notice of the time and place at which the hearing on the preliminary injunction will be held are likely to be deemed sufficient notice.").

Circuit rejected an argument that the injunction was invalid because one of the parties had not received service of process at the time the injunction was issued:

> It is not grounds for reversal that the trial court's interlocutory order was issued prior to the time that appellant was made a party by substitute service of process. *Rule 65(a) does not require service of process.* The Rule does require notice to the adverse party. . . . The sufficiency of written and actual notice is a matter for the trial court's discretion.

*Id.* at 302 (emphasis added).

*Corrigan* is neither persuasive nor binding. To begin with, it is an interpleader action which has its own rules for preliminary injunctions. *See* Fed. R. Civ. P. 65(e)(2) (stating that Rule 65 does not modify "28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader"). But beyond this, *Gilchrist* and *Titanic*, binding authority in this district, point persuasively in the opposite direction, holding that a preliminary injunction is not enforceable against a party that has not received valid service of process. *See Gilchrist*, 262 F.3d 295 at 301; *Titanic*, 171 F.3d at 958. Thus, notwithstanding *Corrigan* and its progeny, it is appropriate to conclude that service of process is a required antecedent to the issuance of an enforceable preliminary injunction.

3M argues that this conclusion will impose a hardship on plaintiffs, like itself, who are suing foreign defendants and must serve process in accordance with the Hague Convention or by Letters Rogatory. Unlike domestic service, which may take a few days or weeks, 3M emphasizes that service in foreign countries may take from three months to more than a year, a delay driven to some extent by the requirement that the pleadings must be translated into the language of each defendant's country of residence. The short answer to the 3M's understandable concern is that 3M, and similarly situated plaintiffs, can name the registrar and registry as defendants, and after serving process, move for a preliminary injunction requiring the registrar or

Circuit rejected an argument that the injunction was invalid because one of the parties had not received service of process at the time the injunction was issued:

> It is not grounds for reversal that the trial court's interlocutory order was issued prior to the time that appellant was made a party by substitute service of process. *Rule 65(a) does not require service of process.* The Rule does require notice to the adverse party. . . . The sufficiency of written and actual notice is a matter for the trial court's discretion.

*Id.* at 302 (emphasis added).

*Corrigan* is neither persuasive nor binding. To begin with, it is an interpleader action which has its own rules for preliminary injunctions. *See* Fed. R. Civ. P. 65(e)(2) (stating that Rule 65 does not modify "28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader"). But beyond this, *Gilchrist* and *Titanic*, binding authority in this district, point persuasively in the opposite direction, holding that a preliminary injunction is not enforceable against a party that has not received valid service of process. *See Gilchrist*, 262 F.3d 295 at 301; *Titanic*, 171 F.3d at 958. Thus, notwithstanding *Corrigan* and its progeny, it is appropriate to conclude that service of process is a required antecedent to the issuance of an enforceable preliminary injunction.

3M argues that this conclusion will impose a hardship on plaintiffs, like itself, who are suing foreign defendants and must serve process in accordance with the Hague Convention or by Letters Rogatory. Unlike domestic service, which may take a few days or weeks, 3M emphasizes that service in foreign countries may take from three months to more than a year, a delay driven to some extent by the requirement that the pleadings must be translated into the language of each defendant's country of residence. The short answer to the 3M's understandable concern is that 3M, and similarly situated plaintiffs, can name the registrar and registry as defendants, and after serving process, move for a preliminary injunction requiring the registrar or

registry to disable the infringing domain names while service of process is perfected on a foreign defendant. Moreover, 3M can request to serve process on the foreign defendants by alternative means. *See* Fed. R. Civ. P. 4(f)(3) (permitting service of summons "by other means not prohibited by international agreement, as the court orders"); s*ee also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (noting that, pursuant to Rule 4(f)(3), "trial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendants last known address, delivery to the defendant's attorney, telex, and most recently, email."). 3M has not requested permission to serve process on the foreign defendants by alternative means, and hence the permissibility of doing so in this case is neither reached nor decided here.

In sum, it is premature to convert the temporary restraining order into a preliminary injunction against all defendants because 3M has not completed service of process on all non-domain-name defendants. Moreover, although there is little dispute that there is subject matter jurisdiction over the claims, there is doubt as to whether there is a "reasonable probability" that personal jurisdiction exists over each defendant. *Catalog Mktg. Servs., Ltd.*, 1989 WL 42488, at *2.[14]

Nothing prohibits plaintiff from moving for a preliminary injunction against any defendants that have been served with process. However, any such motion must include affidavits or other competent evidence sufficient to establish a "reasonable probability" that personal jurisdiction exists over those defendants. *Id.*

---

[14] Although 3M has now submitted supplemental briefing on the personal jurisdiction issue, this issue has not yet been fully litigated.

An appropriate Order will issue.

Alexandria, Virginia
August 19, 2011

                                                         /s/
T. S. Ellis, III
United States District Judge