### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| **3M Company,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 1:11-cv-627** |
| **vs.** ) | **(TSE/JFA)** |
| ) | |
| **CHRISTIAN INVESTMENTS LLC,  D/B/A,** ) | |
| **PROTECTED DOMAIN SERVICES,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Christian Investments, LLC, d/b/a Protected Domain Services ("PDS", "Christian", or "Christian Investments"), by and through its undersigned counsel of record, respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss 3M Company's ("3M") Amended Complaint for Lack of Personal Jurisdiction.

## I.    INTRODUCTION

3M brought this action against PDS and numerous other defendants alleging causes of action for trademark infringement, dilution, cybersquatting, unfair competition, unjust enrichment, contributory infringement, and business conspiracy.  All of the causes of action alleged against PDS are solely based on 3M's erroneous claim that PDS is the registrant of various infringing domain names (defined in the Amended Complaint as the "Infringing Names") that are associated with the "Infringing Websites", and throughout the Amended Complaint PDS is defined as one of the "Registrant Defendants."  Amended Complaint, ¶¶ 2, 20.  According to 3M, PDS, and the other Registrant Defendants "own and operate online

gambling websites", "own and control" the Infringing Names, and "own and control the Infringing Websites which are associated with the domain names they own."  Am. Compl., at ¶¶ 50, 57.

With respect to PDS, none of this is true.  As set forth in the attached Declaration of William Mushkin ("Mushkin Declaration"), PDS provides WHOIS privacy services for domain names.  As 3M well knows, PDS is not the registrant for any of the Infringing Names.  PDS does not own, operate or control the Infringing Names or any online gambling websites, it has no legal, contractual or other relationship with the actual registrants of the Infringing Names, nor does PDS have any control over them.  Thus, the entire premise of all of 3M's claims against PDS is demonstrably false.  Before and after 3M filed the original complaint, the Amended Complaint, and moved for and obtained a temporary restraining order, 3M's counsel was repeatedly advised of these indisputable facts, yet they persist in prosecuting this action against PDS.  Indeed, 3M's own investigative reports that are dated months before the original Complaint was filed concede that PDS is not the registrant or owner of the Infringing Names.  In addition, once 3M filed its Complaint, the registrar, Name.com, removed the PDS privacy contact information overlay revealing the actual registrants and placed the Infringing Domains under registrar lock so as to prevent them from being transferred by the actual registrants.  PDS also provided 3M's counsel with a Registrar Certificate which provided the contact information for the registrants, WHOIS data for each registrant of the Infringing Names, and PDS confirmed that the Infringing Names were locked so as to prevent transfer.  PDS advised 3M that the Infringing Names would remain locked until the Court ruled or there was a confirmation from 3M's counsel that the litigation had been resolved.  The registrar, Name.com, has provided the Registrar Certificate to 3M for filing with this Court, leaving this Court with control over each of

the "Infringing Names" for which PDS is alleged to have been the registrant as set forth in the Amended Complaint. Am. Compl., ¶ 2. Thus, there is absolutely no basis for 3M to continue to prosecute this action against PDS.

On August 12, 2011 the Court directed 3M to submit additional briefing and evidence to support 3M's position that the Court has personal jurisdiction over each defendant. In response, on August 18, 2011 3M filed a Second Supplemental Memorandum in support of its Motion for Preliminary Injunction (the "Memorandum"). On August 19, 2011 the Court construed 3M's Memorandum as a motion to convert the temporary restraining order to a preliminary injunction against all non-domain-named defendants, including PDS, and denied the motion. *See* August 19, 2011 Memorandum Opinion and Order. In its Memorandum Opinion, the Court stated, *inter alia*, that "there is doubt as to whether there is a 'reasonable probability' that personal jurisdiction exists over each defendant." Memorandum Opinion at 12. The Court permitted 3M to move for a preliminary injunction against defendants that have been served with process so long as any such motion included "affidavits or other competent evidence sufficient to establish a 'reasonable probability' that personal jurisdiction exists over those defendants." *Id*. at 12. However, as set forth below, there is no personal jurisdiction over PDS and it should be dismissed from this lawsuit.

## II.     STATEMENT OF FACTS

### A.     PDS Is Not A Registrant

Christian Investments was formed to provide WHOIS privacy services for domain names – it is not a registrant of domain names. Mushkin Declaration, ¶ 10. PDS only provides privacy contact information to registrars within the same corporate group (the "Registrar Group" or "Group"). *Id.* at ¶ 12. Each registrar within the Registrar Group is accredited by ICANN. *Id.*

PDS provides its services to the Name.com registrars on a fixed-fee basis, charged annually, and without consideration as to the number of domain names the members of the Registrar Group have under registration or the number of domain names as to which any group registrars apply the PDS privacy contact information overlay. *Id.* at ¶ 15. PDS has no relationship, contractual or otherwise, with domain name registrants relative to privacy services and collects no revenues from domain name registrants in connection with privacy listings. *Id.* at ¶ 16. To assist the Court, PDS has provided detailed information regarding the various participants in the domain name registration process through the Declaration of William Mushkin, managing member of PDS. *Id.* at ¶ 17.

