IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

F I L E D

JAN - 9 2012

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

3M COMPANY, )
)
Plaintiff, )
)
v. ) Civil Action No. 1:11cv0627 (TSE/JFA)
)
CHRISTIAN INVESTMENTS LLC, *et al.*, )
)
Defendants. )
_____ )

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to

Federal Rule of Civil Procedure 55(b) against seven of the defendants named in this action: KC,

John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit.[1]  (Docket no. 110).

Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court

these proposed findings of fact and recommendations, a copy of which will be provided to all

interested parties.

### Procedural Background

On June 10, 2011, plaintiff 3M Company ("plaintiff" or "3M") filed a complaint

asserting a variety of claims against several groups of defendants. (Docket no. 1). On July 18,

2011, plaintiff filed an amended complaint, again asserting a variety of claims against several

groups of defendants. (Docket no. 25) ("Compl."). The claims asserted by 3M include

trademark infringement, dilution, unfair competition, cybersquatting, unjust enrichment, and

violation of the Virginia Business Conspiracy Statute, Va. Code § 18.2-499 *et seq.* (Docket no.

25). During the past several months 3M has obtained consent judgments against Softlayer

---

[1] Plaintiff has filed a notice of errata indicating that the proper spelling for the registrant of the domain name ssswin.me is Arthit, not Arthrit. (Docket no. 112).

Technologies, Inc. (Docket no. 27), Pattanaphone Prasomthong (Docket no. 44), GoDaddy.com, Inc. and Domains by Proxy, Inc. (Docket no. 66), and CAT Telecom Public Company Limited (Docket no. 118) and has dismissed voluntarily the claims against Prolexic Technologies, Inc. (Docket no. 35), Tiggee LLC (Docket no. 40), Bluehost, Inc. (Docket no. 42), Asia Netcom Asia Pacific Ltd. (Docket no. 78), and Christian Investments LLC (Docket no. 88). In this motion for default judgment 3M seeks a judgment against defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit ("defaulting defendants") seeking an order enjoining these defendants from using or infringing the 3M mark and any other mark confusingly similar to the 3M mark, including the transfer of certain domain name registrations held by the defaulting defendants to 3M; statutory damages; and attorney's fees and costs. (Docket no. 110 at 26-29). Given that this motion for default judgment is limited to the claims against these seven defaulting defendants, the discussion in this proposed findings of fact and conclusions of law will focus on the claims raised against these seven defaulting defendants.

On August 29, 2011, plaintiff filed a motion seeking leave to serve certain defendants by alternative means. (Docket no. 73). Plaintiff's motion was supported by a memorandum of law (Docket no. 74) and was noticed for a hearing on September 30, 2011 (Docket no. 75). On September 23, 2011, plaintiff filed an amended memorandum in support of the motion for leave to serve certain defendants by alternative means to remove two defendants from the relief being requested. (Docket no. 90). On October 3, 2011, an order was entered granting plaintiff's motion authorizing service on the defaulting defendants by electronic mail. (Docket no. 97). That order stated that by allowing service through alternative means the court was not finding that the plaintiff had established personal jurisdiction over any of the defendants or that it was proper to join those defendants in a single action pursuant to Fed. R. Civ. P. 20. *Id.*

Pursuant to the order authorizing service on the defaulting defendants the plaintiff sent each defendant by electronic mail a copy of the summons, the complaint, the first amended complaint and the October 3, 2011 order. (Docket nos. 99-105). The returns of service filed by the plaintiff on October 6, 2011 show that the messages sent by electronic mail were completed on October 3, 2011 but no delivery notification was sent by the destination servers. *Id.* Pursuant to Fed. R. Civ. P. 12(a) a responsive pleading was due from the defaulting defendants by October 24, 2011, twenty-one days from the date of the service by electronic means. No responsive pleading has been filed by any of the defaulting defendants.

On October 25, 2011, plaintiff filed a request for entry of default against each of the defaulting defendants supported by a declaration from Wendy C. Larson. (Docket no. 108). On October 26, 2011, the Clerk of the Court entered a default against each of the defaulting defendants pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 109).

On November 16, 2011, plaintiff filed a motion for default judgment against defendants KC, John B. LeStrange, 3MBKK, Watanna[2], MS, Tharinee Pinidrak, and Arthrit and memorandum of law in support thereof (Docket no. 110), and a declaration from Wendy C. Larson (Docket no. 110-1) ("Larson Decl.") with attached Exhibits A-R (Docket nos. 110-2 through 110-19) ("Larson Decl. Exhibits"). On November 17, 2011, plaintiff filed a notice setting a hearing for the motion for default judgment on December 2, 2011. (Docket no. 111). A copy of the motion for default judgment with the Larson declaration and exhibits was sent to the defaulting defendants by electronic mail and by first class mail on November 16, 2011 and a copy of the notice of hearing was sent in the same manner to the defaulting defendants on November 17, 2011. (Docket nos. 110, 111). On November 29, 2011, the plaintiff filed a notice of errata stating that there had been a typographical error in the spelling of the registrant of the

---

[2] Plaintiff misspells the name of this defendant in the title of the motion, the correct spelling is Wattana.

domain name ssswin.me and that the correct spelling of the defendant is Arthit, not Arthrit. (Docket no. 112). None of the defaulting defendants have responded to the complaint, the request for entry of default, or the motion for default judgment. On Friday, December 2, 2011, counsel for the plaintiff appeared before the undersigned and no one appeared on behalf of any of the defaulting defendants. (Docket no. 115).

