IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv627 (TSE/JFA) |
| | ) | |
| | ) | |
| CHRISTIAN INVESTMENTS LLC, D/B/A | ) | |
| PROTECTED DOMAIN SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS
LUCA TONI A/K/A LUCA TONY AND DIRECTI INTERNET SOLUTIONS
PVT LTD D/B/A PUBLICDOMAINREGISTRY.COM D/B/A PRIVACYPROTECT.ORG**

Pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiff 3M Company ("3M" or "Plaintiff")

respectfully submits this Memorandum of Law in Support of its Motion for Default Judgment

against Defendants Luca Toni A/K/A Luca Tony ("Luca") and Directi Internet Solutions Pvt

Ltd d/b/a PublicDomainRegistry.com d/b/a PrivacyProtect.org ("Directi") (collectively referred

to herein as "Defendants").

### INTRODUCTION

Defendants have failed to timely serve an answer or otherwise defend this action in

response to 3M's Complaint for trademark infringement, unfair competition, and trademark

dilution in violation of the Lanham Act, cybersquatting in violation of the Anti-cybersquatting

Consumer Protection Act, trademark infringement and unfair competition under the common

law of the State of Virginia, and violation of the Virginia Business Conspiracy Statute, Va.

Code §18.2-499 *et. seq.* Plaintiff seeks permanent injunctive relief, permanently preventing

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898    703.273.8897

Cameron McEvoy

1

Defendants from using Plaintiff's trademarks or service marks, or any other mark confusingly similar to or diluting of Plaintiff's marks; transferring the domain names thai3m.com and thai3m.net that Luca owns to 3M (collectively referred to herein as the "Luca Domains"); an award of statutory damages in the amount of $11,000 for the Luca Domains and $10,000 per each of the domain names 3mthai888.com and 3mbet-online.com (collectively referred to herein as the "Directi Domains," and, together with the Luca Domains, the "Infringing Domains") that were owned in the name of Directi[1] as of the filing date of 3M's original complaint (the "OC"); and recovery of its reasonable costs and attorneys' fees. The grounds for the relief requested are set forth below.

## PROCEDURAL BACKGROUND

3M filed its First Amended Complaint ("FAC") in this proceeding on July 18, 2011. Dkt. No. 25. On October 3, 2011, the Court permitted 3M to serve Luca by publication in Il Secolo XIX, a newspaper with circulation in Genoa, Italy ("October 3 Order"). Dkt. No. 97. 3M published a notice for Luca in Il Secolo XIX once a week for four successive weeks commencing October 28, 2011. On December 6, 2011, 3M filed the original Return of Service Form with the Court. Dkt. No. 117. Luca was obligated to serve an answer or otherwise respond to the FAC on or before December 18, 2011, pursuant to Va. Code 8.01-317 ("every order of publication shall…require the defendants, or unknown parties, against whom it is entered to appear and protect their interests on or before the date stated in the order which shall be no sooner than fifty days after entry of the order of publication"). Luca failed to file or serve an answer or any other responsive pleading before December 18, nor did Luca contact 3M's attorneys to request an extension of time or file a motion in this Court requesting additional time

[1] The relationship between PrivacyProtect.org (the name of the privacy service) and Directi is discussed in footnote 5 and in Section II.C.2.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898  703.273.8897

Cameron/McEvoy

to file a response.  3M filed a Request to the Clerk of Court for Entry of Default on December

28, 2011, and Luca's default was entered by the Clerk on January 11, 2012.  *See* Dkt No. 122.

3M served Directi through the Hague Convention on November 24, 2011.  *See* Dkt No.

137.  On April 2, 2012, 3M filed the original Return of Service Form with the Court.  *See Id.*

Directi was obligated to serve an answer (or otherwise respond to the Amended Complaint) on

or before December 15, 2011.  Directi failed to file or serve an answer or any other responsive

pleading before December 15, nor did Directi contact 3M's attorneys to request an extension of

time or file a motion in this Court requesting additional time to file a response.  3M filed a

Request to the Clerk of Court for Entry of Default on April 3, 2012, and Directi's default was

entered by the Clerk on April 4, 2012.  *See* Dkt No. 141.

3M now moves for entry of default judgment against Defendants pursuant to Fed. R.

Civ. 55(b)(2).

## FACTS

In support of its motion, 3M relies on the facts stated in its FAC, which are deemed

admitted as a result of Defendants' default.  Fed. R. Civ. P. 8(b)(6) ("An allegation – other than

one relating to the amount of damages – is admitted if a responsive pleading is required and the

allegation is not denied").  3M also relies on other items contained in the Court's file cited

above.  Because the uncontroverted facts of record are more than sufficient to support 3M's

claims for relief, default judgment is warranted.

## ARGUMENTS AND AUTHORITIES

### I.      Defendants Are Subject to Personal Jurisdiction in Virginia.

"[A] plaintiff is required to make only a prima facie showing that defendants are subject

to personal jurisdiction. In determining whether a plaintiff has established a prima facie case, a

court 'must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898  FAX  703.273.8897

any factual conflicts in the affidavits in the plaintiff's favor.'" *Convergence Tech. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 634 (E.D.Va. 2010) (internal citations omitted). 3M has met this burden.

Courts in the Fourth Circuit analyzing whether a forum has personal jurisdiction over a non-resident defendant consider (1) "whether the particular facts and circumstances of the case fall within the reach of Virginia's long-arm statute," and (2) if so, whether jurisdiction offends "traditional notions of fair play and substantial justice." *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F. Supp. 2d 340, 347-48 (E.D. Va. 2001) (finding personal jurisdiction over foreign owner of interactive gambling website); *see also Ellicott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 477 (4th Cir. 1993).

**A.     Defendants Are Within the Reach of Virginia's Long-Arm Statute.**

Section 8.01-328.1(A)(4) of Virginia's long-arm statute provides for personal jurisdiction over a defendant "(i) who causes tortious injury (ii) in Virginia (iii) by an act or omission outside of Virginia if that person (a) regularly does or solicits business in Virginia, (b) engages in any other persistent course of conduct in Virginia, or (c) derives substantial revenue from goods used or consumed or services rendered in Virginia." *Alitalia-Linee*, 128 F. Supp. 2d. at 348.

