IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:11cv0627 (TSE/JFA) |
| v. | ) | |
| | ) | |
| CHRISTIAN INVESTMENTS LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to

Federal Rule of Civil Procedure 55(b) against two of the defendants named in this action, Luca

Toni a/k/a Luca Tony ("Luca Toni/y" or "defendant") and Directi Internet Solutions Pvt Ltd

d/b/a Publicdomainregistry.com d/b/a Privacyprotect.org ("Directi").[1]  (Docket no. 157).

Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court

these proposed findings of fact and recommendations, a copy of which will be provided to all

interested parties.

### Procedural Background

On June 10, 2011, plaintiff 3M Company ("plaintiff" or "3M") filed a complaint

asserting a variety of claims against several groups of defendants.  (Docket no. 1).  On July 18,

2011, plaintiff filed an amended complaint, again asserting a variety of claims against several

groups of defendants.  (Docket no. 25) ("Compl.").  The claims asserted by 3M include

---

[1] An attorney purportedly acting on behalf of defendant Directi has contacted the undersigned's chambers and indicated that Directi intends to make an appearance in this case. Therefore, these proposed findings of fact and recommendations are limited to plaintiff's motion for default judgment as it relates to Luca Toni/y only.  If Directi fails to make an appearance in this case then the undersigned will prepare proposed findings of fact and recommendations as to the claims asserted against Directi.

trademark infringement, dilution, unfair competition, cybersquatting, unjust enrichment, and violation of the Virginia Business Conspiracy Statute, Va. Code § 18.2-499, *et seq.* (Docket no. 25). 3M has obtained consent judgments against Softlayer Technologies, Inc. (Docket no. 27), Pattanaphone Prasomthong (Docket no. 44), Godaddy.com, Inc. and Domains by Proxy, Inc. (Docket no. 66), CAT Telecom Public Company Limited (Docket no. 118), and Whoisprotection.cc (Docket no. 162) and has dismissed voluntarily the claims against Prolexic Technologies, Inc. (Docket no. 35), Tiggee LLC (Docket no. 40), Bluehost, Inc. (Docket no. 42), Asia Netcom Asia Pacific Ltd. (Docket no. 78), Christian Investments LLC (Docket no. 88), and Hoon Hoe Lau (Docket no. 152). On March 6, 2012, 3M obtained default judgments against defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit. (Docket no. 125).

In this motion for default judgment, 3M seeks a judgment against defendant Luca Toni/y and an order enjoining the defendant from using or infringing the 3M mark and any other mark confusingly similar to the 3M mark, transferring certain domain name registrations held by Luca Toni/y to 3M, and awarding statutory damages, attorney's fees, and costs. (Docket no. 157).

On August 29, 2011, plaintiff filed a motion seeking leave to serve Luca Toni/y by publication. (Docket no. 73). Plaintiff's motion was supported by a memorandum of law (Docket no. 74) and was noticed for a hearing on September 30, 2011 (Docket no. 75). On September 23, 2011, plaintiff filed an amended motion and memorandum in support and waived oral argument on the amended motion. (Docket nos. 89, 90). On October 3, 2011, an Order was entered granting plaintiff's motion and authorizing service on Luca Toni/y by publication in Il Secolo XIX, a newspaper with circulation in Genoa, Italy, the location of defendant's address as listed in the registration agreements for the domain names <thai3m.net> and <thai3m.com>.

2

(Docket no. 97). That Order stated that by allowing service by publication the court made no finding that the plaintiff had established personal jurisdiction over any of the defendants or that it was proper to join those defendants in a single action pursuant to Fed. R. Civ. P. 20. *Id.*

Pursuant to the Order authorizing service on Luca Toni/y by publication, on December 6, 2011 plaintiff filed a notice of service by publication with an attached declaration of Stefano Sisti, the Chief Executive Officer of Il Secolo XIX ("Sisti Decl."). (Docket no. 117). The Sisti Declaration stated that notice of this action was published in Il Secolo XIX in English and Italian on October 28, November 4, November 11, and November 18, 2011. (Sisti Decl. ¶ 2, Ex. A). Pursuant to Fed. R. Civ. P. 12(a), a responsive pleading was due from Luca Toni/y by December 9, 2011 at the latest, twenty-one days from the last date notice of this action was published in Il Secolo XIX. No responsive pleading has been filed by Luca Toni/y.

