IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| 3M COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:11cv0627 (TSE/JFA) |
| v. | ) |
| | ) |
| CHRISTIAN INVESTMENTS LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to

Federal Rule of Civil Procedure 55(b) against Directi Internet Solutions Pvt Ltd d/b/a

Publicdomainregistry.com d/b/a Privacyprotect.org ("Directi" or "defendant").[1] (Docket no.

157). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the

court these proposed findings of fact and recommendations, a copy of which will be provided to

all interested parties.

### Procedural Background

On June 10, 2011, plaintiff 3M Company ("plaintiff" or "3M") filed a complaint

asserting a variety of claims against several groups of defendants. (Docket no. 1). On July 18,

2011, plaintiff filed an amended complaint, again asserting a variety of claims against several

groups of defendants. (Docket no. 25) ("Compl."). The claims asserted by 3M include

trademark infringement, dilution, unfair competition, cybersquatting, unjust enrichment, and

violation of the Virginia Business Conspiracy Statute, Va. Code § 18.2-499, *et seq.* (Docket no.

25). 3M has obtained consent judgments against Softlayer Technologies, Inc. (Docket no. 27),

---

[1] The undersigned has already filed proposed findings of fact and recommendations as to defendant Luca Toni/y.
*See* Docket no. 164.

Pattanaphone Prasomthong (Docket no. 44), Godaddy.com, Inc. and Domains by Proxy, Inc. (Docket no. 66), CAT Telecom Public Company Limited (Docket no. 118), and Whoisprotection.cc (Docket no. 162) and has dismissed voluntarily the claims against Prolexic Technologies, Inc. (Docket no. 35), Tiggee LLC (Docket no. 40), Bluehost, Inc. (Docket no. 42), Asia Netcom Asia Pacific Ltd. (Docket no. 78), Christian Investments LLC (Docket no. 88), and Hoon Hoe Lau (Docket no. 152).  On March 6, 2012, 3M obtained default judgments against defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit. (Docket nos. 125-132).

In this motion for default judgment, 3M seeks a judgment against Directi and an order enjoining the defendant from using or infringing the 3M mark and any other mark confusingly similar to the 3M mark, transferring certain domain name registrations held by Directi to 3M, and awarding statutory damages, attorney's fees, and costs.  (Docket no. 157).

On November 24, 2011, plaintiff effected service on Directi through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  (Docket no. 137).[2]  Pursuant to Fed. R. Civ. P. 12(a), a responsive pleading was due from Directi by December 15, 2011, twenty-one days after service.  No responsive pleading has been filed by Directi.

On April 3, 2012, plaintiff filed a request for entry of default against Directi supported by a declaration from Wendy C. Larson.  (Docket no. 140).  On April 4, 2012, the Clerk of the Court entered a default against Directi pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 141).

---

[2] Prior to service under the Hague Convention, Directi acknowledged actual notice of this suit on July 13, 2011. (Espenshade Decl. at Ex. J).

On June 5, 2012, plaintiff filed a motion for default judgment against Directi, a memorandum in support (Docket no. 158), and a declaration from Steven M. Espenshade (Docket no. 158-1) ("Espendshade Decl.") with attached exhibits A-L (Docket nos. 158-2 through 158-13). On June 11, 2012, plaintiff filed a notice setting a hearing on the motion for default judgment on June 22, 2012. (Docket no. 161). Copies of the motion for default judgment and supporting pleadings were sent to Directi at its address in Mumbai, India by U.S. mail on June 5, 2012 and a copy of the notice of hearing was sent in the same manner on June 11, 2012. (Docket nos. 157, 158, 161). Directi has not responded to plaintiff's complaint, the request for entry of default, or the motion for default judgment. On Friday, June 22, 2012, counsel for the plaintiff appeared before the undersigned and no one appeared on behalf of Directi. (Docket no. 163).

## Factual Background

The following facts are established by the amended complaint (Docket no. 25) and the memorandum in support of the motion for default judgment with its supporting declaration and exhibits (Docket no. 158).

Plaintiff 3M is a corporation organized under the laws of the state of Delaware and has a principal place of business in the state of Minnesota. (Compl. ¶ 1). Defendant Directi is an Indian company with a principal place of business in Mumbai, India and the registrant of the domain names <3mbet-online.com> and <3mthai888.com>. (Compl. ¶ 3).