PDS privacy is provided as an overlay to the actual WHOIS data which is supplied by the registrant/owner and maintained by the registrar. *Id.* at ¶¶ 10, 37. In his Declaration, Mr. Mushkin provides an example of how PDS provides its privacy services by his registering the domain name testuser999.com and selecting the privacy service. *Id.* at ¶¶ 34-36. As explained in the Mushkin Declaration, notwithstanding the selection of privacy by a registrant, the registrar, Name.com, still retains all of the original customer contact and WHOIS data that a registrant supplies during the registration process with the registrar (PDS is not privy to this information). *Id.* at ¶ 38. While registering with the registrar, if a registrant elects to use the privacy option provided by PDS, each domain name using the PDS privacy contact information is assigned a specific independent customer ID number. *Id.* at ¶ 40. The ID links the privacy WHOIS information directly to the registrant, the original customer contact, and the WHOIS information entered by the registrant. *Id.* The address and telephone number in a WHOIS privacy listing are that of PDS and PDS responds to all inquiries directed to the mailing address and telephone number, as well as to all inquiries it receives from the use of the contact

information provided on PDS's website located at www.protecteddomainservices.com.  *Id.* at ¶ 41.  Each domain name using the PDS privacy contact information is also assigned a unique email consisting of the domainname.ext@protecteddomainservices.com.  *Id.* at ¶ 42.  This email is automatically linked to the email provided by the registrant during the account creation process with the registrar.  *Id.*  Communications sent to these e-mails are not seen by PDS or anyone in the registrar; they are automatically forwarded directly to the registrant/owner by the computer systems.  *Id.*  The following information is also provided as part of the WHOIS record:  *Id.* at ¶ 43.

> "Domain Name:  testuser999.com
> Registrar:  Name.com LLC
>
> **Protected Domain Services Customer ID:** NCR-3500207"

Below the WHOIS record, the following text appears:  *Id.* at ¶ 44.

> "Domain privacy provided by Protected Domain Services. For more information see www.protecteddomainservices.com"

For its privacy services, PDS maintains its own website at www.protecteddomainservices.com.  The website is merely passive – providing only information; it is not interactive in any manner.  *Id.* at ¶ 45.  There are no advertisements, promotions, or solicitations in the website.  *Id.*  The website contains nothing to purchase and no information to enter by anyone.  *Id.*  The page includes the following information as to making a claim:

> **File A Claim**
>
> If you would like to report a domain that infringes on a trademark, is sending spam, whose content infringes on a trademark or true and correct copyright or includes defamatory, libelous, or objectionable content please email: compliance@protecteddomainservices.com
>
> **Law Enforcement**
>
> Protected Domain Services cooperates fully with law enforcement agencies and complies with all criminal and civil subpoenas. If you are a law enforcement agency and need to contact us, please email:

compliance@protecteddomainservices.com

**You may also mail us at:**

Protected Domain Services
2075 S. University Blvd
Unit #311
Denver, Colorado, USA 80210-4300

*Id.*

The information at www.protecteddomainservices.com is in addition to the address and telephone contact provided in the privacy WHOIS contact fields referenced above. *Id.* at ¶ 46. The objective in providing all of the above information within the WHOIS is to make clear that PDS is not the registrant/owner of the domain name: (1) the WHOIS uses the phrases "**Registrant Contact Info**"; (2) the "Contact" is "**Protected Domain Services Customer ID: - NCR-3500207"**; (3) there is nothing to indicate that the identification information set forth in the WHOIS equates to the "owner" or "registrant" of the domain name at issue; (4) there is nothing to indicate that PDS holds *any* interest whatsoever in the domain name; (5) the very nature of the record entry indicates that the information is provided only as a means of contacting the registrant; and (6) the reference to a specific customer ID number also negates the concept that the domain name was registered or owned by PDS. *Id.* at ¶ 47. Finally, the above text expressly identifies the information as a "privacy listing" and directs any inquiry to the website where additional information can be obtained as to what the service is and how one can contact the actual registrant. *Id.* The process of contacting PDS directly with an inquiry or complaint requires minimal diligence. *Id.*

As made clear in the Mushkin Declaration, PDS provides its privacy contact information for use only by registrars within the Registrar Group. *Id.* at ¶¶ 12, 69. Revenues that PDS derives from privacy services are received only from registrars within the Registrar Group in the

form of a fixed fee, payable annually.  *Id.* at ¶¶ 15, 69.  The fee is not dependent upon the

number of domain names as to which the PDS privacy contact information is used.  *Id.* at 69.

The group's registrars may offer privacy for free or for any fee it determines appropriate.  *Id.*

Any payment by an individual domain name registrant is made directly by the registrant to the

registrar.  *Id.* at ¶ 70.  PDS receives no payment from any registrant.  *Id.*  Moreover, PDS does

not provide privacy services to any individual domain name registrant.  *Id.* at ¶ 71.  The privacy

overlay is provided by the registrar (not PDS) as part of the registration process undertaken by

the individual domain name registrant directly with the registrar.  *Id.* at ¶ 72.  All activities are

undertaken by the individual registrant interacting with the registrar. *Id.* at ¶ 73.  During the

registration process, the registrar obtains all WHOIS data from the registrant and maintains this

information regardless of whether the registrant elects to use a privacy overlay.  *Id.*  Any

agreement regarding the registration of any of the Infringing Names exists only between

Name.com (as the registrar) and the individual domain name registrant.  *Id.* at ¶ 74.  PDS has no

access to the individual account of a registrant or the domain names contained therein.  *Id.* at ¶

75.  Account access is limited to the registrant using its unique user name and password.  *Id.*

Registrars may access domain names contained in user accounts only for security purposes, for

example, to lock domain names that are the subject of a UDRP (Uniform Dispute Resolution

Procedures of ICANN) or court action.  *Id.*  PDS has no control over the use of any domain name

registered by Name.com even if that domain name uses the PDS privacy overlay. *Id.* at ¶ 76.