## Factual Background

The following facts are established by the amended complaint (Docket no. 25), the memorandum in support of the motion for leave to serve certain defendants by alternative means (Docket no. 90), and the motion for default judgment with its supporting declaration and exhibits (Docket no. 110).

Plaintiff 3M is a corporation organized under the laws of the state of Delaware and has a principal place of business in the state of Minnesota. (Compl. ¶ 1). Defendant KC is located in Australia and is listed as the owner and registrant for the domain names mmmbet.net, 168mmm.net, 3mbet.net, mmm888.net, mmm998.net, mmm333.net, mmmwin.net, mmm456.net, mmm123.net, mmm2u.net, mmm789.net, 333456.net, mmm198.net, m3bet.net, m3bets.net, m3online.net, m8bet.net, m8online.net, and 33336.net. (Compl. ¶ 8). Defendant John B. LeStrange is located in Poland and is listed as the owner and registrant for the domain names 3msoccer.com, 3msoccer.net, 3minter.com, 3minter.net, and mmmbet.asia. (Compl. ¶ 9). Defendant 3MBKK is located in Thailand and is listed as the owner and registrant for the domain name 3mbkk.com. (Compl. ¶ 10). Defendant Arthit is located in Thailand and is listed as the owner and registrant for the domain name ssswin.me. (Compl. ¶ 12). Defendant Wattana is located in Thailand and is listed as the owner and registrant for the domain names 3m-asia.com, 3m-thailand.com, and 3m-sportbetting.com. (Compl. ¶ 13). Defendant Tharinee Pinidrak is

4

located in Thailand and is listed as the owner and registrant for the domain name 3mthailand-official.com. (Compl. ¶ 16). Defendant MS is located in Thailand and is listed as the owner and registrant for the domain name ssswin.com. (Compl. ¶ 17).

Plaintiff 3M owns the mark and trade name 3M, as well as various other marks and names that include 3M ("the 3M mark"). (Compl. ¶ 36). Plaintiff has used the 3M mark in commerce continuously since 1906. *Id.* Plaintiff has registered the 3M mark with the United States Patent and Trademark Office and currently owns hundreds of U.S. registrations for the 3M mark for numerous products and services. (Compl. ¶ 49). These registrations are valid and subsisting and many of them are incontestable. *Id.* Plaintiff is a diverse company and it has expanded its use of the 3M mark to more than 50,000 products and services in a wide variety of fields under the 3M mark. (Compl. ¶ 37). Among its many products and services 3M offers touchscreen solutions which are used worldwide in applications in the casino gaming industry for uses in slot games, video card games, and multi-player table games. (Compl. ¶ 38). Over the years 3M has also operated through a number of other names and entities bearing the 3M mark in connection with a wide variety of goods, services, and markets, such as 3M Export Sales, 3M Thailand Limited, 3M Automotive Industry Center, 3M Health Care, 3M Medical Products Group, 3M Document Systems, 3M Marine Trades Project, 3M Sound Products, 3M Life Sciences Sector, 3M Meeting Management Institute, and 3M Global Trading, Inc. (Compl. ¶ 40). For decades 3M has used the 3M mark in connection with its charitable underwriting activities through the 3M Foundation in sponsoring various arts, education, healthcare, and environmental activities and causes. (Compl. ¶ 41). 3M has developed an enormous amount of goodwill in its 3M mark and the 3M mark is inherently distinctive and serves to identify and indicate the source of 3M's products and services to the consuming public. (Compl. ¶¶ 43, 44).

As a result of the long use and promotion of the 3M mark by 3M, the 3M mark has become

distinctive to designate 3M, to distinguish 3M and its products and services from those of other

businesses, and to distinguish the source or origin of 3M's products and services. (Compl. ¶ 45).

The 3M mark is widely recognized as a designation of source of 3M's goods and services and

through the efforts of 3M the 3M mark has become famous throughout the United States.

(Compl. ¶¶ 46, 47).

     3M alleges that each of the defaulting defendants own and operate online gambling

websites and promote their online gambling activities using an identical or highly similar copy of

the 3M mark. (Compl. ¶ 50). Plaintiff asserts that the defaulting defendants operate within a

common scheme where they all display or have displayed the same or highly similar websites

that display the 3M mark, and many of the websites redirect or link to each other. (Compl. ¶ 51).

3M alleges that the domain name mmmbet.net and its corresponding website is the cornerstone

of the defaulting defendants' infringing activity.[3] (Compl. ¶ 52). Many of the other websites

operated by the defaulting defendants are connected or relate to the mmmbet.net website in some

way. _Id._ The websites accessible from the defaulting defendants domain names display similar

websites, graphics or logos as those displayed at www.mmmbet.net and when a consumer

attempts to create an account with several of those websites, he or she is directed to contact

information associated with the website www.mmmbet.net. _Id._ In addition to using the 3M

mark on the websites, many of the domain names that have been registered by the defaulting

defendants include the 3M mark or are similar to the 3M mark. (Compl. ¶ 53). The defaulting

defendants are not affiliated with or sponsored by 3M and have not been authorized by 3M to use

the 3M mark or any confusingly similar mark. (Compl. ¶ 54).