In *Alitalia-Linee*, this Court found that the activities of a foreign registrant of an interactive gambling website were within the reach of the Virginia long-arm statute where the plaintiff alleged that the defendant was using a domain name online "likely to cause confusion, mistake, and deception of Virginia consumers and (ii) dilutes the distinctive quality of Alitalia's famous mark, and thereby damages Alitalia's business, reputation, and goodwill among Virginia consumers." *Id.* The plaintiff had also alleged that the infringing/diluting domain name was used for "an interactive website accessible to Virginia consumers 24 hours a day." *Id.*

Consistent with *Alitalia-Linee*, this Court has regularly found that a foreign website

registrant is within the reach of the Virginia long-arm statute where the foreign website owner

causes tortious injury in Virginia through violation of federal trademark law on a website

accessible to Virginians. *See, e.g, Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d

589, 593 (E.D. Va. 2003) (finding defendant's alleged actions in violation of federal trademark

law through a website accessible by Virginians within the reach of the Virginia long-arm

statute); *see also* the Final Order and Judgment (Dkt. No. 125).

### B.   Defendants Have Engaged In Sufficient Minimum Contacts with Virginia Such That This Court's Exercise of Personal Jurisdiction Comports with the Due Process Clause.

Under federal constitutional standards, a court may exercise jurisdiction over a

defendant where the defendant has "minimum contacts" with the forum state "such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)

(quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).  The

"minimum contacts" prong of the test can be satisfied by showing either that the defendants

have continuous and systematic contacts with the forum state (general jurisdiction), or that

the cause of action arose out of the defendant's activities within the forum state (specific

jurisdiction), and that other due process concerns are satisfied.  *Helicopteros Nacionales de

Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984).  Minimum contacts exist if the non-

resident defendant's contacts with the forum state are such that it "should reasonably

anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 197 (1980), because it has performed "'some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws.'"  *See Burger King Corp. v.*

5

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   703.273.8897

TEL  703.273.8898  |  FAX

Cameron McEvoy
PLLC

*Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Specific jurisdiction may exist when the plaintiff's particular cause of action arises from the non-resident defendant's activities within the forum state. *Helicopteros*, 466 U.S. at 414-16. Thus, a court may exercise specific jurisdiction over the defendant where the suit itself arises out of or is related to the defendant's contacts with the forum state. *Id.* at 414 n.8.

### 1. The Court Has Specific Jurisdiction Over Luca Based On His Contacts with Virginia.

The Court has specific jurisdiction over Luca because this dispute arises out of his contacts with Virginia. Luca is listed as the registrant of the Luca Domains.[2] Declaration of Steven Espenshade ("Decl.") at ¶ 2. As of the filing date of 3M's original Complaint ("OC"), the domain name thai3m.net was used to automatically redirect users to an interactive gambling website (the "Luca Website") at the domain name thaimmm.net, which featured a colorable imitation of the 3M Mark. *Id.* at ¶ 3.[3] Just like the interactive gambling website at issue in the *Alitalia-Linee* case, the Luca Website and its linked sites could be accessed by Virginia

---

[2] At the time of the filing of the original Complaint, the domain thai3m.com was used for a website with the message "วันหยุดประจำปีบริษัท งดฝากถอน 28-30 คะ," translated in English by one source as "Annual vacation leave may withdraw it 28-30." Decl. at ¶ 8. Although the content for this particular site did not appear on its face to be used in connection with the gambling scheme, it was owned by Luca along with thai3m.net (which was used in connection with an interactive gambling site), and also included "3M." Consequently, it was included in this lawsuit.

[3] The domain name thaimmm.net is registered to Marcos A/K/A 3M Specialist ("Marcos"), another defendant in this action. Luca and Marcos may be the same person, considering: (1) the domain thai3m.net owned by Luca automatically redirected to the domain thaimmm.net, owned by Marcos; (2) both Luca and Marcos provided invalid physical and email addresses; (3) in registering the Luca Domains and thaimmm.net, respectively, Luca and Marcos provided likely fictitious names that are nearly identical to famous soccer players, and (4) in registering the Luca Domains and thaimmm.net, respectively, Luca and Marcos listed addresses that include what appear to be fictitious street names that merely mimic each defendant's alleged country of residence (i.e., Luca listed an address on "Italian Street," in Italy, and Marcos listed an address on "SriLankanmatan Road," in Sri Lanka). Decl. at ¶ 5.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898   703.273.8897

CAMERON McEvoy
PLLC

residents to register, pay money, and gamble 24 hours a day, and to participate in the activities available on these infringing websites, users were required to agree to certain terms and conditions and to make payments.  This Court has previously concluded that other Defendants in this lawsuit that were the listed registrants for domain names used for or linking to interactive gambling websites that require users to enter into an agreement with the operator and are accessible to Virginians 24 hours a day, among other factors, had engaged in conduct sufficient to conclude that the Defendants purposefully directed their activities at the United States, including Virginia, and should foresee being brought into court in Virginia or the United States, generally.  *See 3M Co. v. Directi Internet Solutions Pvt.,* No. 1:11cv627 (E.D. Va. May 3, 2012) (Dkt. No. 143) (adopting in full the findings of fact and conclusions of law of the Magistrate Judge's Report and Recommendation regarding Plaintiff's motion for default judgment (Dkt. No. 121)).

The Luca Website also linked to numerous domain names registered and used by Defendant KC using hosting services in Reston, Virginia,[4] including the "cornerstone" domain name mmmbet.net, to which all of the other domain names and websites in this lawsuit are related or connect. Decl. at ¶ 6; FAC at ¶¶ 51-52. Further, the Luca Website featured banner advertisements and text referencing the mmmbet.net domain, and featured colorable imitations of the 3M Mark identical or closely similar to those featured on the websites at mmmbet.net and the other domain names owned by KC at the time that 3M's OC was filed.  *Id.*  The close similarity between the appearance and content of the websites, as well as the extensive promotion and linking between the websites, conclusively establish that Luca was closely related with KC and part of an on-going conspiracy to infringe upon 3M's trademark rights and business reputation.

---

[4] This court has determined that Defendant KC is subject to personal jurisdiction in this District. (Dkt. No. 125).

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030    703.273.8898    703.273.8897

Cameron / McEvoy

Because the activities of Luca listed above are closely related to KC and his use of mmmbet.net, evidencing that Luca is a co-conspirator with KC acting in concert to infringe 3M's trademark rights and damage its business reputation, the Court should find specific personal jurisdiction over Luca as well. *Noble Sec. Inc. v. MIZ Eng'g, Ltd.,* 611 F. Supp. 2d 513, 539 (E.D. Va. 2009) (noting that participation in an alleged conspiracy is sufficient to subject a defendant to personal jurisdiction in a forum even if the defendant's "only contact with that forum was through the actions of a co-conspirator.")  In *Noble,* this Court concluded that defendants accused of violating the Lanham Act and the Virginia Business Conspiracy Statute could be subject to personal jurisdiction based on the actions of alleged co-conspirators in the forum state, though the *Noble* plaintiff had not shown it was the target of a conspiracy. *Id.* at 540 (citing *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher,* 635 F. Supp. 15, 18 (E.D. Pa. 1985) ("When co-conspirators have sufficient contacts with the forum, so that due process would not be violated, it is imputed against the 'foreign' co-conspirators who allege there is [sic] not sufficient contacts; co-conspirators are agents for each other."); *see also America Online, Inc. v. Ambro Enters.,* 2005 WL 2218433, at *3 n. 1 (E.D. Va. Sept. 8, 2005) (noting "[i]n some cases, participation in a conspiracy is sufficient to confer personal jurisdiction even where a Defendant's only contact with the forum state is through the actions of a co-conspirator.").  As Luca is accused of violating the Lanham Act and the Virginia Business Conspiracy Statute in connection with his activities with KC and the other Registrant Defendants (as this term is defined in ¶ 20 of the FAC), and has admitted it by virtue of his default, he is also subject to personal jurisdiction in this forum given KC's contacts with Virginia.