On December 28, 2011, plaintiff filed a request for entry of default against Luca Toni/y supported by a declaration from Wendy C. Larson. (Docket no. 119). Following notification from the Clerk of the Court on December 29, 2011, plaintiff filed an amended declaration on January 9, 2012. (Docket no. 120). The amended declaration included a representation that plaintiff's counsel was aware of no facts about Luca Toni/y that would support a determination that he was a minor, an incompetent person, or in military service. (Docket no. 120-1). On January 11, 2012, the Clerk of the Court entered a default against Luca Toni/y pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 122).

On June 5, 2012, plaintiff filed a motion for default judgment against defendant Luca Toni/y, a memorandum in support (Docket no. 158), and a declaration from Steven M. Espenshade (Docket no. 158-1) ("Espendshade Decl.") with attached exhibits A-L (Docket nos. 158-2 through 158-13). On June 11, 2012, plaintiff filed a notice setting a hearing on the motion

for default judgment on June 22, 2012. (Docket no. 161). Copies of the motion for default

judgment and supporting pleadings were sent to Luca Toni/y at the address in Genoa, Italy listed

in the registration agreements by U.S. mail on June 5, 2012 and a copy of the notice of hearing

was sent in the same manner on June 11, 2012. (Docket nos. 157, 158, 161). Luca Toni/y has

not responded to plaintiff's complaint, request for entry of default, or motion for default

judgment. On Friday, June 22, 2012, counsel for the plaintiff appeared before the undersigned

and no one appeared on behalf of Luca Toni/y. (Docket no. 163).

### Factual Background

The following facts are established by the amended complaint (Docket no. 25), the

memorandum in support of the amended motion for leave to serve certain defendants by

alternative means (Docket no. 90), and the memorandum in support of the motion for default

judgment with its supporting declaration and exhibits (Docket no. 158).

Plaintiff 3M is a corporation organized under the laws of the state of Delaware and has a

principal place of business in the state of Minnesota. (Compl. ¶ 1). Defendant Luca Toni/y is

the owner and registrant of the domain names <thai3m.net> and <thai3m.com>. (Compl. ¶ 7).

Plaintiff 3M owns the mark and trade name 3M, as well as various other marks and

names that include 3M ("the 3M mark"). (Compl. ¶ 36). Plaintiff has used the 3M mark in

commerce continuously since 1906. *Id.* Plaintiff has registered the 3M mark with the United

States Patent and Trademark Office and currently owns hundreds of U.S. registrations for the 3M

mark for numerous products and services. (Compl. ¶ 49). These registrations are valid and

subsisting and many of them are incontestable. *Id.* Plaintiff is a diverse company and it has

expanded its use of the 3M mark to more than 50,000 products and services in a wide variety of

fields under the 3M mark. (Compl. ¶ 37). Among its many products and services 3M offers

4

touchscreen solutions which are used worldwide in applications in the casino gaming industry for uses in slot games, video card games, and multi-player table games. (Compl. ¶ 38). Over the years, 3M has also operated through a number of other names and entities bearing the 3M mark in connection with a wide variety of goods, services, and markets, such as 3M Export Sales, 3M Thailand Limited, 3M Automotive Industry Center, 3M Health Care, 3M Medical Products Group, 3M Document Systems, 3M Marine Trades Project, 3M Sound Products, 3M Life Sciences Sector, 3M Meeting Management Institute, and 3M Global Trading, Inc. (Compl. ¶ 40). For decades 3M has used the 3M mark in connection with its charitable underwriting activities through the 3M Foundation in sponsoring various arts, education, healthcare, and environmental activities and causes. (Compl. ¶ 41). 3M has developed an enormous amount of goodwill in its 3M mark and the 3M mark is inherently distinctive and serves to identify and indicate the source of 3M's products and services to the consuming public. (Compl. ¶¶ 43, 44). As a result of the long use and promotion of the 3M mark by 3M, the 3M mark has become distinctive to designate 3M, to distinguish 3M and its products and services from those of other businesses, and to distinguish the source or origin of 3M's products and services. (Compl. ¶ 45). The 3M mark is widely recognized as a designation of source of 3M's goods and services and through the efforts of 3M the 3M mark has become famous throughout the United States. (Compl. ¶¶ 46, 47).