Plaintiff 3M owns the mark and trade name 3M, as well as various other marks and names that include 3M ("the 3M mark"). (Compl. ¶ 36). Plaintiff has used the 3M mark in commerce continuously since 1906. *Id.* Plaintiff has registered the 3M mark with the United States Patent and Trademark Office and currently owns hundreds of U.S. registrations for the 3M

mark for numerous products and services. (Compl. ¶ 49). These registrations are valid and subsisting and many of them are incontestable. *Id.* Plaintiff is a diverse company and it has expanded its use of the 3M mark to more than 50,000 products and services in a wide variety of fields under the 3M mark. (Compl. ¶ 37). Among its many products and services 3M offers touchscreen solutions which are used worldwide in applications in the casino gaming industry for uses in slot games, video card games, and multi-player table games. (Compl. ¶ 38). Over the years, 3M has also operated through a number of other names and entities bearing the 3M mark in connection with a wide variety of goods, services, and markets, such as 3M Export Sales, 3M Thailand Limited, 3M Automotive Industry Center, 3M Health Care, 3M Medical Products Group, 3M Document Systems, 3M Marine Trades Project, 3M Sound Products, 3M Life Sciences Sector, 3M Meeting Management Institute, and 3M Global Trading, Inc. (Compl. ¶ 40). For decades 3M has used the 3M mark in connection with its charitable underwriting activities through the 3M Foundation in sponsoring various arts, education, healthcare, and environmental activities and causes. (Compl. ¶ 41). 3M has developed an enormous amount of goodwill in its 3M mark and the 3M mark is inherently distinctive and serves to identify and indicate the source of 3M's products and services to the consuming public. (Compl. ¶¶ 43, 44). As a result of the long use and promotion of the 3M mark by 3M, the 3M mark has become distinctive to designate 3M, to distinguish 3M and its products and services from those of other businesses, and to distinguish the source or origin of 3M's products and services. (Compl. ¶ 45). The 3M mark is widely recognized as a designation of source of 3M's goods and services and through the efforts of 3M the 3M mark has become famous throughout the United States. (Compl. ¶¶ 46, 47).

4

3M alleges that several of the defendants named in the amended complaint own and operate online gambling websites and promote their online gambling activities using an identical or highly similar copy of the 3M mark. (Compl. ¶ 50). Plaintiff asserts that all of the registrant defendants, including Directi, operate within a common scheme where they all display or have displayed the same or highly similar websites that display the 3M mark, and many of the websites redirect or link to each other. (Compl. ¶ 51). 3M alleges that the domain name <mmmbet.net> and its corresponding website are the cornerstone of the defendants' infringing activity.[3] (Compl. ¶ 52). Many of the other websites operated by the defendants are connected or relate to the <mmmbet.net> website in some way. *Id.* The websites accessible from the defendants' domain names display similar websites, graphics, or logos as those displayed at <www.mmmbet.net> and when a consumer attempts to create an account with several of those websites, he or she is directed to contact information associated with the website <www.mmmbet.net>. *Id.* In addition to using the 3M mark on the websites, many of the domain names that have been registered by the defendants include the 3M mark or are similar to the 3M mark. (Compl. ¶ 53). The defendants are not affiliated with or sponsored by 3M and have not been authorized by 3M to use the 3M mark or any confusingly similar mark. (Compl. ¶ 54).

Plaintiff alleges that the defendants either use registrars located in the United States, use hosting service providers in the United States, or that the gambling services offered on their websites are directed at least in part toward United States citizens. (Compl. ¶ 60). United States citizens are able to open online gambling accounts through the defendants' websites or websites to which they are redirected or connected. (Compl. ¶ 61).

---

[3] Defendant KC, against whom plaintiff has obtained default judgment, is the registrant of the domain name <mmmbet.net> and various other infringing domain names. (Compl. ¶ 8; Docket no. 125).