    PDS is not the registrant or owner of any right, title or interest in any of the Infringing

Names.  *Id.* at ¶ 77.  PDS's relationship to any of the Infringing Names is limited to the fact that

the registrar, Name.com, used the PDS privacy contact information overlay as the "Registrant

Contact Information", " Administrative Contact Information", and "Technical Contact

Information" listing for the Infringing Names.  PDS had no contact with the registrant(s) of the

Infringing Names and no contractual relationship exists between PDS and any of the registrants

of the Infringing Names.  *Id.*

Of great interest is 3M's own investigative reports which indicate that 3M knew before it

filed its original Complaint, the Amended Complaint, and moved for and obtained a temporary

restraining order that PDS was not the owner or registrant of the Infringing Names.  *Id.* at ¶¶ 48-

51.  For instance, 3M's January 7, 2011 investigative report includes the following reference:

> "…The registration of this website (3Mcasino.me) is masked having been
> replaced by the company data of Protected Domain Services, 125 Rampart Way,
> Suite 300, Denver CO 80230. Ph: 720-249-2374.
>
> Protected Domain Services is a private registration company.  ***Among its***
> ***services, is to conceal the registrant of a website by replacing the Internet***
> ***searchable registration information (whois) with its Protected Domain***
> ***Services company information***…."  (emphasis and italics added).

*Id.* at ¶ 49.

Similarly, 3M's March 22, 2011 investigative report contains the following reference:

> "*www.3mcasino.me was established as a domain name on September 15,
> 2010 and the domain is scheduled to expire on September 15, 2011.  ***The***
> ***owner of this website is masked by having the registration information***
> ***filtered through Protected Domain Services of Denver, CO***" (emphasis and
> italics added)

*Id.* at ¶ 50.

In both reports, 3M's investigator (and thus 3M) clearly understood that PDS was not the

owner or registrant of the domain name www.3mcasino.me, but rather that PDS' contact

information was part of a privacy service.  *Id.* at ¶ 51.[1]

---

[1]     PDS wants the Court to know that PDS immediately and responsibly responds to UDRP
(Uniform Dispute Resolution Policy of ICANN) complaints, civil proceedings, and criminal
investigations.  Mushkin Declaration, ¶¶ 52-68.  A very good example of such a response is
presented in this case.  On April 14, 2011, 3M's counsel sent a letter by email and regular mail
concerning the domain names *3mcasino.net*, *3mcasino.me*; and *3mcasino.com*.  Mushkin

Given the above, there is simply no factual or legal basis for 3M to assert that PDS is the registrant of any of the Infringing Names.

## B.      PDS' Lack Of Sufficient Contacts With Virginia

Christian Investments LLC is a Wyoming limited liability company and does business in Colorado. *Id.* at ¶¶ 2, 4. Christian Investments has no offices, employees, agents, bank accounts or investments in Virginia and does not own any property in Virginia. *Id.* at ¶¶ 5-9. Christian Investments has not engaged in significant business activities in Virginia with the exception of a

---

Declaration, ¶ 54. The listed domain names were under privacy and the WHOIS reflected PDS privacy contact information. *Id.* In response to the letter, Name.com removed the privacy overlay and, because of the nature of the request and the nature of the domain names, Name.com also transferred two of the domain names to an account controlled by 3M. *Id.* On or about July 1, 2011, 3M filed its original Complaint which erroneously alleged that Name.com was the "registrant" of some of the Infringing Names. *Id.* at ¶ 55. Upon receiving the Complaint, Name.com removed the PDS privacy contact information overlay and placed each of these Infringing Names under registrar lock so as to prevent them from being transferred by the registrants. *Id.* at ¶ 56. PDS also provided 3M's counsel with a Registrar Certificate. *Id.* at ¶ 57. The Certificate provided the contact information for the registrants, the WHOIS data for the registrants of the Infringing Names, a confirmation that the Infringing Names were locked to prevent transfer and an agreement that they would remain so until Name.com received an order of this Court or a confirmation from 3M's counsel that the litigation had been resolved. *Id.* PDS' outside general counsel then sent a July 5, 2011 letter to 3M's counsel that referred to the Registrar Certificate and set forth legal and factual reasons why Name.com should not be listed as a defendant, including that it was not a registrant. *Id.* at ¶¶ 58-61. As a result of this letter, on or about July 18, 2011, 3M filed a First Amended Complaint which no longer listed Name.com as a defendant. *Id.* at ¶ 62. However, the Amended Complaint named Christian Investments as a defendant. *Id.* at ¶ 63. The Amended Complaint erroneously alleges that Christian Investments is the "registrant" of some of the Infringing Names. *Id.* at ¶ 64. In response, PDS' outside general counsel sent an August 3, 2011 letter to 3M's counsel that again referenced the Registrar Certificate and provided factual and legal reasons why Christian should not be listed as a defendant, including, lack of jurisdiction and the fact that Christian Investments was neither the owner nor registrant of any of the Infringing Names. *Id.* at ¶¶ 65-68. Since sending the August 3, 2011 letter, PDS' counsel has had repeated conversations with 3M's counsel in which they explained that PDS was not the registrant and was not subject to personal jurisdiction in this Court and, thus, should be dismissed from this action. Notwithstanding the above and 3M's knowledge from their investigative reports in January and March, 2011 that PDS is not a registrant or owner of the Infringing Names, 3M refuses to dismiss PDS.