---

[3] Defendant KC is the registrant of the domain name mmmbet.net and various other infringing domain names.
(Compl. ¶ 8).

Plaintiff alleges that the defaulting defendants use registrars located in the United States, that some of them use hosting service providers in the United States, and that the gambling services offered on their websites are directed at least in part toward United States citizens. (Compl. ¶ 60). United States citizens are able to open online gambling accounts through the defaulting defendants' websites or websites to which they are redirected or connected. (Compl. ¶ 61).

Plaintiff claims that the defaulting defendants' unauthorized use of the 3M mark is likely to cause confusion, mistake, and/or deceive consumers as to some affiliation, connection, or association of defaulting defendants with 3M and the origin, sponsorship, or approval of the services offered by the defaulting defendants. (Compl. ¶ 62). 3M also states that the defaulting defendants' unauthorized use of the 3M mark falsely designates the origin of the products and services offered at the defaulting defendants' domain names (Compl. ¶ 63), trades on the goodwill of 3M in the 3M mark (Compl. ¶ 64), is likely to cause dilution by blurring and tarnishing 3M's famous 3M mark (Compl. ¶ 65), and unjustly enriches the defaulting defendants at 3M's expense (Compl. ¶ 66). Plaintiff alleges that unless the defaulting defendants are restrained from further infringing activity, the defaulting defendants will continue their activity and continue to cause irreparable harm to 3M and to the public for which there is no adequate remedy at law. (Compl. ¶ 69).

The physical addresses provided by the defaulting defendants in registering the domain names identified in the complaint appear to be false, fictitious, or not functional. (Docket no. 90 at 2-3). Mailings sent to the defaulting defendants have either been returned to the plaintiff, unclaimed by the recipient, or the tracking status indicates that delivery was "attempted" but not that it was successful. *Id.* The e-mail addresses provided by the defaulting defendants to the

registrars in registering the domain names identified in the complaint do appear to be functional addresses. *Id.* at 4-5.

3M has presented additional factual information in its motion for default judgment concerning the defaulting defendants. (Docket no. 110). In the Larson declaration (Docket no. 110-1) she states that KC has registered 19 domain names (including mmmbet.net) and KC has used Tiggee LLC, a company with a business address in the Eastern District of Virginia, for DNS services and hosting services related to the website available at mmmbet.net. (Larson Decl. ¶¶ 2, 3). VeriSign is the registry for all the domain names registered by KC and VeriSign is located in the Eastern District of Virginia. (Larson Decl. ¶ 4). KC used a registrar in Arizona (GoDaddy.com, Inc.) to register domain names, has used a Florida company (Prolexic Technologies, Inc.) for security services in connection with the websites available at the domain names, has entered into an agreement with a California company (Facebook, Inc.) in setting up a Facebook page, has entered into an agreement with a Washington company (Microsoft Corporation) in setting up a Hotmail e-mail address, and has used financial institutions in Washington (Visa, Inc.), New York (Mastercard, Inc. and Moneybookers USA, Inc.), and Colorado (The Western Union Company) to facilitate payment transactions from the online gambling websites. (Larson Decl. ¶ 5). Ms. Larson states that the KC websites offer an English language option, that United States citizens may open up accounts on those websites, and that payments can be made in U.S. currency with two United States companies (Moneybookers and Western Union) listed as available entities for making payments. (Larson Decl. ¶ 6). The websites available at KC's domain names state that users may wager on a wide variety of United States sports including NFL and NCAA "American Football" games, NCAA basketball games, golf, and baseball. (Larson Decl. ¶ 7).

John B. LeStrange has registered 5 domain names with GoDaddy (an Arizona company) as the registrar or sponsoring registrar and has an agreement with a California company (Google, Inc.) for the use of a Gmail e-mail address. (Larson Decl. ¶¶ 8, 9). The websites offered at the domain names registered by John B. LeStrange have an English language option, are closely similar to, if not identical, in appearance and content to the website at www.mmmbet.net and they feature prominent links to that website and others owned by KC. (Larson Decl. ¶ 9).

Defaulting defendant 3MBKK uses a Hotmail e-mail address which indicates an agreement with Microsoft in Washington. (Larson Decl. ¶ 10). The website at the domain name 3mbkk.com is linked to a clone of the mmmbet.net website (mmm456.net) which is registered by defaulting defendant KC. (Larson Decl. ¶ 11).

Arthit is listed as the registrant for the domain name ssswin.me, uses hosting services of an Ohio company (XLHost, a subsidiary of eNet, Inc.) in connection with the website offered at ssswin.me, and uses a Hotmail e-mail address which indicates an agreement with Microsoft in Washington. (Larson Decl. ¶ 12). The website at the domain name ssswin.me features prominent links to mmmbet.net. (Larson Decl. ¶ 13).

Wattana has registered the domain names 3m-asia.com, 3m-thailand.com, and 3m-sportbetting.com with a California company (OnlineNic Inc.), has used a company in Texas (Hostgator.com LLC) to host the websites available at those domain names, and has used an e-mail address created with a company in California (Google, Inc.) in connection with the registration of the domain names at issue. (Larson Decl. ¶ 14). The websites available at the domain names registered by Wattana feature an English language option, are identical to or closely resemble the website at mmmbet.net, and feature prominent links to the website at mmmbet.net, including a banner "Welcome to MMMBET". (Larson Decl. ¶ 15).