## 2.    The Court Has General Jurisdiction over Directi.

This Court has general jurisdiction over Directi based on Directi's continuous and

systematic contacts with Virginia.  Directi's website states, "'Everything the BYTE touches is

our Kingdom.'  Our Vision statement is encapsulated in its entirety in the above quote."  Decl.

at ¶ 10.  Directi's website states, "Directi …is a 350+ million dollars group of Businesses, that

develop innovative mass-market Web Products serving millions of Customers worldwide."  *Id.*

Its homepage further claims a "global audience."  *Id.*

As of the filing date of the OC, Directi was listed as the registrant[5] for the Directi

Domains, which were used in connection with interactive gambling websites accessible by

Virginia citizens (the "Directi Websites," and, together with the Luca Website, the "Infringing

Websites").  In addition to these contacts with Virginia, Directi (through its d/b/a

PublicDomainRegistry) claims to be the domain name registrar for 293,314 United States

domains[6] and to have 1,745 partners in the United States, more than in any other country,

*including its own*.  Decl. at ¶ 11.  Directi offers privacy services in connection with its domain

name registration services, at least in the name of "PrivacyProtect.org."[7]  Directi undoubtedly

has thousands of — if not hundreds of thousands or more — customers in the United States,

including Virginia, has entered into contracts with United States citizens and companies located

in the United States, including Virginia, and gains significant revenue — if not the majority of

its revenue — from United States consumers, including those in Virginia.  Consequently,

---

[5] Specifically, the Directi Domains were registered in the name of PrivacyProtect.org, listing the registrar Directi Internet Solutions Pvt. Ltd., d/b/a Publicdomainregistry.com Decl. at ¶ 12. Directi has expressly admitted that PrivacyProtect.org is a privacy service it provides; moreover, emails from Directi personnel have implicitly admitted this as well.  *Id.*

[6] This may mean domain names with registrants in the United States; the website is unclear in this regard.

[7] The propriety of finding a privacy service liable on these facts is discussed herein.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898  FAX 703.273.8897

CAMERON McEVOY
PLLC

Directi has sufficient "continuous and systematic contacts" with the United States, including in

Virginia, for this Court to find general jurisdiction is proper.

### 3.    The Infringing Websites Are Highly Interactive.

Luca used the domain thai3m.net to redirect users to a highly interactive website

accessible to Virginians.  Directi's corporate website at www.directi.com is itself highly

interactive and commercial, particularly as it provides links to Directi's many business offerings

including domain name registrar services where one may input credit card information and

purchase a domain name. Moreover, the Directi Websites were also highly interactive gambling

websites accessible to Virginians.  Courts in the Fourth Circuit have adopted the "sliding scale"

approach outlined in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa.

1997), for determining whether a defendant's Internet contacts are sufficient "minimum

contacts" for the purposes of personal jurisdiction.  *See ALS Scan, Inc. v. Digital Service*

*Consultants, Inc.,* 293 F.3d 707 (4th Cir. 2002) ("Drawing on the requirements for establishing

specific jurisdiction ... we adopt today the model developed in *Zippo . . .*").  This analysis is

based largely on the degree and type of interactivity of the website, and the nature and quality of

activity an entity conducts over the Internet.

> At one end of the spectrum are situations where a defendant clearly does business
> over the Internet.  If the defendant enters into contracts with residents of a foreign
> jurisdiction that involve the knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper.  At the opposite end are situations
> where a defendant has simply posted information on an Internet Web site which is
> accessible to users in foreign jurisdictions.  A passive Web site that does little more
> than make information available to those who are interested in it is not grounds for
> the exercise [of] personal jurisdiction.  The middle ground is occupied by
> interactive Web sites where a user can exchange information with the host
> computer.  In these cases, the exercise of jurisdiction is determined by examining
> the level of interactivity and commercial nature of the exchange of information that
> occurs on the Web site.

*Zippo*, 952 F. Supp. at 1125.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
TEL 703.273.8898   FAX 703.273.8897

Cameron McEvoy
PLLC

10

This Court in *Alitalia-Linee* — a case squarely on point with the facts here — found that the application of the *Zippo* analysis in the context of an online gambling website operated by a foreign defendant "points persuasively to the conclusion that [defendant's] contacts with Virginia constitute sufficient minimum contacts and purposeful availment to satisfy due process requirements." The Court correctly reasoned that the defendant's website:

> provides intense real-time interactivity to its members; indeed the product that [defendant] markets and provides through – namely, online casino gambling – is an inherently interactive activity. Moreover, the provision of this product necessarily requires [defendant] to enter into contracts with members, who must purchase 'credits' in order to play individual games . . . This makes clear that [defendant's] website is not merely a passive website, placed into the stream of Internet commerce and not purposefully directed at Virginia or its residents, but rather is a website that interacts with Virginia consumers to such degree as to put [defendant] on notice that it is purposefully directing its activities at Virginia and its residents.

*Alitalia-Linee* at 350 (internal citations omitted).

The conclusion of this Court in *Alitalia-Linee* is consistent with that of other courts faced with whether an online gambling website is sufficient grounds for a finding of personal jurisdiction. *See e.g., Thompson v. Handa-Lopez, Inc.*, 998 F. Supp. 738, 744 (W.D. Tex. 1998) (cited as persuasive authority in *Alitalia* and holding that defendant casino website operator had sufficient contacts with the forum state to justify personal jurisdiction because the defendant (i) "continuously interacted with casino players [by] entering into contracts with them as they played with various games"; (ii) "entered into contracts with the residents of various states knowing that it would receive commercial gain at the present time"; (iii) the plaintiff "played the casino games while in Texas, as if they were physically located in Texas"; and (iv) any money won by the plaintiff would have been sent to a Texas address by the defendant); *Uebler v. Boss Media, AB,* 363 F. Supp. 2d 499, 506 (E.D.N.Y.2005) (stating that personal jurisdiction would have been established over foreign operators of an online gambling website had they

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898   703.273.8897

Cameron McEvoy
PLLC

been named as defendants "given the fact that the [online casino] is a highly interactive

website because its primary function is to allow the customer to gamble over the internet.").