3M alleges that several of the defendants named in the amended complaint own and operate online gambling websites and promote their online gambling activities using an identical or highly similar copy of the 3M mark. (Compl. ¶ 50). Plaintiff asserts that all of the defendants, including Luca Toni/y, operate within a common scheme where they all display or have displayed the same or highly similar websites that display the 3M mark, and many of the

websites redirect or link to each other. (Compl. ¶ 51). 3M alleges that the domain name <mmmbet.net> and its corresponding website are the cornerstone of the defendants' infringing activity.[2] (Compl. ¶ 52). Many of the other websites operated by the defendants are connected or relate to the <mmmbet.net> website in some way. *Id.* The websites accessible from the defendants' domain names display similar websites, graphics, or logos as those displayed at <www.mmmbet.net> and when a consumer attempts to create an account with several of those websites, he or she is directed to contact information associated with the website <www.mmmbet.net>. *Id.* In addition to using the 3M mark on the websites, many of the domain names that have been registered by the defendants include the 3M mark or are similar to the 3M mark. (Compl. ¶ 53). The defendants are not affiliated with or sponsored by 3M and have not been authorized by 3M to use the 3M mark or any confusingly similar mark. (Compl. ¶ 54).

Plaintiff alleges that the defendants use registrars located in the United States, that some of them use hosting service providers in the United States, and that the gambling services offered on their websites are directed at least in part toward United States citizens. (Compl. ¶ 60). United States citizens are able to open online gambling accounts through the defendants' websites or websites to which they are redirected or connected. (Compl. ¶ 61).

Plaintiff claims that the defendants' unauthorized use of the 3M mark is likely to cause confusion, mistake, and/or deceive consumers as to some affiliation, connection, or association of defendants with 3M and the origin, sponsorship, or approval of the services offered by the defendants. (Compl. ¶ 62). 3M also states that the defendants' unauthorized use of the 3M mark falsely designates the origin of the products and services offered at the defendants' domain

---

[2] Defendant KC, against whom plaintiff has obtained default judgment, is the registrant of the domain name <mmmbet.net> and various other infringing domain names. (Compl. ¶ 8; Docket no. 125).

names (Compl. ¶ 63), trades on the goodwill of 3M in the 3M mark (Compl. ¶ 64), is likely to cause dilution by blurring and tarnishing 3M's famous 3M mark (Compl. ¶ 65), and unjustly enriches the defendants at 3M's expense (Compl. ¶ 66).  Plaintiff alleges that unless the defendants are restrained from further infringing activity, they will continue their activity and continue to cause irreparable harm to 3M and to the public for which there is no adequate remedy at law.  (Compl. ¶ 69).

3M has presented additional factual information in its motion for default judgment specifically concerning Luca Toni/y.  In the Espenshade Declaration (Docket no. 158-1), he states that Luca Toni/y is the owner of the domain names <thai3m.net> and <thai3m.com>.  (Espenshade Decl. ¶ 2, Ex. A).  At the time of the filing of the original complaint, the domain name <thai3m.net> redirected to a website at the domain name <thaimmm.net>,[3] where a gambling website featuring colorable imitations of the 3M Mark was located.  (Espenshade Decl. ¶ 3, Ex. B).  The gambling website at <thaimmm.net> offered live sports betting and casino gambling and solicited consumers to create accounts with the website and place bets through those accounts.  (*Id.*).  The domain name <thaimmm.net> is in turn registered to defendant Marcos a/k/a 3M Specialist, whom plaintiff asserts may be the same person as Luca Toni/y.  (Espenshade Decl. ¶¶ 4, 5, Exs. C, D).

Also at the time of the filing of the original complaint, the website located at the <thaimmm.net> domain name featured links to domain names owned by defendant KC, including the domain <mmmbet.net>, which KC used for gambling websites featuring colorable imitations of the 3M Mark identical or closely similar to those featured on the website at <thaimmm.net>.  (Espenshade Decl. ¶ 6).  As stated above, the domain name <mmmbet.net> is

---

[3] While the Espenshade Declaration frequently refers to "thaimmm.com," it is clear from the attached Exhibit B and the memorandum in support of plaintiff's motion for default judgment that this is a typographical error.

the "cornerstone" domain name to which all of the other domain names and websites in the present lawsuit are related or connected. (*Id.*). The website at <thaimmm.net> also featured prominent banner advertisements and text that incorporated "mmmbet.net." (*Id.*). Thus, plaintiff posits that Luca Toni/y is a participant in the common scheme advanced by all defendants to promote online gambling using plaintiff's 3M mark as he is the owner and registrant of <thai3m.net> which redirects to an infringing website at <thaimmm.net>, which in turn is linked to another infringing website at <mmmbet.net>. The Espenshade Declaration also states that Luca Toni/y has used California corporations to register his domain names and set up a contact e-mail address (OnlineNic, Inc. and Yahoo! Inc.), as well as a registration service provider in Ohio. (Espenshade Decl. ¶ 7, Ex. E).