Plaintiff claims that the defendants' unauthorized use of the 3M mark is likely to cause confusion, mistake, and/or deceive consumers as to some affiliation, connection, or association of defendants with 3M and the origin, sponsorship, or approval of the services offered by the defendants. (Compl. ¶ 62). 3M also states that the defendants' unauthorized use of the 3M mark falsely designates the origin of the products and services offered at the defendants' domain names (Compl. ¶ 63), trades on the goodwill of 3M in the 3M mark (Compl. ¶ 64), is likely to cause dilution by blurring and tarnishing 3M's famous 3M mark (Compl. ¶ 65), and unjustly enriches the defendants at 3M's expense (Compl. ¶ 66). Plaintiff alleges that unless the defendants are restrained from further infringing activity, they will continue their activity and continue to cause irreparable harm to 3M and to the public for which there is no adequate remedy at law. (Compl. ¶ 69).

While the amended complaint asserts broad allegations as to large groups of defendants, 3M has presented additional factual information in its motion for default judgment specifically concerning Directi. In the Espenshade Declaration (Docket no. 158-1), he states that Directi is a domain name registrar accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"). (Espenshade Decl. ¶ 9, Ex. G). Directi does business as Publicdomainregistry.com and offers domain name registration privacy services as Privacyprotect.org. (Espenshade Decl. ¶¶ 11, 12). Prior to the filing of the original complaint, Directi, doing business as Publicdomainregistry.com, was identified as the registrar and Privacyprotect.org was identified as the registrant for the domain names <3mthai888.com> and <3mbet-online.com>. (Espenshade Decl. ¶¶ 11, 12, Exs. I, J). Also prior to the filing of the original complaint, <3mthai888.com> and <3mbet-online.com> were used for gambling websites featuring the 3M mark. (Espenshade Decl. ¶ 13, Ex. K). These websites offered live sports betting and casino

gambling and solicited customers to create accounts with the website through which they could place bets. (*Id.*).

Directi's website features information indicating that it engages in commerce in the United States and Virginia, including statements that it "develop[s] innovative mass-market Web Products serving millions of Customers worldwide" and that it has a "[g]lobal audience." (Espenshade Decl. ¶ 10, Ex. H). Publicdomainregistry.com claims to be the domain name registrar for 293,314 United States domain names and to be a partner with 1,745 entities in the United States. (Espenshade Decl. ¶ 11, Ex. I). In addition, the websites of two of Directi's businesses, Skenzo and BigRock, advertise the provision of services in the United States and provide prices for domain registration, Internet hosting, and related services in United States dollars. (*Id.*).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of Directi to file a responsive pleading in a timely manner, the Clerk has entered a default. (Docket no. 141). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the

amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. 3M asserts various claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and claims under Virginia law. (Compl. ¶ 30). This court has subject matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related Virginia law claims pursuant to 28 U.S.C. § 1367(a).

In this action 3M seeks to establish personal jurisdiction over Directi for its registration of certain domain names and the infringing activities undertaken at the websites available at those domain names. Plaintiff argues that this court "has general jurisdiction over Directi based on Directi's continuous and systematic contacts with Virginia" and, in the alternative, general jurisdiction under Fed. R. Civ. P. 4(k)(2) based on Directi's contacts with the United States. (Docket no. 158 at 9-10, 13-17).

Plaintiff argues that Directi has customers in both the United States *and* Virginia. (Docket no. 158 at 9-10). However, given Directi's failure to respond to the allegations in plaintiff's complaint, additional evidence as to the specific locations of Directi's customers within the United States is not available.

Under Rule 4(k)(2), "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

"In order to obtain jurisdiction under Rule 4(k)(2) . . . three requirements must be met. . . . First, the suit must arise under federal law. . . . Second, the defendant must not be subject to personal jurisdiction in any state. . . . Third, the defendant must have contacts with the United States 'consistent with the Constitution and laws of the United States.'" *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). As to the third requirement, "while Rule 4(k)(2) is designed to facilitate obtaining jurisdiction over foreign defendants, it does not operate to relax the requirement that the defendant's contacts with the forum be constitutionally sufficient," that is, "continuous and systematic." *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Here, plaintiff's suit arises under federal law and it appears that Directi is not subject to personal jurisdiction in Virginia as there is no evidence to support a finding that Directi has customers in Virginia or any other "continuous and systematic" contacts with the Commonwealth. However, there is evidence that Directi has numerous customers in the United States such that a United States district court may exercise personal jurisdiction over Directi in a manner consistent with the Constitution. As stated in the memorandum in support of the motion for default judgment, Directi, doing business as Publicdomainregistry.com, claims to be the domain name registrar for 293,314 United States domain names and to be a partner with 1,745 entities in the United States. (Docket no. 158 at 16; Espenshade Decl. ¶ 11, Ex. I).