contractual relationship with VeriSign.  *Id.* at ¶ 9.  Christian Investments has not traveled to and/or made in-person contact with anyone in Virginia regarding providing services.  *Id.*  Each registrar within the Registrar Group is located in Colorado.  *Id.* at ¶¶ 12-14.  No registrar within the Group has offices, bank accounts, employees, agents, or property located in Virginia.  *Id.* at ¶¶ 14.  Christian Investments provides its privacy services pursuant to a contract with Name.com that is governed by Colorado law and requires all disputes to be resolved exclusively in courts located in Denver, Colorado.  *Id.* at ¶¶ 21-23.

      With respect to its privacy services, PDS maintains its own website at www.protecteddomainservices.com.  *Id.* at ¶ 45.  The website is merely passive – providing only information; it is not interactive in any manner.  *Id.*  There are no advertisements, promotions, or solicitations in the website and it does not target Virginia residents.  *Id.*

      Christian Investments became an accredited ICANN registrar on or about May, 2010.  *Id.* at ¶ 78.  As an accredited registrar it is obligated to maintain a website (www.cirs.us).  *Id.* Christian Investments does not publicize or market its registrar services because its registrar services are intended only for use in connection with the drop-catch services of Name.com which is explained in the Mushkin Declaration.  *Id.* at ¶¶ 78-98.  This website also does not target Virginia residents.  As a registrar, Christian Investments has 1,112 domains under registration. *Id.* at ¶ 79.  However, only 34 of these domain names were registered directly with Christian Investments through its website.  *Id.*  Of these 34 domain names only one (www.stjohnsepiscopal-suffolk.org) is held by a registrant located in Virginia.  *Id.*  These 34 domain names are the only domain names subject to the Christian Investments registrar agreement, which specifies that Colorado law applies and requires all disputes to be resolved exclusively in courts located in Denver, Colorado.  *Id.* at ¶ 80.  All of the other 1,078 domain

names at Christian Investments were registered by customers of another registrar in the Group as a result of the "Drop-Catching" services[2] supplied by Name.com.  *Id.* at ¶ 81.  It is for this reason that while Christian is listed as the registrar for 1,112 domain names, 1,078 of them are actually managed by other registrars within the Group.  *Id.* at ¶ 96.  Of the 1,112 domain names registered through Christian Investments, only 16 are registered to registrants located in Virginia.  *Id.* at ¶ 97.  The 16 domain names are registered to four (4) registrants.  *Id.*  None of these 16 domain names use PDS' privacy services or have anything to do with this lawsuit.  *Id.*  As to these 16 domain names registered to Virginia registrants, 15 were drop catch orders requested by customers of Name.com and only 1 was via direct registration using the Christian website.  With respect to this one domain name, Christian received a gross profit of $2.74.  *Id.*

## III.   ARGUMENT

### A.   <u>General Legal Standards</u>

The resolution of a challenge to *in personam* jurisdiction involves a two-step process. *Alitalia-Linee Aeree Italiane S.p.A v. Casinoalitalia.Com*, 128 F. Supp. 2d 340, 347-48 (E.D. Va. 2001); *CFA Institute v. Chartered Financial Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F. 3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).  First, the Court must determine whether the particular facts and circumstances of the case fall within the reach of Virginia's long-arm statute.  Second, the Court

---

[2]      The "drop-catching" service is described in detail in Mr. Mushkin's Declaration at paragraphs 82-94.  It is a collaborative procedure used by the Group, including Christian Investments, to obtain ("catch") and register domain names that have expired that are available to the public on a first-come, first-served basis, with limitations on the number of requests any one registrar can simultaneously make.  Customers of any registrar in the Group can make a backorder request for a deleted domain name that the Group then attempts to "catch."  *Id.*