Tharinee Pinidrak is the registrant of the domain name 3mthailand-official.com, registered through a Wyoming LLC (Name.com LLC), using the privacy services of a Wyoming LLC (Christian Investments LLC), and with a website hosted by a company in Utah (Bluehost, Inc.). (Larson Decl. ¶ 16). The website at 3mthailand-official.com features an English language option, is identical to or closely resembles the website at mmmbet.net, and features prominent links to the website at mmmbet.net, including a banner "Welcome to MMMBET". (Larson Decl. ¶ 17).

MS is listed as the registrant for the domain name ssswin.com and MS used a Hotmail e-mail address created with a company in Washington (Microsoft) in connection with the registration and has used a company in Texas (ThePlanet.com) for hosting services for the website offered at that domain name. (Larson Decl. ¶ 18). The website at ssswin.com is redirected to ssswin.net which promotes the mmmbet.net site and links to other domain names at issue, including mmm456.net, mmm888.net, 333456.net, and mmmwin.net. (Larson Decl. ¶ 19).

Each of the domain names owned by the defendants is used for a gambling website that offers live sports betting and/or casino gambling, features links to mmmbet.net or another clone of mmmbet.net, and/or prominently promotes a connection or association with the website at mmmbet.net. (Larson Decl. ¶ 20). Even though they have different registrants, these websites feature identical graphics, similar layouts and content, and/or linked to or from each other and many appear to be clones of each other. (Larson Decl. ¶ 21).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend." Based on the failure of the defaulting defendants to file a responsive pleading in a timely manner, the Clerk has entered a default as to each of the defaulting defendants. (Docket no. 109). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

### Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. 3M asserts various claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and claims under Virginia law. (Compl. ¶ 30). This court has subject matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related Virginia law claims pursuant to 28 U.S.C. § 1367(a).

While there is no question that this court has subject matter jurisdiction over the claims raised in the complaint, the issue of personal jurisdiction over the defaulting defendants is not so clear. In this action 3M seeks to establish personal jurisdiction over the defaulting defendants for their activities in registering certain domain names and the infringing activities undertaken at the websites available at those domain names. 3M recognizes that none of the defaulting defendants

are located in the United States and that it does not have sufficient information to locate and physically serve any of the defaulting defendants with a copy of the summons and complaint through normal channels.[4] The issue of personal jurisdiction was raised with 3M's counsel by the undersigned and 3M has provided authority to support its claim of personal jurisdiction over the defaulting defendants. In particular, 3M relies heavily on this court's decision in *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F. Supp. 2d 340 (E.D. Va. 2001). Having reviewed the activities of the defaulting defendants and the ruling in *Alitalia*, the undersigned recommends a finding that there is personal jurisdiction over each of the defaulting defendants.

In *Alitalia* this court found that the foreign registrant's contacts with Virginia fell within the reach of the Virginia long-arm statute and constituted sufficient minimum contacts and purposeful availment to satisfy due process requirements. *Id.* at 349-50. In that case the infringing domain name was registered by an entity in the Dominican Republic with no offices, employees, or physical location in the United States. *Id.* at 342. The website available at the infringing domain name offered a real-time, interactive, on-line casino gambling experience and required the users to enter into agreements in order to play individual games. *Id.* at 350. Since the servers for the infringing website were located in the Dominican Republic, the issue presented under the Virginia long-arm statute (Va. Code § 8.01-328.1(A)(4)) was whether the defendant caused a tortious injury in Virginia by an act or omission outside of Virginia and did the defendant regularly do or solicit business in Virginia, engage in any other persistent course of conduct in Virginia, or derive substantial revenue from goods used or services consumed in

---

[4] 3M obviously made a strategic decision to pursue an *in personam* claim against the defaulting defendants instead of pursuing an *in rem* action against the domain names. While this approach may allow for the entry of a judgment against the defaulting defendants for injunctive relief and money damages, the ability to enforce any such judgment is in doubt given the uncertainty of the location of the defaulting defendants. Furthermore, unlike an *in rem* action in which the court declares who owns the subject *res* (domain name) and the registrar or registry is required to comply with the court's order, in an *in personam* action for trademark infringement or unfair competition, there is no statutory requirement that the non-party registry or registrar comply with a judgment for trademark infringement or unfair competition and it will be up to 3M to enforce any judgment through normal procedures.

Virginia. *Id.* at 348. Noting that a violation of the Lanham Act is tortious in nature and that the relevant tortious act is the use of the domain name, the court found that the maintenance of "an interactive website accessible to Virginia consumers 24 hours a day" using the infringing domain name constituted engagement in a persistent course of conduct in Virginia under the long-arm statute. *Id.* In addressing the due process consideration, the court held that the subject website was not a passive website, but was an active website that interacted with consumers to such a degree to put the registrant on notice that it was purposefully directing its activities to those consumers wherever they may be. *Id.* at 350. In that case the evidence showed that there were five Virginia based members and the court held that the contacts with those residents were sufficient to put the defendant on notice that it purposefully directed its activities at Virginia and that it should therefore foresee being haled into court in Virginia. *Id.*