The Court's reasoned analysis in *Alitalia-Linee* is directly on point here. The Infringing

Websites were both highly interactive and commercial. The Infringing Websites solicited

consumers to create accounts with or through their websites and then place bets through those

accounts. Decl. at ¶¶ 3 and 13. The Infringing Websites advertised that they offer live sports

betting and/or casino gaming. *Id.* Online sports betting and casino gaming are inherently

interactive activities, as the user and the website operator must interact and exchange

information for each wager placed. For example, online casino games require the website

operator to accept and process each wager placed by the users, operate the mechanics of the

specific casino game being played (i.e., dealing the cards for blackjack, spinning the roulette

wheel, etc.), and calculate and distribute the user's winnings (if any). Online sports betting is

similarly and necessarily interactive, as the website operator will list the sport events available

for wagers and the odds for each event, accept and process the wager placed on the user, and

then calculate and distribute the user's winnings. This highly interactive process is dramatically

different from a "passive" website that merely displays information to potential users. In

contrast, an online gambling website necessarily requires the exchange of information with the

website operator to consummate each transaction, and in fact could not profitably function

without constant and repeated interaction with users.

As noted above, the domain thai3m.net owned by Luca automatically redirected to the

Luca Website. Courts have found that even a defendant's operation of a website that only links

to an on-line gambling website supports a finding of personal jurisdiction. *See Mashantucket*

*Pequot Tribe v. Redican,* 309 F. Supp. 2d 309, 318 (D. Conn. 2004) (finding Massachusetts

defendant subject to personal jurisdiction in Connecticut where, in addition to more traditional

contacts between defendant and Connecticut, defendant's website "allowed significant interaction by users. The website allowed users to engage in on-line gambling by clicking on a hyperlink, and profited from this hyperlink activity. It likewise earned revenue for [defendant] by means of advertising."); *see also Nat'l Football League v. Miller*, 2000 WL 335566, *5-6 (S.D.N.Y. Mar. 30, 2000) (holding that, since defendant must have recognized that use of Plaintiff's mark on his website "to attract people to a site that could pass them on to an electronic bookie," such use could do significant damage to the image of the plaintiff and its marketing efforts in New York to the profit of defendant, "it does not offend due process to require him to defend his actions in a New York courtroom.").

Accordingly, the Defendants' contacts with Virginia, including those contacts established by virtue of their conspiracy with KC, as well as the highly interactive and commercial nature of the Infringing Websites, constitute sufficient minimum contacts and purposeful availment to satisfy due process requirements.

## C.   Alternatively, This Court Has Personal Jurisdiction Over the Defendants Pursuant to Fed. R. Civ. P. 4(k)(2).

If the Court finds that it does not have personal jurisdiction over either Luca or Directi based solely on their contacts with Virginia, 3M submits in the alternative that the Court has jurisdiction over these Defendants based on their contacts with the United States generally, pursuant to Fed. R. Civ. P. 4(k)(2). This Rule states, "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). As this Court has explained:

Rule 4(k)(2) was added in 1993 to deal with a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but

has enough contacts with the United States as a whole to satisfy the due process requirements.

*Graduate Mgmt. Admission Council v. Raju,* 241 F. Supp. 2d at 597.   The first element of the

Rule 4(k)(2) analysis requires the "same minimum contacts due process analysis as is conducted

under 4(k)(l)(A), with the significant difference that the relevant forum is the United States as a

whole, not an individual State." *Id.*   A court may find that a defendant is subject to personal

jurisdiction in a forum under Rule 4(k)(2) upon a showing:

> (i) that [defendant] directed his electronic activity into the United States, (ii) that he did so with the manifest intent of engaging in business or other interactions with the United States, and (iii) that his activity creates a potential cause of action in a person within the United States that is cognizable in the United States' courts.

*Id.*

In *Graduate Mgmt.,* the plaintiff brought claims of copyright infringement, trademark

infringement and dilution, and violation of the Anti-cybersquatting Consumer Protection Act

against a foreign defendant that owned and operated a website and domain name that made

unauthorized use of the plaintiff's trademarks. *Id.* at 590-91.   This Court considered a number

of factors in concluding that the defendant directed his activity at the United States market.   The

defendant's website provided ordering information for United States customers, and provided

payment options for United States customers (including Western Union). *Id.*   Further, the

defendant listed its products in dollars, "presumably United States dollars." *Id.*   Finally, the

defendant confirmed his intent to serve United States customers by shipping his materials to two

United States citizens. *Id.*

Turning finally to the question of whether the defendant was not subject to the

jurisdiction of the courts of general jurisdiction of any state, this Court found it "readily

apparent" that personal jurisdiction was unavailable in any state, as only the defendant's

contacts with Virginia were made of record, and the plaintiff had no access to evidence that

might prove more detail on the defendant's possible contacts with other states due to the

defendant's failure to appear and be subject to discovery. *Id.* at 599.[8]

Accordingly, this Court determined it had personal jurisdiction over the defendant, and

concluded:

> [T]o find otherwise would not only frustrate [plaintiff's] attempts in this case to
> vindicate its rights under United States law, by requiring [plaintiff] to turn to
> foreign courts to vindicate those rights against a likely elusive defendant, it would
> also provide a blueprint whereby other individuals bent on violating United States
> trademark and copyright laws could do so without risking suit in a United States
> court.

*Id.* at 600.   Applying the analysis of this Court in *Graduate Mgmt.,* if this Court determines that

it does not have personal jurisdiction over the Defendants based on their contacts with Virginia,

then it should find personal jurisdiction over the Defendants under Rule 4(k)(2).

As 3M obviously meets the third prong of the *Graduate Management* analysis (the

defendant's "activity creates a potential cause of action in a person within the United States that

is cognizable in the United States' courts"), the only remaining questions are (1) whether the

Defendants directed their electronic activity at the United States, and (2) with the manifest

intent of engaging in business or other interactions with the United States.