   As to Luca Toni/y's other domain name, <thai3m.com>, the Espenshade Declaration states that at the time of the filing of the original complaint, it was used for a website that displayed a message in Thai that translates into English as reading "Annual vacation leave may withdraw it 28-30." (Espenshade Decl. ¶ 8, Ex. F).

<b>Proposed Findings and Recommendations</b>

   Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of Luca Toni/y to file a responsive pleading in a timely manner, the Clerk has entered a default. (Docket no. 122). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are

deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

### Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. 3M asserts various claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and claims under Virginia law. (Compl. ¶ 30). This court has subject matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related Virginia law claims pursuant to 28 U.S.C. § 1367(a).

While there is no question that this court has subject matter jurisdiction over the claims raised in the complaint against Luca Toni/y, the issue of personal jurisdiction over him is not so clear. In this action 3M seeks to establish personal jurisdiction over Luca Toni/y for his activities in registering certain domain names and the infringing activities undertaken at the website available at one of those domain names (<thai3m.net>), including redirection to other infringing websites (*i.e.*, <thaimmm.net> and <mmmbet.net>). 3M recognizes that Luca Toni/y is not located in the United States and that it does not have sufficient information to locate and physically serve him with a copy of the summons and complaint through normal channels.[4] The issue of personal jurisdiction was raised with 3M's counsel by the undersigned in the Order

---

[4] 3M obviously made a strategic decision to pursue an *in personam* claim against Luca Toni/y instead of pursuing an *in rem* action against his domain names. While this approach may allow for the entry of a judgment against Luca Toni/y for injunctive relief and money damages, the ability to enforce any such judgment is in doubt given the uncertainty of the defendant's location. Furthermore, unlike an *in rem* action in which the court declares who owns the subject *res* (domain name) and the registrar or registry is required to comply with the court's order, in an *in personam* action for trademark infringement or unfair competition, there is no statutory requirement that the non-party registry or registrar comply with a judgment for trademark infringement or unfair competition and it will be up to 3M to enforce any judgment through normal procedures.

allowing service by publication (Docket no. 97) and 3M has provided authority to support its claim of personal jurisdiction over Luca Toni/y. In particular, 3M relies heavily on this court's decision in *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F. Supp. 2d 340 (E.D. Va. 2001). Having reviewed the facts in this case and the ruling in *Alitalia*, the undersigned recommends a finding that there is personal jurisdiction over Luca Toni/y.

In *Alitalia* this court found that the foreign registrant's contacts with Virginia fell within the reach of the Virginia long-arm statute and constituted sufficient minimum contacts and purposeful availment to satisfy due process requirements. *Id*. at 349-50. In that case, the infringing domain name was registered by an entity in the Dominican Republic with no offices, employees, or physical location in the United States. *Id*. at 342. The website available at the infringing domain name offered a real-time, interactive, on-line casino gambling experience and required the users to enter into agreements in order to play individual games. *Id*. at 350. Since the servers for the infringing website were located in the Dominican Republic, the issue presented under the Virginia long-arm statute (Va. Code § 8.01-328.1(A)(4)) was whether the defendant caused a tortious injury in Virginia by an act or omission outside of Virginia and did the defendant regularly do or solicit business in Virginia, engage in any other persistent course of conduct in Virginia, or derive substantial revenue from goods used or services consumed in Virginia. *Id*. at 348. Noting that a violation of the Lanham Act is tortious in nature and that the relevant tortious act is the use of the domain name, the court found that the maintenance of "an interactive website accessible to Virginia consumers 24 hours a day" using the infringing domain name constituted engagement in a persistent course of conduct in Virginia under the long-arm statute. *Id*. In addressing the due process consideration, the court held that the subject website was not a passive website, but was an active website that interacted with consumers to such a

degree to put the registrant on notice that it was purposefully directing its activities to those consumers wherever they may be. *Id.* at 350. In that case, the evidence showed that there were five Virginia-based members and the court held that the contacts with those residents were sufficient to put the defendant on notice that it purposefully directed its activities at Virginia and that it should therefore foresee being haled into court in Virginia. *Id.*