Venue is proper in this district under 28 U.S.C. § 1391(c)(3), as Directi is not resident in the United States and may therefore be sued in any judicial district.

For these reasons the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over Directi pursuant to Rule 4(k)(2), and that venue is proper in this court.

## Service

Fed. R. Civ. P. 4(f)(1) provides that "[u]nless federal law provides otherwise, an individual -- other than a minor, an incompetent person, or a person whose waiver has been filed -- may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." As indicated in the executed Request for Service Abroad of Judicial or Extra Judicial Documents plaintiff filed on March 30, 2012 (Docket no. 137), Directi was served with notice of this action on November 24, 2011. As shown in an e-mail sent from Directi to 3M's counsel, Directi is aware of the "3M Company lawsuit – Directi." (Espenshade Decl. Ex. J).

For these reasons the undersigned recommends a finding that service of process has been accomplished in this action.

## Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a), Directi was required to file an answer with the Clerk by December 15, 2011, twenty-one days after service. No responsive pleading was filed. On April 3, 2012, 3M filed its request for entry of default (Docket no. 140) and the Clerk of the Court entered a default on April 4, 2012 against Directi (Docket no. 141). After obtaining default, 3M filed its motion for default judgment and noticed it for a hearing on June 22, 2012. (Docket nos. 157, 161). 3M served Directi by mail with a copy of the request for entry of default, the motion for default judgment, the memorandum in support, and the notice of hearing. (Docket nos. 140, 157, 158, 161).

The undersigned recommends a finding that Directi was served properly, that no responsive pleading was filed in a timely manner, and that the Clerk properly entered a default as to Directi.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). In the motion for default judgment plaintiff seeks injunctive relief preventing Directi from using plaintiff's trademarks or service marks, or any other mark confusingly similar to or diluting of plaintiff's marks, and transferring the infringing domain names for which it is the registrant to plaintiff. Plaintiff also seeks an award of statutory damages in the amount of $10,000 for each of the infringing domain names and recovery of reasonable costs and attorney's fees.[4]

To prevail on its claims for trademark infringement and unfair competition under the Lanham Act (Counts I and III), 3M must establish that it has a valid, protectable trademark and that Directi's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). To show trademark dilution (Count II), plaintiff must show that it owns a famous mark and that the use of that mark by Directi in commerce is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. *Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (E.D. Va.

---

[4] 3M has not presented any evidence to support an award of damages for the claims in counts V, VI, VII, and VIII for common law trademark and trade name infringement, common law unfair competition, unjust enrichment, and violation of Virginia's business conspiracy statute in its motion for default judgment. While the motion for default judgment makes a reference to those counts it does not seek any specific relief under them. Since the injunctive relief and statutory damages being sought in the motion for default judgment are based on violations of the Lanham Act, only those claims will be addressed in this section.

2008).  Finally, to establish a violation of the Anti-Cybersquatting Consumer Protection Act

("ACPA"), 15 U.S.C. § 1125 (Count IV), plaintiff must prove that Directi registered, trafficked

in, or used a domain name that is identical or confusingly similar to the distinctive 3M mark with

a bad faith intent to profit.  Or, since the 3M mark is famous (as discussed below), plaintiff must

prove that Directi registered, trafficked in, or used a domain name that is identical, confusingly

similar, or dilutive of plaintiff's famous mark.  *See People for the Ethical Treatment of Animals*

*v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).

As alleged in the complaint, 3M has obtained hundreds of U.S. registrations for the 3M

mark and those registrations are valid and subsisting. (Compl. ¶ 49).  Many of those

registrations are incontestable pursuant to 15 U.S.C. § 1065. *Id.* Accordingly, there is no

question that 3M has a valid, protectable trademark.

Further, the 3M mark is not only distinctive, it has become a famous mark through the

long use and promotion by the plaintiff.  A mark is considered famous under the Lanham Act "if

it is widely recognized by the general consuming public of the United States as a designation of

source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).  In

determining whether a mark possesses the requisite degree of recognition, the court may consider

all relevant factors, including the following: (i) the duration, extent, and geographic reach of

advertising and publicity of the mark, whether advertised or publicized by the owner or third

parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered

under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was

registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal

register. *Id.* Here, plaintiff has used the 3M mark since 1906, it offers more than 50,000

products and services in a wide variety of fields and markets under the 3M mark, the 3M mark is

distinctive and distinguishes the source of plaintiff's products and services, and plaintiff has

obtained hundreds of registrations for the 3M mark for numerous products and services. (Compl.