must decide whether the long-arm statute's reach in the case exceeds its constitutional grasp – namely, whether the exercise of personal jurisdiction in the matter is consistent with traditional notions of fair play and substantial justice under the Due Process Clause. *Alitalia-Linee Aeree Italiane S.p.A,* 128 F. Supp. 2d at 347-48; *see also Ellicott Mach. Corp.,* 995 F.2d at 477*; DeSantis v. Hafner Creations*, Inc., 949 F. Supp. 419, 422-23 (E.D. Va. 1996). "Because the Virginia long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, the first inquiry is often merged into the second." *Alitalia-Linee Aeree Italiane S.p.A,* 128 F. Supp. 2d at 347-48, n.18 (citing cases). However, it is possible for the contacts of the non-resident defendant to satisfy due process but not the requirements of Virginia's long arm statute. *Id.* Indeed, the merger rule does not apply to cases arising under Va. Code section 8.01-328.1(A)(4), and under that section of the long arm statute some measure of "bolstering activity" is required. *Nussbaum v. CVS Caremark, Corp*., No. 1:10-cv-1198 2011 WL 201482, at *5 (E.D. Va. 2011); *see also First Am. First., Inc. v. National Assoc. of Bank of Women*, 802 F.2d 1511, 1517, n.3 (4th Cir. 1986). "Bolstering" conduct is some degree of minimum contact with the forum that "may exceed [the requirements] imposed by the [D]ue [P]rocess clause." *Id.* While the plaintiff need only make a *prima facie* showing of personal jurisdiction based upon the complaint and supporting affidavits, the plaintiff ultimately has the burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *Alitalia-Linee Aeree Italiane S.p.A,* 128 F. Supp. 2d at 348 (citing cases).[3]

---

[3]      In its Memorandum, 3M cites C*onvergence Tech. (USA), LLC v. Microloops Corp*., 711 F. Supp. 2d 626, 634 (E.D. Va. 2010) for the proposition that in determining whether 3M has established a *prima facie* case of personal jurisdiction,  the Court must accept the uncontroverted allegations in 3M's complaint as true.  Mem. at 1.  In *Convergence,* the Court did not accept plaintiff's allegations in the complaint as true because they were controverted by a declaration by the defendant*. Id.* at 637-38.

B.      **Virginia's Long Arm Statute Does Not Reach PDS' Alleged Conduct**

In its Amended Complaint, 3M contends that PDS is subject to personal jurisdiction solely based on tortious acts it committed at least in part in Virginia and/or tortious acts it committed outside Virginia which were directed at least in part toward residents of Virginia. Am. Compl., ¶ 33.  Although not alleged in the Amended Complaint, in its Memorandum, 3M also contends that PDS is subject to personal jurisdiction based on Section A(1) of Virginia's long arm statute, which provides personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's transacting any business in Virginia. Mem. at 3-4.  Thus, it appears that 3M is attempting to invoke Sections A(1), A(3), and A(4) of Virginia's long arm statute.

In pertinent part, Virginia's long arm statute provides that:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1.   Transacting any business in this Commonwealth;
2.   Contracting to supply services or things in this Commonwealth;[4]
3.   Causing tortious injury by an act or omission in this Commonwealth;
4.   Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth

8.01-328.1(A)(1-4).

All of the causes of action alleged against PDS are *solely* based on 3M's erroneous claim that PDS is the registrant of the Infringing Names that are associated with the Infringing Websites, and throughout the Amended Complaint PDS is defined as one of the Registrant Defendants.  Am. Compl., ¶¶ 2, 20.  According to 3M, PDS and the other Registrant Defendants

---

[4]      3M has not alleged that PDS is subject to personal jurisdiction pursuant to Section 8.01-328.1(A)(2).

"own and operate online gambling websites", "own and control" the Infringing Names, and "own and control the Infringing Websites which are associated with the domain names they own."  Am. Compl., at ¶¶ 50, 57.  As set forth above and in the attached Mushkin Declaration, PDS is not the registrant for any of the Infringing Names, it does not own, operate or control the Infringing Names or any online gambling websites, it does not own, operate or control the Infringing Websites, it has no legal, contractual or other relationship with the actual registrants of the Infringing Names, nor does PDS have any control over them.  Since PDS is not a registrant, it could not have engaged in any of the tortious activity alleged in the Amended Complaint.  With respect to Section A(4), other than its erroneous claim that PDS is a registrant, 3M has not alleged in its Amended Complaint that PDS regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Virginia.  And, as set forth above, such a contention would be patently untrue since PDS has very few contacts with Virginia and those few contacts have nothing to do with 3M's claims.  As a result, 3M cannot invoke Sections A(3) or A(4) of the long arm statute to establish personal jurisdiction over PDS.

In order for 3M to invoke Section A(1) to establish personal jurisdiction, it must demonstrate that its causes of action against PDS arise from PDS' transacting business in Virginia.  *Consulting Engineers Corporation v. Geometric Limited*, 561 F.3d 273, 277 (4th Cir. 2009); *DeSantis v. Hafner Creations, Inc*. 949 F. Supp. 419, 423-24 (E.D. Va. 1996).  PDS did not transact any business in Virginia related to 3M's causes of action other than its contract with Verisign which, as discussed below, is insufficient to confer jurisdiction.  Pursuant to a contract that is governed by Colorado law, PDS provided WHOIS privacy services in Colorado to Name.com who is not a party to this action.  PDS had no contact with the registrants of the

Infringing Names or the Infringing Websites, nor are there any causes of action against PDS for the provision of privacy services – the only causes of action against PDS relate to 3M's demonstrably false claim that PDS is a registrant.  As a result, 3M cannot invoke Section A(1) of the long arm statute to establish personal jurisdiction over PDS.

Since PDS' conduct does not fall within the reach of Virginia's long-arm statute, PDS should be dismissed.