While the facts of this case are not identical to the facts in *Alitalia,* they do appear to be similar enough to fall within that holding. The facts supporting a finding under the Virginia long-arm statute that there has been a tortious injury in Virginia by an act outside of Virginia are the same as in *Alitalia.* In this case we have an allegation of trademark infringement (use of infringing domain names) being made against defendants who are not located in Virginia but are alleged to be causing tortious injury through acts outside of Virginia by maintaining infringing websites that are interactive and available to Virginians 24 hours a day. The difference in the analysis in this case is in the due process consideration. While there is no question that the infringing websites are available to anyone in Virginia with access to the internet (or anyone in the world with access to the internet) and that they are interactive, there is no direct evidence that Virginians have accessed or used any of the websites. Furthermore, a review of the allegedly infringing websites reveals that while they may have "English language options", many of them

seem to be targeted to consumers outside of the United States since they are primarily in a language other than English. (Docket no. 110, Exhibits H, J, L, N, R). Like *Alitalia*, in order to participate in the activities available on these websites one is required to agree to certain terms and conditions and to make certain payments. Given that these websites are highly interactive, that they require an agreement with the operator, and that they are accessible to Virginians 24 hours a day, it appears that these facts are sufficient to put the defaulting defendants on notice that they are purposefully directing their activities at Virginia and therefore should foresee being brought into court in Virginia.[5]

Venue is proper in this district under 28 U.S.C. § 1391(d) since an alien may be sued in any district and each of the defaulting defendants is alleged to be an alien.

For these reasons the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defaulting defendants, and that venue is proper in this court.

**Service**

On October 3, 2011, the undersigned entered an order finding that pursuant to Fed. R. Civ. P. 4(f)(3) the defaulting defendants could be served by electronic mail. (Docket no. 97). As shown in the returns of service filed by 3M, a copy of the summons, complaint, amended complaint and the October 3, 2011 order were sent by electronic mail to each of the defaulting defendants in accordance with the order. (Docket nos. 99-105).

For these reasons the undersigned recommends a finding that service of process has been accomplished in this action.

---

[5] A finding of *in personam* jurisdiction in this case may have a significant impact on the ability to pursue an *in rem* action. Since one must establish a lack of *in personam* jurisdiction to bring an *in rem* action, one could argue that in any case in which an interactive website is involved, *in rem* jurisdiction should not be allowed since personal jurisdiction would be present over the registrant – even when the registrant cannot be located.

14

### Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a), the defaulting defendants were required to file an answer or response with the Clerk by October 24, 2011, twenty-one days after service. No responsive pleading was filed by any of the defaulting defendants. On October 25, 2011, 3M filed its request for entry of default (Docket no. 108) and the Clerk of the Court entered a default on October 26, 2011 against each of the defaulting defendants (Docket no. 109).[6] After obtaining these defaults, 3M filed its motion for default judgment and noticed it for a hearing on December 2, 2011. (Docket nos. 110, 111). 3M served the defaulting defendants with a copy of the request for entry of default, the motion for default judgment, and the notice of hearing. (Docket nos. 108, 110, 111).

The undersigned recommends a finding that notice of this action was provided properly, that no defendant filed a responsive pleading in a timely manner, and that the Clerk properly entered a default as to each of the defaulting defendants.

### Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). In the motion for default judgment plaintiff seeks injunctive relief preventing the defaulting defendants from using plaintiff's trademarks or service marks, or any other mark confusingly similar to or diluting of plaintiff's marks, and transferring the infringing domain names that they

---

[6] The request for entry of default filed by 3M lacks any showing that the defaulting defendants are not minors or incompetent persons as required by Fed. R. Civ. P. 55(b). (Docket no. 108). Since some of the defaulting defendants appear to be corporate entities and those that may be individuals have allegedly entered into contracts with registrars to register domain names and are operating websites using those domain names, the undersigned assumes that they are not minors or incompetent.

own to plaintiff. Plaintiff also seeks an award of statutory damages in the amount of $100,000 for each infringing domain name and recovery of reasonable costs and attorney's fees.[7]

As an initial matter the undersigned raised with plaintiff's counsel the issue of whether it was proper to join the claims asserted against these defaulting defendants in a single action pursuant to Fed. R. Civ. P. 20. Rule 20 allows the joinder of claims against defendants if the right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences and any question of law or fact common to all defendants will arise in the action. There is no question that a common question of law or fact would arise in this action in that the validity of the 3M mark is central to the claims raised against all defendants. As to the requirement of the relief arising out of the same transaction, occurrence, or series of transactions or occurrences, it appears that 3M has made sufficient allegations in the complaint to support joinder of the defendants in this case. In contrast to many domain name cases in which a trademark owner names multiple defendants on the sole basis that each defendant is infringing a valid trademark, 3M has alleged that the defaulting defendants operate within a common scheme where they all display or have displayed the same or highly similar websites that infringe the 3M mark and many of the websites redirect or link to each other. (Compl. ¶ 51). Given the similarity of the websites offered at the defaulting defendants' websites and the interrelation of those websites, the undersigned recommends a finding that joinder of the claims against the defaulting defendants is proper.