As noted above, the Luca Website promoted and linked to the website MMMBET.NET

owned by KC. Decl. at ¶ 6.   KC directed his online activities towards the United States with the

intent of engaging in business with the United States, and this Court determined that KC was

subject to personal jurisdiction in this District. *See* Dkt. No. 125.   Because Luca's activities are

part of a common scheme with KC and the wrongful use of mmmbet.net, and assuming it does

not find personal jurisdiction over Luca based on his Virginia contacts, the Court should find

---

[8] The court noted that, in a case in which the defendant does not file an appearance, it would be
inappropriate to require a plaintiff to make more than a *prima facie* showing that the defendant
is not subject to personal jurisdiction in any state, since "[o]therwise, defendants, who typically
control the information needed for a personal jurisdiction inquiry, could thwart jurisdiction
under Rule 4(k)(2) by refusing to appear. *Id.*at 599 n. 19.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898  (f) 703.273.8897

Cameron / McEvoy

specific personal jurisdiction over him pursuant to Fed. R. Civ. P. 4(k)(2).  Moreover, in

addition to those contacts with Virginia listed above, Luca registered his domain names using a

California registrar (OnlineNic), his domain name thai3m.net redirected to a website that used a

Texas hosting company (SoftLayer), his registration service provider appeared to be in Ohio

(due to its use of an Ohio area code), and he used an email address created with a company in

California (Yahoo!) in connection with his registration of the Luca Domains.  *Id.* at ¶ 7.

Directi, itself and through its affiliated companies, has clearly directed its electronic

activity to the United States with the manifest intent of engaging in business or other

interactions within the United States.  As noted above, Directi (through its d/b/a, Public Domain

Registry) claims to be the domain name registrar for 293,314 United States domains[9] and to

have 1,745 partners in the United States, more than in any other country, including its own.

Decl. at ¶ 11.  Directi undoubtedly has many customers for its services in the United States, has

entered into contracts with United States citizens and companies located in the United States,

and gains significant revenue — if not the majority of its revenue — from United States

consumers.

Further, businesses owned or affiliated with Directi also have clearly directed their

activities towards the United States with the intent of doing business in the United States.  The

website for Skenzo, a Directi business providing internet traffic monetization and "domain

parking" services, advertises that Skenzo has provided its services to the United States.  *Id.*

Further, BigRock, a Directi business providing domain registration services, Internet hosting,

and related services, features a page on its website specifically directed to United States

consumers that lists the prices for its services in United States dollars.  *Id.*

---

[9] This may mean domain names with registrants in the United States; the website is unclear in
this regard.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030
703.273.8898 :: 703.273.8897

Cameron/McEvoy

Accordingly, the record shows that Defendants directed their electronic activities at the United States with the manifest intention of engaging in business or other interactions with the United States. If this Court determines that the Defendants are not subject to personal jurisdiction in Virginia, this Court should conclude that personal jurisdiction is not available in any other state. Due to the Defendants' failure to appear, Plaintiff submits that it should not be required to take discovery of elusive foreign defendants to determine whether these defendants have sufficient contacts with any other state. As this Court stated in *Graduate Mgmt.*, requiring a plaintiff to make more than a *prima facie* showing that a defendant failing to appear is not subject to personal jurisdiction in any other state would incentivize defendants to thwart jurisdiction under Rule 4(k)(2) by failing to appear. *Graduate Mgmt.*, 241 F. Supp. 2d at 599 fn. 19.

Consequently, 3M has met its burden of a *prima facie* case for personal jurisdiction over the Defendants either based on their contacts with Virginia, or in the alternative, based on their contacts with the United States generally pursuant to Fed. R. Civ. P. 4(k)(2).

**C.      Defendants Have Not Shown That The Exercise Of Personal Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice.**

Once a plaintiff establishes that there are minimum contacts between the defendant and the forum, "it becomes the defendant's burden to present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Taltwell, LLC v. Zonet USA Corp.*, 2007 WL 4562874 at \*9 (E.D. Va. Dec. 20, 2007) (quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003) (quoting *Burger King*, 471 U.S. at 477))). Indeed, "[i]t is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wein Air Alaska, Inc. v. Brandt.*, 195 F.3d 208, 215 (5th Cir. 1999) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)) (citation omitted). Defendants have not made any appearance whatsoever before this Court, let alone to challenge jurisdiction in any way.

## II.   3M's Claims.

The Court has already found that 3M is likely to succeed on the merits of its claims. Nonetheless, 3M addresses the elements of each of its claims herein.

As a preliminary matter, however, 3M submits that Directi's status as a privacy service does not insulate it from liability.  Directi is a domain name registrar accredited by the Internet Corporation for Assigned Names and Numbers (ICANN).  Decl. at ¶ 9.  As such, it is required to maintain public access to data identifying the owner of a registered domain name. Specifically, Directi must "provide an interactive web page and a … Whois service providing free public query-based access to up-to-date (i.e., updated at least daily) data concerning all active Registered Names sponsored by Registrar for each TLD in which it is accredited." *Id.* Such data includes the "name and postal address of the Registered Name Holder," among other things.  *Id.*  However, despite this requirement, Directi provides a "privacy service" to its customers, whereby it promises anonymity to its customers by concealing their identities on the Whois record.  Respondent's customers may pay Directi extra in the registration process to use its privacy service name ("PrivacyProtect.org") and contact information on the Whois database, instead of theirs.  Directi's privacy service was listed as the owner of the Directi Domains in the Whois record in April 2011.  *Id.* at ¶ 12.  That information is displayed here:

```
PrivacyProtect.org
Domain Admin      (contact@privacyprotect.org)
ID#10760, PO Box 16
Note - All Postal Mails Rejected, visit Privacyprotect.org
Nobby Beach
null,QLD 4218
AU
Tel. +45.36946676
```

Of course, not only was Directi's customer not listed in the Whois record, but Directi did not even provide a functional address *for itself*, as the Whois record explicitly states, "All Postal Mails Rejected."  Of course, the provision of a nonfunctioning address severely

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030    703.273.8898    703.273.8897

CAMERON McEVOY

undercuts the purpose of providing accurate contact information.  3M's attorneys sent cease-

and-desist correspondence through PrivacyProtect.org's website at www.privacyprotect.org, as

directed in the Whois record.  3M's attorneys did not receive any confirmation that Directi had

received their correspondence, nor did they receive any substantive response to their objections,

and the privacy shield was not lifted as of the filing date of the OC.  *Id* at ¶ 14.  3M's attorneys

have, in other similar matters, received an apparently automated message from Directi which

states:

> The domain name . . . has been enabled with a Privacy Protect service which
> disables the Registrant's actual details to be displayed in the whois of the domain
> name. However to contact the Domain owner, you need to fill up the form listed
> under "Contact Domain Owner" at http://privacyprotect.org/.
> For matters related to the content hosted on the website, kindly contact its web
> hosting provider. Only the hosting provider will be able to delete any content from
> this website. There is a possibility that such an activity may stand as a breach of
> contract of the Accepted Usage Policy (AUP) of the Web Hosting Service Provider,
> for this domain name. Hence you need to get in touch with them to seek action on
> this issue…. Regarding Trademark Infringement, it can only be done once you
> exercise your right of filing a Uniform Domain Name Dispute Resolution Policy
> [UDRP] case with any of ICANN's UDRP Service Providers at
> http://www.icann.org/dndr/udrp/approved-providers.htm. The Uniform Domain-
> Name Dispute Resolution Policy (UDRP) has been adopted by ICANN-accredited
> Registrars in all gTLDs (.aero, .biz, .com, .coop, .info, .museum, .name, .net, .org,
> .pro). Dispute proceedings arising from alleged abusive registrations of domain
> names (for example, cybersquatting) may be initiated by a holder of trademark
> rights. The UDRP is a policy between a Registrar and its customer and is included
> in registration agreements for all ICANN-accredited registrars.  [Listing the UDRP
> policy and a list of dispute resolution providers]. Regards, PrivacyProtect.org.