While the facts of this case are not identical to the facts in *Alitalia,* they do appear to be similar enough to fall within that holding. The facts supporting a finding under the Virginia long-arm statute that there has been a tortious injury in Virginia by an act outside of Virginia are the same as in *Alitalia.* In this case we have an allegation of trademark infringement (use of infringing domain names) being made against a defendant who is not located in Virginia but is alleged to be causing tortious injury through acts outside of Virginia by maintaining websites located at infringing domain names, both of which are available to Virginians 24 hours a day and one of which is interactive in that it redirects to an online gambling website located at another, similarly infringing domain name. The difference in the analysis in this case is in the due process consideration. While there is no question that the infringing websites are available to anyone in Virginia with access to the internet (or anyone in the world with access to the internet) and that one of them, <www.thai3m.net> , is interactive in that it redirects to <www.thaimmm.net>, a gambling website which is linked to other gambling websites, there is no direct evidence that Virginians have accessed or used these websites. Furthermore, a review of the <www.thaimmm.net> website reveals that while it may have "English language options," it seems to be targeted to consumers outside of the United States since it is primarily in a language other than English. (Espenshade Decl. Ex. B).[5] However, like *Alitalia,* in order to

---

[5] This is also true of the website <www.thai3m.com>, which only displays a message in a foreign language. (Espenshade Decl. Ex. F).

participate in the activities available on that website, one is required to agree to certain terms and conditions and to make certain payments.  Given that both domain names are owned by the same person, the website located at one of the domain names redirects to an interactive website which requires an agreement with the operator, and the accessibility of both websites at both domain names to Virginians 24 hours a day, it appears that these facts are sufficient to put Luca Toni/y on notice that he is purposefully directing his activities at Virginia and therefore should foresee being brought into court in Virginia.[6]

Venue is proper in this district under 28 U.S.C. § 1391(d) since an alien may be sued in any district and Luca Toni/y is alleged to be an alien.

For these reasons the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over Luca Toni/y, and that venue is proper in this court.

## Service

On October 3, 2011, the undersigned entered an Order finding that pursuant to Fed. R. Civ. P. 4(f)(3) Luca Toni/y could be served by publication.  (Docket no. 97).  As shown in the notice filed by 3M on December 6, 2011, notice of this action was published in accordance with this court's Order in Il Secolo XIX in Genoa, Italy on October 28, November 4, November 11, and November 18, 2011.  (Docket no. 117).

For these reasons the undersigned recommends a finding that service of process has been accomplished in this action.

---

[6] A finding of *in personam* jurisdiction in this case may have a significant impact on 3M's ability to pursue an *in rem* action.  Since one must establish a lack of *in personam* jurisdiction to bring an *in rem* action, one could argue that in any case in which an interactive website is involved, *in rem* jurisdiction should not be allowed since personal jurisdiction would be present over the registrant – even when the registrant cannot be located.

## Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a), Luca Toni/y was required to file an answer with the Clerk by December 9, 2011, twenty-one days after the last date of publication (November 18, 2011). No responsive pleading was filed. On December 28, 2011, 3M filed its request for entry of default (Docket nos. 119, 120) and the Clerk of the Court entered a default on January 11, 2012 against Luca Toni/y (Docket no. 122). After obtaining default, 3M filed its motion for default judgment and noticed it for a hearing on June 22, 2012. (Docket nos. 157, 161). 3M served Luca Toni/y by mail with a copy of the request for entry of default, the motion for default judgment, the memorandum in support, and the notice of hearing. (Docket nos. 119, 157, 158, 161).

The undersigned recommends a finding that notice of this action was provided properly, that no responsive pleading was filed in a timely manner, and that the Clerk properly entered a default as to Luca Toni/y.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). In the motion for default judgment plaintiff seeks injunctive relief preventing Luca Toni/y from using plaintiff's trademarks or service marks, or any other mark confusingly similar to or diluting of plaintiff's marks, and transferring the infringing domain names that he owns to plaintiff. Plaintiff also seeks an award of statutory damages in the amount of $11,000 for both infringing domain names and recovery of reasonable costs and attorney's fees.[7]

---

[7] 3M has not presented any evidence to support an award of damages for the claims in counts V, VI, VII, and VIII for common law trademark and trade name infringement, common law unfair competition, unjust enrichment, and violation of Virginia's business conspiracy statute in its motion for default judgment. While the motion for default judgment makes a reference to those counts it does not seek any specific relief under them. Since the injunctive

**Trademark Infringement and Unfair Competition (Counts I and III)**

To prevail on its claims for trademark infringement and unfair competition under the Lanham Act, 3M must establish that it has a valid, protectable trademark and that Luca Toni/y's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006).