¶¶ 36, 37, 45, 49).

A review of the domain names <3mthai888.com> and <3mbet-online.com> and the

websites located at those domain names reveals that their use of the 3M mark or an imitation of

that mark is likely to cause confusion among consumers. In assessing the likelihood of

confusion issue, the Fourth Circuit has identified seven factors that should be considered: (1) the

strength or distinctiveness of the [plaintiff's] mark; (2) the similarity of the two marks; (3) the

similarity of the goods and services that the marks identify; (4) the similarity of the facilities that

the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6)

the defendant's intent; and (7) actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of

Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995). Not all of these factors will be relevant in every

trademark dispute and there is no need for each factor to support plaintiff's position on the

likelihood of confusion issue but the first factor -- the strength or distinctiveness of the plaintiff's

mark -- is important to an assessment of the confusion issue. *Pizzeria Uno Corp. v. Temple*, 747

F.2d 1522, 1527 (4th Cir. 1984).

As discussed above, the 3M mark is not only distinctive, it has become a famous mark

through the long use and promotion by the plaintiff. Further, the use of the 3M mark and

imitations of that mark at the domain names <3mthai888.com> and <3mbet-online.com>

supports a finding of likelihood of confusion. Plaintiff also provides goods and services used in

the casino gaming industry (Compl. ¶ 38) so there is some similarity in the goods and services

provided at the websites located at the domain names. Finally, plaintiff has a significant

presence on the Internet and operates its own website at <www.3m.com>. (Compl. ¶ 42).

The domain names <3mthai888.com> and <3mbet-online.com> not only contain an imitation of the 3M mark ("3m"), the websites available at those domain names also prominently display the 3M mark. (Espenshade Decl. Ex. K). Given the imitation of the 3M mark contained in the domain names and the prominent use of the actual 3M mark at the websites located at the domain names, it is likely that a consumer may mistakenly believe that the domain names and websites are related to, sponsored by. or affiliated with 3M. In addition, given the use of the 3M mark in connection with the operation of online gambling websites, that use constitutes dilution by tarnishment under 15 U.S.C. § 1125(c)(2)(C).

The unique issue presented here is what, if any, relief may be awarded against Directi, considering that it is not the actual owner of the domain names that are the subject of this motion but the registrant privacy service provider only. Unlike defendant GoDaddy.com in *Academy of Motion Pictures Arts and Sciences v. GoDaddy.com*, No. 2:10cv3738 (ABC/CW) (C.D. Cal. Sept. 20, 2010), there is no allegation that Directi employs a "Parked Pages Program" or "Cash Parking Program" in order to secure any financial gain or that Directi otherwise benefits from the goodwill of plaintiff's 3M mark through the *use* of the websites located at the domain names <3mthai888.com> and <3mbet-online.com>. As the district court in *GoDaddy.com* stated, "the status as a domain registration privacy service alone probably does not give rise to an inference of bad faith intent." *GoDaddy.com*, at *16 (citing *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1109-10 (C.D. Cal. 2009)); *see also Transamerica Corp. v. Moniker Online Services, LLC*, 672 F. Supp. 2d 1353, 1365 n.8 (stating that "[d]efendants' involvement in the monetization and profit of the domain names renders them *de facto* registrants"). Here, it appears that Directi did nothing more than provide privacy registration services to the domain name owners through Privacyprotect.org.

Moreover, plaintiff acknowledges that it now has the information Directi must provide as an accredited ICANN registrar concerning the owners/customers who obtained registrations for <3mthai888.com> and <3mbet-online.com>. (Docket no. 158 at 20). This acknowledgment significantly undermines plaintiff's argument that Directi "hid[] its customer's information," took itself "out of the role of registrar," and thus acted "as the *de facto* registrant of the domain name" such that "Directi's status as a privacy service provider should not immunize it from liability." (Docket no. 158 at 19-20).