### C.     The Constitutional Analysis

Even if the Court finds that PDS' conduct falls within the reach of Virginia's long-arm statute, the Court still must find that the exercise of personal jurisdiction comports with the Due Process Clause.  The Due Process Clause requires that no defendant be haled into court unless he has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "Jurisdiction is only appropriate in circumstances where a defendant has purposely directed his activities at residents of the forum, resulting in litigation that emanates from alleged injuries arising out of or relating to those activities." *Alitalia-Linee Aeree Italiane S.p.A,* 128 F. Supp. 2d at 348-49 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The "minimum contacts" prong of the test can be satisfied by showing that the defendant had continuous and systematic contacts with the forum state regardless of where the relevant conduct occurred (general jurisdiction) or that the cause of action arose out of the defendant's activities within the forum state (specific jurisdiction), and that other due process requirements are met.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *CFA Institute v. Chartered Financial Analysts of India*, 551 F.3d at 292, n. 15; *ALS Scan, Inc. v.*

*Digital Serv. Consultants, Inc.*, 293 F. 3d 707, 711-12 (4th Cir. 2002).   But, merely because a defendant is aware "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of Ca.*, 480 U.S. 102, 112 (1987) (plurality opinion); *see also Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 944 (4th Cir. 1994).   Rather, the defendant must have "purposely availed itself of the privilege of conducting activities within the forum state . . . to ensure that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1987)); *CFA Institute v. Chartered Financial Analysts of India*, 551 F.3d at 293.   Furthermore, the exercise of *in personam* jurisdiction must be fair and reasonable under the circumstances of the case. *World-Wide Volkswagon Corp.*, 444 U.S. at 297.

In *ALS Scan,* the Fourth Circuit laid out a three-part test to be followed in examining whether a court has specific personal jurisdiction:  (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in Virginia; (2) whether the plaintiff's claims arise out of those activities directed at Virginia; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *ALS Scan,* 293 F. 3d at 712; *see also CFA Institute,* 551 F.3d at 294.   To establish general jurisdiction, the defendant's activities in the state must have been "continuous and systematic", which is a much more demanding standard than is necessary for establishing specific jurisdiction. *ALS Scan,* 293 F. 3d at 712, 715.   All three prongs of the test must be satisfied for the Court to exercise personal jurisdiction.

### D.      There Is No Specific Jurisdiction

In its Amended Complaint, 3M attempts to establish that PDS purposely availed itself of the privilege of conducting activities in Virginia and directed its activities towards Virginia (the first two Constitutional requirements) through its internet contacts as a registrant of the Infringing Names which are related to the Infringing Websites.  Am. Compl., ¶¶ 2, 20, 50, 57. In its Memorandum, 3M contends that PDS was the "registered owner of numerous infringing names that were registered through a domain name registry located in Virginia (Verisign), and used in connection with gambling websites accessible by Virginia citizens" and "undoubtedly provides privacy services to customers located in Virginia on a regular basis."  Mem. at 8.  3M further contends that all the infringing websites in this case are both interactive and commercial and, thus, subject PDS to personal jurisdiction.  Mem. at 10.

As set forth above, PDS was not the registrant for any of the Infringing Names, has no relationship to the Infringing Websites, and does not provide privacy services to customers located in Virginia on a regular basis.

In *ALS Scan*, the Fourth Circuit has adopted a "sliding scale" approach outlined in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), in assessing whether a defendant's Internet contacts are sufficient "minimum contacts" for purposes of personal jurisdiction.  *See ALS Scan, Inc.,* 293 F.3d at 713-14.  In *Zippo*, the district court explained this approach:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is

occupied by Interactive Web sites where a user can exchange information with the host computer.   In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F. Supp. at 1125 (finding no personal jurisdiction where Web site was passive).

In *ALS Scan Inc*., the question presented was whether a person electronically transmitting or enabling the transmission of information (which allegedly violated the copyright laws) via the Internet to Maryland, causing injury there, subjects the person to the jurisdiction of a court in Maryland.   *ALS Scan, Inc.,* 293 F.3d at 712.  Adopting the model in *Zippo,* the Fourth Circuit held that "a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  *Id*. at 714.  "Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."  *Id.*  The Fourth Circuit concluded that a person did not purposely avail himself and was not subject to specific jurisdiction even though electronic signals were concededly received by the forum state, particularly since the Website was not involved in the publication of any infringing materials.  *Id.* at 714-15.  The Fourth Circuit also found that in order to establish general jurisdiction, a plaintiff would have to show more than that an out of state defendant regularly and systematically transmitted electronic signals into the state via the Internet.  *Id*. at 715.

In *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397-98 (4th Cir. 2003), the Fourth Circuit addressed whether a semi-interactive website (one that permitted a user to exchange information with the host computer) that was accessible from the

forum state and/or a relationship with a web hosting company in the forum state were sufficient to establish personal jurisdiction for trademark infringement.  The Fourth Circuit ruled that in order for the defendant's semi-interactive website to provide personal jurisdiction, the defendant must have done something more than merely place information on the Internet; rather, defendant had to act with the "manifest intent" of targeting citizens of the forum state.  *Id.* at 400-401.  Because there were limited online exchanges and the content of the website had a strongly local character, the Fourth Circuit held that minimum contacts were lacking.  *Id*.  The Fourth Circuit also held that defendant's relationship with the web-hosting company, which facilitated the purchase of defendant's domain name and rented defendant space on its servers, also was insufficient to establish specific jurisdiction.  *Id*. at 401-02.[5]

In *Graduate Management Admission Council v. RVR Nara-Simha Raju*, 241 F. Supp.2d 589 (E.D. Va. 2003), the Court addressed whether there was personal jurisdiction over a citizen of India who registers and operates a foreign website selling plaintiff's test preparation materials in apparent violation of the United States copyright and trademark laws where: (1) the copyright and trademark holder is located in Virginia; (2) the website contains a purported testimonial from a Virginia citizen; (3) infringing materials were sold and delivered to two individuals in Virginia; and (4) the website contains ordering information for United States citizens.  *Id*. at 590.  The registry for the allegedly infringing domain names was VeriSign Global Registry Services in Herndon, Virginia.  *Id*. at 591.  The Court found that defendant's conduct in operating the website, selling plaintiff's materials, and soliciting business through a website accessible by Virginians satisfied section A(4) of Virginia's long arm statute.  *Id*.

---

[5]    *Alitalia-Linee Aeree Italiane S.p.A* is distinguishable from the case at bar because the registrant operated an interactive website accessible to Virginia consumers.  128 F. Supp. 2d at 348-50.   As discussed herein, PDS is not the registrant and the PDS Website at issue is not interactive.

However, the Court ultimately found that there were insufficient minimum contacts to support personal jurisdiction under the Due Process Clause.  In doing so, the Court analyzed *Zippo* and *ALS* and found that: "[a] comparison of this formulation to the original *Zippo* test indicates that the *ALS* test emphasizes that requirement of *purposeful* targeting of a particular forum, not just the level of interactivity.  Under the *ALS* test, the defendant must *direct* activity into the forum state, with the *intent* to engage in business *within the state*.  As the *ALS* panel makes clear, personal jurisdiction requires 'purposeful availment,' that is '*purposeful* conduct directed at the State.'"  *Id.* at 594 (citing *ALS Scan, Inc,* 293 F.3d at 712-713 (emphasis in original)).  The Court found that there were insufficient minimum contacts even though defendant's website was not merely passive in that he solicited orders of infringing materials from Virginia residents, targeted and sold materials to Virginia residents, targeted and infringed the rights of a Virginia resident, and registered the allegedly infringing domain name with Network Solutions, Inc. (now VeriSign Global Registry Services), a Virginia company which served as registry for all ".com" and ".net" domain names.  *Id.* at  594-96.   The Court determined that notwithstanding these contacts, "it is doubtful whether [defendant] can be said to have 'directed electronic activity into the state' with the intent of engaging in business . . . within the State,' as required by the first and second elements of the *ALS* test."  *Id.* at 595 (quoting *ALS Scan, Inc.,* 293 F.3d at 714).  The Court specifically held that "mere registration of the domain name with a company located in Virginia [Verisign] does not support personal jurisdiction in this state."[6]  *Id.* (citations omitted).[7]

---

[6]     Although the Court found that there was no personal jurisdiction under Virginia's long arm statute, the Court did find personal jurisdiction over the foreign defendant pursuant to Fed. R. Civ. P. 4(k)(2).

[7]     *See also Convergence*, 711 F. Supp. at 638-39 (passive website insufficient to establish

In its Memorandum, and without any evidentiary support, 3M contends that PDS'
website is both interactive and commercial.  Mem. at 10.  That simply is not the case.  With
respect to its privacy services, PDS maintains its own website at
www.protecteddomainservices.com.  The website is merely passive – providing only
information; it is not interactive in any manner.  There are no advertisements, promotions, or
solicitations in the website, and it does not target Virginia residents.  Moreover, the Fourth
Circuit and this Court have ruled that PDS' contract with Verisign is not sufficient to establish
personal jurisdiction.

With respect to its registrar service – which is not in any way related to this action -
Christian is obligated to maintain a website (www.cirs.us).  Christian does not publicize or
market its registrar services because its registrar services are intended only for use in connection
with the drop-catch services of Name.com which is explained in the Mushkin Declaration.  This
website also does not target Virginia residents.  In fact, Christian only has a very few customers
in Virginia, none of whom use its privacy services.[8]

---

personal jurisdiction); *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) (no personal
jurisdiction where paper did not post materials on their Internet sites with the "manifest intent"
of targeting readers in Virginia); *Corrosion Tech. Int'l, LLC v. Anticorrosive Industriales Ltda*,
No. 1:10-cv-915, 2011 U.S. Dist. LEXIS 92945, at *5, 19-20 (E.D. Va. Aug. 19, 2011)(no
personal jurisdiction for a semi-interactive global website visited by a Virginian that allowed
users to contact each other and download documents); *Knight v. Doe*, No. 1:10-cv-887, 2011
U.S. Dist. LEXIS 66238, at *10-11 (E.D. Va. June 21, 2011)(website owned by a plaintiff whose
business clients were predominantly from Virginia lacks personal jurisdiction as the owner had
no intent to "target" Virginia); *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort
Mgmt., Ltd.*, No. 1:09-cv-550, 2009 U.S. Dist. LEXIS 97704, at *8-10 (E.D. Va. Oct. 16,
2009)(insufficient personal jurisdiction where a nationally accessible website registered in
Virginia provided advertising "inviting and accepting business from the United States, including
the Commonwealth of Virginia" and a toll free number for customers); *Atl. Asset Mgmt. Group,
Inc. v. Csira*, 328 F. Supp. 2d 614 (E.D. Va. 2004)(website disseminating information about a
company and providing an interactive form for users to submit contact information is "almost
entirely passive" and cannot be the basis for personal jurisdiction).

[8]      In its Memorandum, 3M asserts that the "effects test" is applicable to this case because

Because PDS has not indicated a manifest intent to purposely target Virginia residents, there is no Constitutional basis for personal jurisdiction.

### E.      There Is No General Jurisdiction

3M has not alleged general jurisdiction in its Amended Complaint as to PDS.  Am. Compl., ¶ 33.  In its Memorandum, without any evidentiary support, 3M summarily concludes that PDS is a privacy provider with "continuous and systemic contacts with Virginia."  Mem. at 6.  As discussed above, with respect to the provision of its privacy services, PDS' only contact with Virginia is its contract with Verisign which the Fourth Circuit and this Court have ruled is insufficient to establish personal jurisdiction.  With respect to its registrar services, PDS has very limited contacts with Virginia and none of those contacts have anything to do with 3M's claims. 3M's unsupported legal conclusion that PDS has "continuous and systemic contacts with Virginia" is inaccurate and entirely insufficient to establish general jurisdiction.

### F.      There Is No Jurisdiction Pursuant To Rule 4(k)(2)

In the alternative, 3M also contends that the Court has personal jurisdiction over PDS pursuant to Fed. R. Civ. P. 4(k)(2) based on its contacts with the United States generally.  Am. Compl., ¶ 34; Mem. at 11-12.  This Rule was meant to apply to **non-residents** of the United State and only where "the defendant is not subject to jurisdiction in any State's courts of general jurisdiction."  Fed. R. Civ. P.4(k)(2)(A); *Graduate Management Admission Council,*  241 F. Supp.2d at 597.  In its Amended Complaint, 3M alleges that PDS is a Wyoming limited liability company with its principal place of business in Cheyenne, Wyoming.  Am. Compl., ¶ 2.  In

---

"Defendants are causing injury to Virginia and American consumers by their infringing and diluting activities."  Mem. at 10-11 (citing *Carefirst of Maryland, Inc*., 334 F.3d 390, 397-98). However, because PDS was not the registrant of the Infringing Names, it cannot be liable for infringement or dilution and, thus, the "effects test" is not applicable to PDS.

actuality, PDS is a Wyoming, LLC, but it does business in Colorado.  Regardless, because PDS is subject to jurisdiction in Wyoming and/or Colorado, this Rule cannot confer personal jurisdiction.

## IV.   CONCLUSION

For the reasons set forth above, PDS respectfully requests that the Court grant this Motion and dismiss PDS from this case.

**Dated: August 25, 2011**                 **Respectfully Submitted,**

CHRISTIAN INVESTMENTS LLC,
D/B/A PROTECTED DOMAIN SERVICES, et al.
By Counsel

_____/s/_____
Michael S. Lieberman, VSB No. 20035
Bernard J. DiMuro, VSB No. 18784
*Counsel for Christian Investments LLC, d/b/a
        Protected Domain Services, et al.*
**DIMUROGINSBERG**, PC
908 King Street, Suite 200
Alexandria, VA 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
E-Mail: mlieberman@dimuro.com;
bdimuro@dimuro.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 25th day of August, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Charles Paul Chalmers, Esq.
Wilson Sonsini Goodrich & Rosati PC (DC)
1700 K St NW, Suite 500
Washington, DC 20006-3817
202-973-8800
202-973-8899 (fax)
pchalmers@wsgr.com

Brian Bernard Darville, Esq.
Brocadiant IP PLLC
211 N. Union Street, Suite 100
Alexandria, VA 22314
703-768-7711
703-768-8899 (fax)
bdarville@brocadiant.com

Ellen D. Marcus, Esq.
Zuckerman Spaeder LLP (M St)
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800
emarcus@zuckerman.com

Timothy J. McEvoy, Esq.
Cameron McEvoy, PLLC
11325 Random Hills Road, Suite 200
Fairfax, VA 22030
(703) 273-8898
(703) 273-8897 (fax)
tmcevoy@cameronmcevoy.com

William G. Barber, Esq. (admitted Pro Hac Vice)
Wendy C. Larson, Esq. (admitted Pro Hac Vice)
PirkeyBarber, LLP
600 Congress Avenue, Suite 2120
Austin, TX  78701
512-322-5200
512-322-5201 (fax)
bbarber@pirkeybarber.com
wlarson@pirkeybarber.com

Shaun Robert Snader, Esq.
Wilson Sonsini Goodrich & Rosati PC (DC)
1700 K St NW, Suite 500
Washington, DC 20006-3817
202-973-8800
202-973-8899 (fax)
ssnader@wsgr.com

_____/s/_____
Michael S. Lieberman, VSB No. 20035
Bernard J. DiMuro, VSB No. 18784
*Counsel for Christian Investments LLC, d/b/a*
        *Protected Domain Services, et al.*
**DIMUROGINSBERG**, PC
908 King Street, Suite 200
Alexandria, VA 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
E-Mail: mlieberman@dimuro.com;
bdimuro@dimuro.com