---

[7] 3M has not presented any evidence to support an award of damages for the claims in counts VII and VIII for unjust enrichment and violation of Virginia's business conspiracy statute in this motion for default judgment and while the motion for default judgment makes a reference to those counts it does not seek any specific relief under those counts. Since the injunctive relief and statutory damages being sought in the motion for default judgment are based on violations of the Lanham Act, only those claims will be addressed in this section.

**Trademark Infringement and Unfair Competition (Counts I and III)**

To prevail on its claims for trademark infringement and unfair competition under the

Lanham Act 3M must establish that it has a valid, protectable trademark and that the defendants'

use of a colorable imitation of the trademark is likely to cause confusion among consumers.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). There is little doubt that

3M has carried its burden on these claims.

As alleged in the complaint, 3M has obtained hundreds of U.S. registrations for the 3M

mark and those registrations are valid and subsisting. (Compl. ¶ 49). Many of those

registrations are incontestable pursuant to 15 U.S.C. § 1065. *Id.* Accordingly, there is no

question that 3M has a valid, protectable trademark.

A review of the domain names and the websites offered at those domain names reveals

that the use of the 3M mark or an imitation of that mark is likely to cause confusion among

consumers. In assessing the likelihood of confusion issue, the Fourth Circuit has identified seven

factors that should be considered: (1) the strength or distinctiveness of the [plaintiff's] mark; (2)

the similarity of the two marks; (3) the similarity of the goods and services that the marks

identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the

similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual

confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir.

1995). Not all of these factors will be relevant in every trademark dispute and there is no need

for each factor to support plaintiff's position on the likelihood of confusion issue but the first

factor -- the strength or distinctiveness of the plaintiff's mark -- is important to an assessment of

the confusion issue. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). As

discussed below, the 3M mark is not only distinctive, it has become a famous mark through the

long use and promotion by the plaintiff. The defaulting defendants' use of the 3M mark and imitations of that mark support a finding of likelihood of confusion. Furthermore, plaintiff does provide goods and services used in the casino gaming industry (Compl. ¶ 38) so there is some similarity of the goods and services. Plaintiff has a significant presence on the internet and operates its own website at www.3m.com. (Compl. ¶ 42). While there is no direct evidence of the defaulting defendants' intent, plaintiff has alleged that the defaulting defendants intended to cause confusion and trade on 3M's vast goodwill in the 3M mark (Compl. ¶ 72) and it is difficult to believe that the prominent use of the 3M mark was for any reason other than to trade on plaintiff's goodwill in that mark.

Plaintiff alleges that the "cornerstone" of the defaulting defendants' infringing activity is the website available at the domain name mmmbet.net. (Compl. ¶ 52). Not only does that domain name itself contain an imitation of the 3M mark (mmm), the website available at mmmbet.net prominently displays the 3M mark. (Docket no. 110, Ex. E). Given the prominent use of the actual 3M mark on the website, it is highly likely that a consumer may mistakenly believe that the website is related to, sponsored by, or affiliated with 3M. The large majority of the domain names registered by KC contain either "mmm", "3M, or "M3" as a part of the domain name. (Compl. ¶ 8). While some of the domain names may not contain the 3M mark or a variation of the 3M mark as a part of the domain name (e.g. m8bet.net and m8online.net) they do still infringe the 3M mark by either displaying the 3M mark on the website available at the domain name or they link to or redirect the consumer to the mmmbet.net website.

Similarly the domain names registered by defaulting defendants John B. LeStrange, 3MBKK, Wattana, and Tharinee Pinidrak all contain the 3M mark or a variation of that mark (mmm) as a part of the domain name and the websites displayed at those domain names use the

3M mark. While the domain name registered by Arthit (ssswin.me) and the domain name registered by MS (sssswin.com) do not contain the 3M mark or a variation of that mark in the domain name, the website displayed at each of those domain names uses the 3M mark.

For these reasons the undersigned recommends a finding that the defaulting defendants have infringed plaintiff's 3M mark in violation of 15 U.S.C. § 1114(1) and that their use of the 3M mark constitutes unfair competition under 15 U.S.C. § 1125(a).

### Trademark Dilution (Count II)

To show trademark dilution plaintiff must show that it owns a famous mark and that the use of that mark by another in commerce is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. *Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (E.D. Va. 2008). A mark is considered famous under the Lanham Act "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii)

the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; and (vi) any actual association between the mark or trade name and the famous mark.  15 U.S.C. § 1125(c)(2)(B). Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.  15 U.S.C. § 1125(c)(2)(C).

The allegations in the complaint support a finding that the 3M mark is famous and that the defaulting defendants' use of the famous 3M mark in operating online gambling websites blurs and tarnishes plaintiff's famous mark.  Plaintiff has used the 3M mark since 1906, it offers more than 50,000 products and services in a wide variety of fields and markets under the 3M mark, the 3M mark is distinctive and distinguishes the source of plaintiff's products and services, and plaintiff has obtained hundreds of registrations for the 3M mark for numerous products and services.  (Compl. ¶¶ 36, 37, 45, 49).

Given the prominent use of plaintiff's famous 3M mark and imitations of that mark by the defaulting defendants, the distinctiveness of the 3M mark, the wide recognition by the consuming public of the 3M mark as a source of plaintiff's goods and services, the apparent attempt to trade on plaintiff's goodwill by using the 3M mark, and the lack of any association between the defaulting defendants and the plaintiff, the undersigned recommends a finding that the actions of the defaulting defendants constitute dilution by blurring under 15 U.S.C. § 1125(c)(2)(B).  In addition, given the use of the 3M mark in the operation of online gambling websites, the undersigned recommends a finding that the actions of the defaulting defendants constitute dilution by tarnishment under 15 U.S.C. § 1125(c)(2)(C).

### Cybersquatting (Count IV)

The Anti-Cybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d) imposes civil liability on a person who

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that
>
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>
>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark....

To state a claim under the ACPA plaintiff must prove that the defaulting defendants registered, trafficked in, or used a domain name that is identical or confusingly similar to the distinctive 3M mark with a bad faith intent to profit. Or, since the 3M mark is famous, plaintiff must prove that the defaulting defendants registered, trafficked in, or used a domain name that is identical, confusingly similar, or dilutive of plaintiff's famous mark. *See People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). Having previously recommended a finding that the 3M mark is famous and that the domain names and/or websites offered at those domain names infringe and dilute the famous 3M mark, the remaining issue for a claim under the ACPA for the domain names containing the 3M mark or a confusingly similar mark is whether the registrations of those domain names were done in bad faith.[8]

The ACPA identifies nine factors to be used in determining whether a registrant has a bad faith intent to profit, each will be discussed in turn. For at least the following reasons, the undersigned recommends a finding that KC, John B. LeStrange, 3MBKK, Wattana, and Tharinee

---

[8] Plaintiff recognizes that the ACPA focuses on the domain name and requires that the *domain name* be identical or confusingly similar to the mark. Given this more narrow focus, plaintiff does not assert ACPA claims against Arthit and MS relating to the domain names ssswin.me and ssswin.com. For the same reasons, the ACPA claims against KC for domain names 333456.net, m8bet.net, m8online.net, and 333365.net must fail.

Pinidrak ("ACPA defendants") have registered and used domain names with a bad faith intent to profit from the 3M mark.

The first factor is "the trademark or other intellectual property rights of the person, if any, in the domain name." 15 U.S.C. § 1125 (d)(1)(B)(i)(I). The ACPA defendants have not been authorized to use the 3M mark and no person who operates any of the websites at those domain names has any intellectual property rights in the 3M mark. The second factor is "the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." 15 U.S.C. § 1125 (d)(1)(B)(i)(II). Other than 3MBKK, the domain names do not contain the legal names of the owners of the domains, nor do the ownership records contain a name that is commonly used to identify the legal owner. While 3MBKK does have some similarity to the 3M mark, there is no indication that 3MBKK is a legal entity or actually exists.

The third factor is "the person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services." 15 U.S.C. § 1125 (d)(1)(B)(i)(III). None of the subject domain names is being used to sell 3M's goods or services, the only *bona fide* use of the 3M mark. The fourth factor is "the person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name." 15 U.S.C. § 1125 (d)(1)(B)(i)(IV). The domain names at issue are being used for a purely commercial purpose, online gambling, and they do not contain any commentary about or comparisons to plaintiff's actual goods or services.

The fifth bad faith factor is "the person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or

endorsement of the site." 15 U.S.C. § 1125 (d)(1)(B)(i)(V).  The wholesale incorporation of plaintiff's 3M mark indicates that the intent behind the registration and use of the subject domain names was to trade upon plaintiff's goodwill in the 3M mark.  The sixth factor is "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the *bona fide* offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125 (d)(1)(B)(i)(VI).  There is no evidence of any such conduct in this case.

The seventh factor is "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125 (d)(1)(B)(i)(VII).  As discussed above, the ACPA defendants listed either fictitious or non-existent addresses in their registration agreements with the registrars of the domain names.

The eighth factor is "the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties." 15 U.S.C. § 1125 (d)(1)(B)(i)(VIII).  KC, John B. LeStrange, Wattana, and Tharinee Pinidrak have acquired multiple, confusingly similar domain names using the 3M mark.  And, the ninth factor is "the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous." 15 U.S.C. § 1125 (d)(1)(B)(i)(IX). The undersigned has recommended a finding that the 3M mark is distinctive and famous.

For these reasons, the undersigned recommends a finding that defaulting defendants KC, John B. LeStrange, 3MBKK, Wattana, and Tharinee Pinidrak have violated the ACPA.

**Relief Sought**

The Lanham Act grants the court power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 (15 U.S.C. § 1125). Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found. 15 U.S.C. § 1116. As alleged in the complaint, absent an order from this court enjoining the defendants from further infringement of plaintiff's famous 3M mark, defendants are likely to continue to infringe the 3M mark and the public will continue to be subject to the likelihood of confusion.

Plaintiff also seeks an award of statutory damages under the ACPA. The Lanham Act provides that in a case involving a violation of 15 U.S.C. § 1125(d)(1), the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and

24

not more than $100,000 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiff suggests that an award of the maximum amount ($100,000) per domain name is appropriate given the "blatant use" of the 3M mark on their websites and their bad faith attempt to profit from plaintiff's goodwill in the 3M mark.

There is no evidence concerning the amount of traffic generated by or to the websites operated by the defaulting defendants and plaintiff has not presented any evidence of actual confusion or damages that it has sustained. While the use of the 3M mark does appear to be blatant and for the purpose of trading on the goodwill of the plaintiff, the undersigned does not believe that these facts alone justify the imposition of the maximum amount of statutory damages allowed under the statute. Given plaintiff's assertion that the website at mmmbet.net is the "cornerstone" of the infringing activity, the undersigned recommends an award of $75,000 in statutory damages for that domain name. As for the other domain names, the undersigned recommends an award of $10,000 in statutory damages for each of the remaining domain names violating the ACPA. In addition the undersigned recommends that for the domain names that are subject to a judgment under the ACPA, an order be entered requiring the transfer of the domain names to the plaintiff under 15 U.S.C. § 1125(d)(1)(C).

Plaintiff also requests a finding that this is an exceptional case and an award of the reasonable attorney's fees and costs incurred in bringing this action under 15 U.S.C. § 1117(a). The statute does not define what qualifies as an "exceptional case" but the Fourth Circuit has defined the "exceptional case" as one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004). For the reasons set forth above, the undersigned recommends a finding that this

is an exceptional case and that plaintiff should be awarded its reasonable attorney's fees and costs.

## Conclusion

For the foregoing reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of 3M Company that includes the following provisions:

Defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit, along with their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with any of them who receive actual notice of the order, are permanently enjoined from using the 3M trademark, as well as any other mark or name that includes 3M or any other mark confusingly similar to or diluting the 3M trademark.

That KC take all necessary steps to have the registrations for the following domain names transferred to the plaintiff: mmmbet.net, 168mmm.net, 3mbet.net, mmm888.net, mmm998.net, mmm333.net, mmmwin.net, mmm456.net, mmm123.net, mmm2u.net, mmm789.net, 333456.net, mmm198.net, m3bet.net, m3bets.net, m3online.net, m8bet.net, m8online.net, and 33336.net.

That John B. LeStrange take all necessary steps to have the registrations for the following domain names transferred to the plaintiff: 3msoccer.com, 3msoccer.net, 3minter.com, 3minter.net, and mmmbet.asia.

That 3MBKK take all necessary steps to have the registration for the domain name 3mbkk.com transferred to the plaintiff.

That Wattana take all necessary steps to have the registrations for the following domain names transferred to the plaintiff: 3m-asia.com, 3m-thailand.com, and 3m-sportbetting.com.

That Tharinee Pinidrak take all necessary steps to have the registration for the domain name 3mthailand-official.com transferred to the plaintiff.

That MS take all necessary steps to have the registration for the domain name ssswin.com transferred to the plaintiff.

That Arthit take all necessary steps to have the registration for the domain name ssswin.me transferred to the plaintiff.

· That statutory damages be awarded to the plaintiff against defendant KC in the total amount of $215,000; comprising an award of $75,000 for the domain name mmmbet.net and $10,000 for each of the following domain names: 168mmm.net, 3mbet.net, mmm888.net, mmm998.net, mmm333.net, mmmwin.net, mmm456.net, mmm123.net, mmm2u.net, mmm789.net, mmm198.net, m3bet.net, m3bets.net, and m3online.net.

That statutory damages be awarded to the plaintiff against defendant John B. LeStrange in the total amount of $50,000; comprising an award of $10,000 for each of the following domain names: 3msoccer.com, 3msoccer.net, 3minter.com, 3minter.net, and mmmbet.asia.

That statutory damages be awarded to the plaintiff against defendant 3MBKK in the amount of $10,000 for the domain name 3mbkk.com.

That statutory damages be awarded to the plaintiff against defendant Wattana in the total amount of $30,000; comprising an award of $10,000 for each of the following domain names: 3m-asia.com, 3m-thailand.com, and 3m-sportbetting.com.

That statutory damages be awarded to the plaintiff against defendant Tharinee Pinidrak in the amount of $10,000 for the domain name 3mthailand-official.com.

That an order be entered under 15 U.S.C. § 1125(d)(1)(C) requiring the transfer of the following domain names to the plaintiff: mmmbet.net, 168mmm.net, 3mbet.net, mmm888.net,

mmm998.net, mmm333.net, mmmwin.net, mmm456.net, mmm123.net, mmm2u.net,

mmm789.net, mmm198.net, m3bet.net, m3bets.net, m3online.net, 3msoccer.com, 3msoccer.net,

3minter.com, 3minter.net, mmmbet.asia, 3mbkk.com, 3m-asia.com, 3m-thailand.com, 3m-

sportbetting.com, and 3mthailand-official.com.[9]

That the plaintiff be awarded reasonable attorney's fees and costs pursuant to 15 U.S.C. §

1117(a).

### Notice to Parties

Failure to file written objections to these proposed findings of fact and recommendations

within fourteen (14) days after being served with a copy of the proposed findings of fact and

recommendations may result in the waiver of any right to a *de novo* review of the proposed

findings and recommendations and such failure shall bar you from attacking on appeal any

findings and conclusions accepted and adopted by the District Judge except upon grounds of

plain error.

Plaintiff 3M Company is hereby directed to send a copy of these proposed findings of

fact and recommendations by electronic means to the e-mail addresses used to serve these

defendants pursuant to the October 3, 2011 order.  Plaintiff 3M Company shall then file a notice

with the court indicating the date and manner by which service was completed.

ENTERED this 9th day of January, 2012.

_____/s/_____

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

---

[9] The inclusion of this provision may facilitate having the registry for these domain names transfer the registrations.