*Id.*

Of course, a trademark owner should be entitled to rely on this information in the Whois

record as reflecting ownership of an infringing domain name.  When a registrar hides its

customer's information and lists its own information as the owner of the domain name, as here,

then it has taken itself out of the role of registrar, and is acting as the *de facto* registrant of the

domain name.  This is particularly true when a registrar takes no action in the face of a

trademark objection and maintains the privacy shield, as here.  Indeed, Directi's entire "privacy

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030

703.273.8898  703.273.8897

CAMERON McEVOY
PLLC

service" system is designed to create extra steps and ambiguities so as to thwart a trademark owner's attempts to contact Directi's customer or ascertain such customer's identity.

Therefore, Directi's status as a privacy service provider should not immunize it from liability. *See e.g., Academy of Motion Picture Arts and Sciences v. GoDaddy*, Case No. 2:10-cv-3738, at 15-16 (C.D. Cal. Sept 20, 2010) (denying motion to dismiss where the plaintiff alleged the privacy service was the registrant and "it facilitated the registration of the accused domain names, even in the face of the cease-and-desist letters"); *see also Transamerica Corp. v. Moniker Online Services, LLC*, 672 F. Supp. 2d 1353, 1365 (S.D. Fla. 2009) (denying motion to dismiss privacy service, an entity affiliated with the domain name registrar, among other entities).

Although Directi ultimately revealed its customers' information after the lawsuit was filed, a trademark owner such as 3M should not have to file a lawsuit or pursue any other formal action to obtain such relief. Consequently, Directi should be held liable as the owner of the Directi Domains in this case for at least the following reasons: (1) it admits to being so by virtue of its default; (2) as a corporate entity, it listed itself as the registrant of the domain names on the Whois record; and (3) it further concealed its customers by refusing to give up their identities or otherwise investigate when 3M's attorneys notified it of potential trademark violations. Moreover, as an accredited domain name registrar with a unique role in the ownership and control over domain names, it should be held to a strict standard of compliance under circumstances such as this. Finally, it is telling that another privacy service defendant in this case — Domains by Proxy, affiliated with the world's largest registrar, GoDaddy.com — entered into a consent judgment in this case under virtually identical circumstances. *See* Dkt. No. 66.

**A.     Trademark and Trade Name Infringement and Unfair Competition (Counts I, III, V, and VI).**

To prevail on its trademark and trade name infringement and unfair competition claims under the Lanham Act (Counts I and III), 3M must show that: "it has a trademark that (1) is valid and (2) can be protected, and that (3) the defendant's use of an imitation of that trademark is likely to confuse consumers." *Toolchex, Inc. v. Trainor,* 634 F. Supp. 2d 586, 593 (E.D. Va. 2008); *Synergistic Int'l, LLC v. Korman,* 470 F.3d 162, 170 (4th Cir. 2006).   3M easily meets each of these elements.

**1.     The 3M Mark is Valid and Protectable.**

First, the 3M Mark (as that term is defined in ¶ 36 of the FAC) is valid and qualifies for protection.   The 3M Mark is inherently distinctive, and has acquired distinctiveness through 3M's long use and extensive promotion of the 3M Mark and the goods and services offered under it. *See* FAC at ¶¶ 36-45. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992) ("An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning.").   Moreover, the 3M Mark is well-known and famous.   *See* FAC at ¶ 46.   As a result of 3M's long use of the 3M Mark and the extensive exposure resulting from 3M's high quality goods and services, 3M has developed great and valuable goodwill in the 3M Mark, and the 3M Mark has become distinctive to designate 3M, to distinguish 3M and its products and services, and to distinguish the source and origin of 3M's products and services. *Id.* at ¶¶ 43-47.

Second, 3M owns numerous federal registrations for its 3M Mark. *Id.* at ¶ 49.   As 3M has secured hundreds of federal registrations for its 3M Mark, it is entitled to a presumption that the mark is valid and owned by 3M, and that 3M has the exclusive right to use the mark in commerce.   15 U.S.C. § 1057(b); *see also U.S. Search, LLC v. U.S. Search.com Inc.,* 300 F.3d 517, 524 (4th Cir.2002) ("It is well established that when the PTO issues a certificate of

registration, that registration provides the registrant with *prima facie* evidence of 1) the validity

of the mark and its registration, 2) the registrant's ownership, and 3) the registrant's exclusive

right to use the mark on or in connection with the goods and services specified in the certificate

of registration.") (internal quotations omitted).

### 2.   Defendants' Use is Likely to Confuse Consumers.

Luca's use of the domain name thai3m.net to redirect to the Infringing Website is highly

likely to confuse consumers as to the source, affiliation and sponsorship of his services.  15

U.S.C. §§ 1114(1), 1125(a)(1)(A).  Luca has admitted that, long after 3M's adoption of its mark

and without 3M's consent, he commenced using the Infringing Mark (as that term is defined in

the FAC at ¶ 50) and the Luca Domains.  FAC at ¶¶ 50, 53, 54, 55.  Luca further admits that his

use of the Infringing Mark and the Luca Domains is likely to cause confusion among customers

and potential customers of the parties, at least as to some affiliation, connection or association

of Luca with 3M, or as to the origin, sponsorship, or approval of the Luca Website, products,

and/or services by 3M.  *Id.* at ¶ 62.

Directi's use of the domain names 3mbet888.com and 3mbet-online.com is also likely to

confuse consumers as to the source, affiliation and sponsorship of its services.  Directi has

admitted that, long after 3M's adoption of its mark and without 3M's consent, it commenced

using the Directi Domains.  FAC at ¶¶ 50, 53, 54, 55.  Directi further admits that its use of the

Directi Domains is likely to cause confusion among customers and potential customers of the

parties, at least to some affiliation, connection or association of Directi with 3M, or as to the

origin, sponsorship, or approval of Directi's products and/or services by 3M.  *Id.* at ¶ 62.

3M's claims for trademark infringement and unfair competition under Virginia common

law (Counts V and VI) are premised on the same facts as its federal infringement claim.  The

tests for trademark infringement and unfair competition under federal law and Virginia law are

essentially the same, as they all center on a determination of a likelihood of confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n. 10 (4th Cir. 1995); *Sweetwater Brewing Co. v. Great Am. Rests., Inc.*, 266 F. Supp. 2d 457, 460-61 (E.D. Va. 2003). Just as default judgment is warranted on Defendants on 3M's federal trademark and trade name infringement and unfair competition claim, default judgment is warranted on its common law infringement and unfair competition claims.

### B.       Federal Trademark Dilution (Count II).

To prevail in a trademark dilution claim under the Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C. § 1125(c), a plaintiff must show that "it (1) owns a distinctive famous mark, (2) the use by another in commerce of which (3) is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *Volkswagen, AG v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 885 (E.D. Va. 2008). A mark is "famous" under the statute "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Defendants admit that the 3M Mark is inherently distinctive and famous. FAC at ¶¶ 44-46. Defendants further admit that their unauthorized use of the Infringing Mark and/or the Infringing Domains is likely to dilute and blur the distinctiveness of 3M's 3M Mark. FAC at ¶ 65.

Consequently, default judgment is warranted on 3M's federal dilution claim.

### C.       Cybersquatting (Count IV).

The Anti-cybersquatting Consumer Protection Act (ACPA) imposes liability in a civil action on a person by the owner of a mark if, without regard to the goods or services of the parties, that person:

23

(i)   has a bad faith intent to profit from that mark and
(ii)  registers, traffics in, or uses a domain name that-
    (I) in the case of a mark that is distinctive at the time of registration of the
    domain name, is identical or confusingly similar to that mark; [or]
    (II) in the case of a famous mark that is famous at the time of registration
    of the domain name, is identical or confusingly similar to or dilutive of
    that mark....

15 U.S.C. § 1125(d)(1)(A); *International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du*

*Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 484 (E.D. Va. 2002).

    A review of the nine nonexclusive statutory factors for courts to consider in determining

whether a domain name has been registered or used in bad faith[10] weighs heavily against

Defendants.  Defendants have no legitimate rights in the 3M Mark–there is no evidence that

they own, or claim to own, any rights in any trademark or service mark that is identical or

similar to the 3M Mark.  Defendants have not engaged in prior, *bona fide* use of the 3M Mark,

as 3M has used the Mark for over one-hundred years and there is absolutely no evidence that

Defendants' use pre-dates 3M's use of its Mark.  Defendants have not engaged in any *bona fide*

non-commercial or "fair use," of the 3M Mark.  This Court has recognized that the purpose of

---

[10] The factors are: (1) the trademark or other intellectual property rights of the registrant, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services; (4) the person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having intent to use, the domain name in the *bona fide* offering of any goods or services or the person's prior conduct indicating a pattern of such conduct; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (8) the person's registration or acquisition of multiple domain names that the person knows are identical or confusingly similar to the distinctive marks of others or are dilutive of the famous marks of others; and (9) the extent to which the mark incorporated in the domain name is distinctive and famous within the meaning of the Federal Trademark Dilution Act. *See* 15 U.S.C. § 1125(d)(1)(B)(i).

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030    703.273.8898    703.273.8897

CAMERON / McEVOY

this factor is to "protect domain name registrants and users engaged in protected activities, such as political criticism or parody." *International Bancorp.* at 486.  As Luca used the domain name thai3m.net to provide a commercial service, namely online gambling, and Directi provided a commercial privacy registration service in connection with the Directi Domains, as well as used the names for gambling sites as the *de facto* registrant, this factor also supports a finding of bad faith intent.  The Defendants' intent to divert consumers from 3M's online location is evidenced by their wholesale inclusion of the 3M Mark into the Infringing Domains.  Further, Luca provided material and misleading contact information when applying for the registration of the Infringing Domains, as the contact information listed in the Whois records for the Infringing Domains is incomplete, inaccurate, or false.  Decl. at ¶ 5.  Defendants collectively registered multiple domain names that contain 3M's mark, raising an inference of bad faith under the eighth factor.  *International Bancorp.* at 487 (noting the fact that the plaintiff companies registered forty-three domain names that contain the term "Casino de Monte Carlo" raised an inference of bad faith).  Moreover, Defendants have admitted that they registered and used the Infringing Domains with a bad faith intent to profit from the famous 3M Mark.  FAC at ¶ 81.

The Infringing Domains owned or registered by Defendants[11] are all identical or confusingly similar to the 3M Mark, as they all include the 3M Mark.  Defendants have also admitted that the Infringing Domains are confusingly similar to and likely to dilute the 3M Mark.  FAC at ¶¶ 62-65.  Consequently, default judgment is warranted on 3M's cybersquatting claims against Defendants.

### D.      Unjust Enrichment (Count VII).

A plaintiff may prevail on a claim of unjust enrichment under Virginia law where a plaintiff "(1)…conferred a benefit on the defendant; (2) the defendant knew of the conferring

---

[11] Or were registered at the time 3M's Original Complaint was filed.

benefit; and (3) the defendant accepted or retained the benefit under circumstances which render

it inequitable for the defendant to do so without paying for its value." *Rosetta Stone, Ltd. v.*

*Google, Inc.*, 732 F. Supp. 2d 628, 631 (E.D. Va. 2010). Defendants admit that 3M has accrued

enormous goodwill in the 3M Mark. FAC at ¶ 43. Defendants admit that they have used the

3M Mark without 3M's authorization, and that such use has permitted Defendants to trade on

and receive the benefit of goodwill built up at great labor and expense by 3M. *Id.* at ¶ 63.

Defendants admit they have been unjustly enriched by their unauthorized use of the 3M Mark.

*Id.* at ¶ 66. Consequently, default judgment is warranted on 3M's claims of unjust enrichment.

### E.   Violation of the Virginia Business Conspiracy Statute (Count VIII).

The Virginia Business Conspiracy Statue imposes liability in a civil action against:

> Any two or more persons who combine, associate, agree, mutually undertake or
> concert together for the purpose of (i) willfully and maliciously injuring another
> in his reputation, trade, business or profession by any means whatever or (ii)
> willfully and maliciously compelling another to do or perform any act against his
> will, or preventing or hindering another from doing or performing any lawful act.

Va. Code §18.2-499.

Defendants have admitted that they have operated within a common scheme with other

defendants in the present action where they all display or have displayed the same or highly

similar websites that display the Infringing Mark, and that many of these websites redirect or

link to each other. FAC at ¶¶ 51-52. Defendants have also admitted that their use of the

Infringing Domains and the Infringing Websites in this manner is likely to cause consumer

confusion as to some association between the Defendants and 3M and to cause dilution of

blurring or dilution by tarnishment of 3M's famous 3M Mark, and that these actions by

Defendants were willful and malicious and were designed to injure 3M in its reputation, trade,

business or profession. FAC at ¶¶ 62-65, 91-92. Consequently, default judgment is warranted

on 3M's claim of violation of the Virginia Business Conspiracy Statute.

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   703.273.8898   703.273.8897

Cameron McEvoy

## III.   Relief Sought.

### A.   Permanent Injunction.

The Lanham Act provides for injunctive relief in cases involving trademark infringement and unfair competition. 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a Defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988); *see also Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (stating, "in 'ordinary trademark infringement actions ... complete injunctions against the infringing party are the order of the day.'") (citation omitted); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 35, comment b (1995) ("In cases of . . . trademark infringement, or trademark dilution, a prevailing plaintiff is ordinarily awarded injunctive relief to protect both the plaintiff and the public from the likelihood of future harm.").

Federal law also provides for injunctive relief in cases involving trademark dilution. 15 U.S.C. § 1116(a). Defendants admit that their activities have caused and will continue to cause irreparable injury to 3M and the public for which there is no adequate remedy at law unless its acts are restrained by this Court. FAC at ¶ 69. Having proven all of its claims, 3M requests that the Court permanently enjoin Defendants from using Plaintiff's 3M Mark, the Infringing Mark, the Infringing Domains, and any other mark confusingly similar to or diluting of the 3M Mark. *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952). 3M also requests that the Court order that the Infringing Domains be transferred to 3M.

### B.   Statutory Damages.

The ACPA provides for an award of statutory damages of not less than $1,000 and not more than $100,000 for each domain name, as the court finds just. In a case with facts closely

11325 Random Hills Road, Suite 200, Fairfax, Virginia 22030   703.273.8898   703.273.8897

Cameron / McEvoy

similar to those at issue, this Court awarded the plaintiff the maximum statutory damages

allowable under the ACPA after entry of a default judgment against a foreign defendant that

made "blatant use" of the plaintiff's marks in domain names and profited from the plaintiff's

goodwill. *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 507 (E.D. Va.

2003) (adopting recommendation of magistrate judge and awarding plaintiff maximum statutory

damages of $100,000 per domain name).

 Consistent with the Amended Final Order and Judgment (Dkt. No. 143) involving other

defendants in this case with highly similar facts, 3M requests that the Court order Luca to pay

3M statutory damages of $10,000 for thai3m.net and $1,000 for thai3m.com, for a total of

$11,000, and the Court order Directi to pay 3M statutory damages of at least $10,000 for each

Directi Domain, for a total of at least $20,000.

### C. Attorneys Fees and Costs.

 Finally, 3M seeks its reasonable attorneys' fees and costs of this civil action.  The

Lanham Act provides that, in exceptional cases, the Court may award reasonable attorney fees

to the prevailing party.  15 U.S.C. § 1117(a) and § 1125(c)(2).  A Lanham Act case is

considered "exceptional" where a defendant's conduct was "malicious, fraudulent, willful, or

deliberate in nature." *Retail Servs. v. Freebies Publ'g,* 364 F.3d 535, 550 (4th Cir. 2004).

Defendants have admitted that this case is exceptional by virtue of their willful and intentional

infringement of 3M's 3M Mark.  FAC at ¶ 72.

 Therefore, 3M requests that the Court order Defendants to pay 3M's reasonable attorney

fees and costs, which shall be submitted in compliance with the applicable Federal and Local

Rules.

**CONCLUSION**

Because the admitted facts establish that 3M should prevail on each of its claims and be granted the relief it seeks, 3M respectfully asks the Court to enter default judgment against Defendants, awarding permanent injunctive relief, transfer of the Luca Domains to 3M, statutory damages, and 3M's reasonable attorney's fees and costs of this civil action.

DATED:  June 5, 2012.                           Respectfully submitted,

                                                /s/_____
                                                Timothy J. McEvoy, VSB No. 33277
                                                Sean Patrick Roche, VSB No. 71412
                                                CAMERON MCEVOY, PLLC
                                                11325 Random Hills Road, Suite 200
                                                Fairfax, Virginia 22030
                                                (703) 460-9341 (Direct)
                                                (703) 273-8898 (Main)
                                                (703) 273-8897 (Facsimile)
                                                tmcevoy@cameronmcevoy.com
                                                sroche@cameronmcevoy.com
                                                Attorneys for Plaintiff 3M Company

                                                William G. Barber, Esquire
                                                (Admitted *Pro Hac Vice*)
                                                Wendy C. Larson, Esquire
                                                (Admitted *Pro Hac Vice*)
                                                PirkeyBarber LLP
                                                600 Congress Avenue, Suite 2120
                                                Austin, Texas  78701
                                                (512) 322-5200
                                                (512) 322-5201 (Facsimile)
                                                bbarber@pirkeybarber.com
                                                wlarson@pirkeybarber.com
                                                Attorneys for Plaintiff 3M Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of June, 2012, I have filed a true and correct copy of the foregoing with the Clerk of Court via the CM/ECF efiling system, and I have served true and correct copies via United States mail, postage prepaid, to the following Defendants:

Directi Internet Solutions Pvt. Ltd.,
D/B/A Publicdomainregistry.com,
and D/B/A Privacyprotect.Org
Directiplex, Next to Andheri Subway
Old Nagardas Road, Andheri (East)
Mumbai, Maharashtra India 400069

Whoisprotection.cc
Lot 2-1, Incubator 1, Technology Park
Malaysia, Bukit Jalil
Kuala Lumpur, Wilayah Persekutuan
Malaysia 57000

Marcos A/K/A 3M Specialist
323 Srilankamatan Road, Columbo
Columbo, Sri Lanka 52211

Hoon Hoe Lau
Eitak Enterprise Limited
406, New Village, Ayer Tawar
Perak Malaysia 32400

Hyper
Chanapai Tangneam
13 Moo 7 Sao Thong Hin,
Bangyai, Nonthaburi 11140,
Thailand

Pramote Polchocke
Prachachuen Bangsue
Bangkok, 10800
Thailand

Bettinghouse99
Siriwatd 144/16 bkk
bkk, Chon Buri
10900, Thailand

Luca Toni A/K/A Luca Tony
Fiorentina
Italian Street
Genoa City, Genoa, Italy 6666

/s/_____
Timothy J. McEvoy, VSB No. 33277
Sean Patrick Roche, VSB No. 71412
CAMERON MCEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 460-9341 (Direct)
(703) 273-8898 (Main)
(703) 273-8897 (Facsimile)
tmcevoy@cameronmcevoy.com
sroche@cameronmcevoy.com
Attorneys for Plaintiff 3M Company