As alleged in the complaint, 3M has obtained hundreds of U.S. registrations for the 3M mark and those registrations are valid and subsisting. (Compl. ¶ 49). Many of those registrations are incontestable pursuant to 15 U.S.C. § 1065. *Id.* Accordingly, there is no question that 3M has a valid, protectable trademark.

A review of the domain names and one of the websites located at those domain names reveals that the use of the 3M mark or an imitation of that mark is likely to cause confusion among consumers. In assessing the likelihood of confusion issue, the Fourth Circuit has identified seven factors that should be considered: (1) the strength or distinctiveness of the [plaintiff's] mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995). Not all of these factors will be relevant in every trademark dispute and there is no need for each factor to support plaintiff's position on the likelihood of confusion issue but the first factor -- the strength or distinctiveness of the plaintiff's mark -- is important to an assessment of the confusion issue. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984).

---

relief and statutory damages being sought in the motion for default judgment are based on violations of the Lanham Act, only those claims will be addressed in this section.

As discussed below, the 3M mark is not only distinctive, it has become a famous mark through the long use and promotion by the plaintiff. Luca Toni/y's use of the 3M mark and imitations of that mark support a finding of likelihood of confusion. Furthermore, plaintiff does provide goods and services used in the casino gaming industry (Compl. ¶ 38) so there is some similarity in the goods and services provided by 3M and Luca Toni/y (via the <thai3m.net> redirect to <thaimmm.net>), as well. Plaintiff has a significant presence on the internet and operates its own website at <www.3m.com>. (Compl. ¶ 42). While there is no direct evidence of Luca Toni/y's intent, plaintiff has alleged that he intended to cause confusion and trade on 3M's vast goodwill in the 3M mark (Compl. ¶ 72) and it is difficult to believe that his use of the 3M mark was for any reason other than to trade on plaintiff's goodwill in that mark.

Luca Toni/y's domain name <thai3m.net> not only contains an imitation of the 3M mark ("3M"), it redirects to a website, <www.thaimmm.net>, that also contains an imitation of the 3M mark ("mmm") and prominently displays the 3M mark. (Espenshade Decl. Ex. B). That website in turn links to a website at <mmmbet.net>, which plaintiff alleges is the "cornerstone" of the defendants' infringing activity. (Compl. ¶ 52). Further, not only do the <thaimmm.net> and <mmmbet.net> domain names contain an imitation of the 3M mark ("mmm"), the website available at the latter also prominently displays the 3M mark. (Docket no. 110, Ex. E). Given the imitation of the 3M mark contained in Luca Toni/y's domain name and the prominent use of the actual 3M mark on websites linked to <www.thai3m.net>, it is highly likely that a consumer may mistakenly believe that Luca Toni/y's website is related to, sponsored by, or affiliated with 3M. Similarly, Luca Toni/y's domain name <thai3m.com> contains an imitation of the 3M mark ("3M"), notwithstanding the fact that the website located at that domain name does not itself display the 3M mark or link to one that does.

For these reasons the undersigned recommends a finding that Luca Toni/y has infringed plaintiff's 3M mark in violation of 15 U.S.C. § 1114(1) and that his use of the 3M mark constitutes unfair competition under 15 U.S.C. § 1125(a).

**Trademark Dilution (Count II)**

To show trademark dilution plaintiff must show that it owns a famous mark and that the use of that mark by another in commerce is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. *Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (E.D. Va. 2008). A mark is considered famous under the Lanham Act "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; and (vi) any actual

association between the mark or trade name and the famous mark.  15 U.S.C. § 1125(c)(2)(B).

Dilution by tarnishment is association arising from the similarity between a mark or trade name

and a famous mark that harms the reputation of the famous mark.  15 U.S.C. § 1125(c)(2)(C).

The allegations in the complaint support a finding that the 3M mark is famous and that

Luca Toni/y's use of the famous 3M mark blurs and tarnishes plaintiff's famous mark.  Plaintiff

has used the 3M mark since 1906, it offers more than 50,000 products and services in a wide

variety of fields and markets under the 3M mark, the 3M mark is distinctive and distinguishes

the source of plaintiff's products and services, and plaintiff has obtained hundreds of

registrations for the 3M mark for numerous products and services.  (Compl. ¶¶ 36, 37, 45, 49).

Given the prominent use of plaintiff's famous 3M mark and imitations of that mark by

Luca Toni/y, the distinctiveness of the 3M mark, the wide recognition by the consuming public

of the 3M mark as a source of plaintiff's goods and services, the apparent attempt to trade on

plaintiff's goodwill by using the 3M mark, and the lack of any association between Luca Toni/y

and the plaintiff, the undersigned recommends a finding that Luca Toni/y's actions constitute

dilution by blurring under 15 U.S.C. § 1125(c)(2)(B).  In addition, given the use of the 3M mark

in connection with the operation of online gambling websites, the undersigned recommends a

finding that the Luca Toni/y's actions with respect to <thai3m.net> constitute dilution by

tarnishment under 15 U.S.C. § 1125(c)(2)(C).

### Cybersquatting (Count IV)

The Anti-Cybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d)

imposes civil liability on a person who

> (i) has a bad faith intent to profit from that mark, including a personal name which
> is protected as a mark under this section; and

> (ii) registers, traffics in, or uses a domain name that

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . .

To state a claim under the ACPA plaintiff must prove that Luca Toni/y registered, trafficked in, or used a domain name that is identical or confusingly similar to the distinctive 3M mark with a bad faith intent to profit. Or, since the 3M mark is famous, plaintiff must prove that Luca Toni/y registered, trafficked in, or used a domain name that is identical, confusingly similar, or dilutive of plaintiff's famous mark. *See People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). Having previously recommended a finding that the 3M mark is famous and that Luca Toni/y's domain names and/or websites offered at those domain names infringe and dilute the famous 3M mark, the remaining issue for a claim under the ACPA for the domain names containing the 3M mark or a confusingly similar mark is whether the registrations of those domain names were done in bad faith.

The ACPA identifies nine factors to be used in determining whether a registrant has a bad faith intent to profit and each will be discussed in turn. For at least the following reasons, the undersigned recommends a finding that Luca Toni/y has registered and used domain names with a bad faith intent to profit from the 3M mark.

The first factor is "the trademark or other intellectual property rights of the person, if any, in the domain name." 15 U.S.C. § 1125 (d)(1)(B)(i)(I). Luca Toni/y has not been authorized to use the 3M mark and has no intellectual property rights in the 3M mark. The second factor is "the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." 15 U.S.C. § 1125 (d)(1)(B)(i)(II). The domain names do not contain the legal name of the owner (either "Luca Toni," "Luca Tony," or

some portion or combination thereof), nor do the ownership records contain another name that is commonly used to identify the legal owner.

The third factor is "the person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services." 15 U.S.C. § 1125 (d)(1)(B)(i)(III). Neither of the subject domain names is being used to sell 3M's goods or services, the only *bona fide* use of the 3M mark. The fourth factor is "the person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name." 15 U.S.C. § 1125 (d)(1)(B)(i)(IV). The domain name <thai3m.net> is being used for a purely commercial purpose, the promotion of online gambling, and does not contain any commentary about or comparisons to plaintiff's actual goods or services.

The fifth bad faith factor is "the person's intent to divert customers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." 15 U.S.C. § 1125 (d)(1)(B)(i)(V). The wholesale incorporation of plaintiff's 3M mark in both Luca Toni/y's domain names indicates that the intent behind the registration and use of the subject domain names was to trade upon plaintiff's goodwill in the 3M mark. The sixth factor is "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the *bona fide* offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125 (d)(1)(B)(i)(VI). There is no evidence of any such conduct in this case.

The seventh factor is "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125 (d)(1)(B)(i)(VII).  As discussed above, Luca Toni/y appears to have listed either fictitious or non-existent addresses in his registration agreements with the registrars of the domain names.

The eighth factor is "the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties." 15 U.S.C. § 1125 (d)(1)(B)(i)(VIII).  Luca Toni/y has acquired at least two confusingly similar domain names using the 3M mark.  And, the ninth factor is "the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous." 15 U.S.C. § 1125 (d)(1)(B)(i)(IX).  The undersigned has recommended a finding that the 3M mark is distinctive and famous.

For these reasons, the undersigned recommends a finding that Luca Toni/y has violated the ACPA.

**Relief Sought**

The Lanham Act grants the court

> power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 (15 U.S.C. § 1125).  Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended

> period as the court may direct. a report in writing under oath
> setting forth in detail the manner and form in which the defendant
> has complied with the injunction.  Any such injunction granted
> upon hearing. after notice to the defendant. by any district court of
> the United States, may be served on the parties against whom such
> injunction is granted anywhere in the United States where they
> may be found. and shall be operative and may be enforced by
> proceedings to punish for contempt. or otherwise. by the court by
> which such injunction was granted, or by any other United States
> district court in whose jurisdiction the defendant may be found.

15 U.S.C. § 1116. As alleged in the complaint, absent an order from this court enjoining Luca

Toni/y from further infringement of plaintiff's famous 3M mark, he is likely to continue to

infringe the 3M mark and the public will continue to be subject to the likelihood of confusion.

Plaintiff also seeks an award of statutory damages under the ACPA.  The Lanham Act

provides that in a case involving a violation of 15 U.S.C. § 1125(d)(1). the plaintiff may elect. at

any time before final judgment is rendered by the trial court. to recover. instead of actual

damages and profits. an award of statutory damages in the amount of not less than $1.000 and

not more than $100,000 per domain name. as the court considers just.  15 U.S.C. § 1117(d).

Plaintiff suggests that an award of $11,000 ($10,000 for <thai3m.net> and $1,000 for

<thai3m.com>) is appropriate here.

There is no evidence concerning the amount of traffic generated by or to the websites

operated by Luca Toni/y and plaintiff has not presented any evidence of actual confusion or

damages that it has sustained.  However, as the use of the 3M mark does appear to be for the

purpose of trading on the goodwill of the plaintiff, the undersigned recommends an award of

$5,000 in statutory damages for <thai3m.net>.  As to <thai3m.com>, there is no evidence that

this domain name has been used to promote internet gambling or linking to websites that do

(unlike <thai3m.net>), therefore the minimum amount of $1,000 in statutory damages is

recommended.  The undersigned also recommends that in addition to an award of statutory

damages, an Order also be entered requiring the transfer of both domain names to the plaintiff under 15 U.S.C. § 1125(d)(1)(C).

Plaintiff also requests a finding that this is an exceptional case and an award of the reasonable attorney's fees and costs incurred in bringing this action under 15 U.S.C. § 1117(a). The statute does not define what qualifies as an "exceptional case" but the Fourth Circuit has defined the "exceptional case" as one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004). For the reasons set forth above, the undersigned recommends a finding that this is an exceptional case and that plaintiff should be awarded its reasonable attorney's fees and costs.

### Conclusion

For the foregoing reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of 3M Company that includes the following provisions:

Defendant Luca Toni/y, along with his officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with him and who receive actual notice of the order, is permanently enjoined from using the 3M trademark, as well as any other mark or name that includes 3M or any other mark confusingly similar to or diluting the 3M trademark.

Luca Toni/y shall take all necessary steps to have the registrations for the domain names <thai3m.net> and <thai3m.com> transferred to the plaintiff.

That statutory damages be awarded to the plaintiff against defendant Luca Toni/y in the amount of $5,000 for the domain name <thai3m.net> and $1,000 for the domain name <thai3m.com>.

That an order be entered under 15 U.S.C. § 1125(d)(1)(C) requiring the transfer of the domain names <thai3m.net> and <thai3m.com> to the plaintiff.[8]

That the plaintiff be awarded reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a).

### Notice to Parties

Failure to file written objections to these proposed findings of fact and recommendations within 14 days after being served with a copy of these proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of these proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

Plaintiff 3M Company is hereby directed to send a copy of these proposed findings of fact and recommendations to defendant Luca Toni/y at the physical address listed in the registration for his domain names. Plaintiff 3M Company shall then file a notice with the court indicating the date and manner by which service was completed.

ENTERED this 12th day of July, 2012.

                                                    /s/
                                        John F. Anderson
                                        United States Magistrate Judge
                                        John F. Anderson
                                        United States Magistrate Judge

Alexandria, Virginia

---

[8] The inclusion of this provision may facilitate having the registry for these domain names transfer the registrations.