In sum, the only evidence presented establishes that Directi provides a privacy service for domain name owners only and does not operate or control the content of websites located at those owner's domain names. However, as discussed above, there is evidence sufficient to show that the websites located at <3mthai888.com>[5] and <3mbet-online.com>, in addition to the domain names themselves, infringe on plaintiff's 3M mark.

**Relief Sought**

The Lanham Act grants the court

> power to grant injunctions, according to the principles of equity
> and upon such terms as the court may deem reasonable. to prevent
> the violation of any right of the registrant of a mark registered in
> the Patent and Trademark Office or to prevent a violation under
> subsection (a), (c). or (d) of section 43 (15 U.S.C. § 1125). Any
> such injunction may include a provision directing the defendant to
> file with the court and serve on the plaintiff within thirty days after
> the service on the defendant of such injunction, or such extended
> period as the court may direct, a report in writing under oath
> setting forth in detail the manner and form in which the defendant
> has complied with the injunction.  Any such injunction granted
> upon hearing, after notice to the defendant. by any district court of
> the United States. may be served on the parties against whom such
> injunction is granted anywhere in the United States where they
> may be found, and shall be operative and may be enforced by
> proceedings to punish for contempt, or otherwise. by the court by

---

[5] Though it is alleged in the complaint that the website located at this domain name infringes on plaintiff's 3M mark, it appears that the site is no longer active.

> which such injunction was granted, or by any other United States
> district court in whose jurisdiction the defendant may be found.

15 U.S.C. § 1116.  As alleged in the complaint, absent an order from this court enjoining further

infringement of plaintiff's famous 3M mark, the websites located at <3mthai888.com> and

<3mbet-online.com> will likely continue to infringe the 3M mark and the public will continue to

be subject to the likelihood of confusion discussed above.  Even though Directi neither owns the

domain names nor controls the content of the websites, it is the registrar for the two domain

names and therefore an order requiring Directi to transfer the registrations of the domain names

<3mthai888.com> and <3mbet-online.com> to 3M is appropriate.

Plaintiff also seeks an award of statutory damages under the ACPA.  The Lanham Act

provides that in a case involving a violation of 15 U.S.C. § 1125(d)(1), the plaintiff may elect, at

any time before final judgment is rendered by the trial court, to recover, instead of actual

damages and profits, an award of statutory damages in the amount of not less than $1,000 and

not more than $100,000 per domain name, as the court considers just.  15 U.S.C. § 1117(d).

Plaintiff suggests that an award of $20,000 ($10,000 for <3mthai888.com> and $10,000 for

<3mbet-online.com>) is appropriate here.

As there is no evidence concerning the amount of traffic generated by or to the websites,

plaintiff has not presented any evidence of actual confusion or damages that it has sustained, and

because there is no evidence supporting a finding of Directi's bad faith intent to profit from the

registrations of the infringing domain names, the undersigned recommends a finding that

statutory damages are not appropriate in this case and should therefore not be awarded.

However, given the infringing nature of the domain names and this court's equitable powers to

provide relief from that infringement, the undersigned recommends that an Order be entered

requiring the transfer of both domain names to the plaintiff under 15 U.S.C. § 1125(d)(1)(C) ("In

16

any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark").

Plaintiff also requests a finding that this is an exceptional case and an award of the reasonable attorney's fees and costs incurred in bringing this action under 15 U.S.C. § 1117(a). The statute does not define what qualifies as an "exceptional case" but the Fourth Circuit has defined the "exceptional case" as one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004). Given this standard and for the reasons stated above, the undersigned recommends a finding that this is not an exceptional case and that plaintiff should not be awarded its reasonable attorney's fees and costs.

## Conclusion

For the foregoing reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of 3M Company that includes the following provisions:

Directi shall take all necessary steps to have the registrations for the domain names <3mthai888.com> and <3mbet-online.com> transferred to the plaintiff.

## Notice to Parties

Failure to file written objections to these proposed findings of fact and recommendations within 14 days after being served with a copy of these proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of these proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error. A copy of these proposed findings of fact and recommendations is being mailed by

18

first class mail, postage prepaid, to Directi Internet Solutions Pvt Ltd d/b/a

Publicdomainregistry.com d/b/a Privacyprotect.org at Directiplex, Next to Andheri Subway, Old

Nagardas Road, Andheri (East), Mumbai, Maharashtra India  400069 on August 2, 2012.

ENTERED this **2** day of August, 2012.

_____/s/_____

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia