IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| 3M COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11cv0627 (TSE/JFA) |
| | ) | |
| THAILAND3M.NET, | ) | |
| An Internet Domain Name, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment. (Docket no.

194). In this motion, plaintiff 3M Company ("plaintiff" or "3M") seeks a default judgment

against the domain names <thailand3m.net> and <thaimmm.net> ("the defendant domain

names"), ordering that the defendant domain names be transferred to 3M by: (1) the registry

VeriSign, Inc. ("VeriSign") changing the registrar of the defendant domain names to

Markmonitor.com ("Markmonitor") or another registrar of 3M's choosing; and (2) the registrar

Markmontior transferring the defendant domain names to 3M.[1] (Docket no. 195-1). Pursuant to

28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court these

proposed findings of fact and recommendations, a copy of which will be provided to all

interested parties.

---

[1] This is the relief requested by plaintiff in the [Proposed] Judgment and Final Order on the motion for default judgment attached as an exhibit to the memorandum in support of plaintiff's motion for default judgment. (Docket no. 195-1). As discussed below, plaintiff sought additional forms of relief in the complaint based on a wide variety of claims but, given plaintiff's election to proceed under the *in rem* jurisdiction provisions of 15 U.S.C. § 1125(d)(2), the relief sought in this motion is limited to the transfer of the registrations for the defendant domain names to the plaintiff.

## Procedural Background

On June 10, 2011, plaintiff filed a complaint for trademark infringement, dilution, cybersquatting, unfair competition, unjust enrichment, contributory infringement, and business conspiracy against several groups of defendants. (Docket no. 1). On July 18, 2011, plaintiff filed an amended complaint, again asserting a variety of claims against several groups of defendants and asserting *in rem* jurisdiction over 50 domain names pursuant to the *in rem* provisions of the Anticybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d)(2) ("ACPA"). (Docket no. 25) ("Compl."). The claims asserted by 3M include trademark infringement, dilution, unfair competition, cybersquatting, unjust enrichment, and violation of the Virginia Business Conspiracy Statute, Va. Code § 18.2-499, *et seq.* (Docket no. 25).

Over the course of several months, 3M obtained consent judgments against Softlayer Technologies, Inc. (Docket no. 27), Pattanaphone Prasomthong (Docket no. 44), GoDaddy.com, Inc. and Domains by Proxy, Inc. (Docket no. 66), CAT Telecom Public Company Limited (Docket no. 118), <whoisprotection.cc> (Docket no. 162), and Hyper, a/k/a Hyper Creation Co. Ltd. (Docket no. 171). 3M has also dismissed voluntarily the claims against Prolexic Technologies, Inc. (Docket no. 35), Tiggee LLC (Docket no. 40), Bluehost, Inc. (Docket no. 42), Asia Netcom Asia Pacific Ltd. (Docket no. 78), Christian Investments LLC (Docket no. 88), Hoon Hoe Lau (Docket no. 152), Bettinghouse99 and Pramote Polchocke (Docket no. 181), and Marcos, a/k/a 3M Specialist ("Marcos") (Docket no. 188).

On November 16, 2011, 3M filed a motion for default judgment seeking a judgment against defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit and seeking an order enjoining these defendants from using or infringing the 3M mark and any other mark confusingly similar to the 3M mark, including the transfer of certain domain

name registrations held by the defaulting defendants to 3M; statutory damages; and attorney's fees and costs. (Docket no. 110 at 26-29). On March 6, 2012, a Final Order was entered (Docket no. 125) adopting the undersigned's Report and Recommendation (Docket no. 121) and granting 3M's motion for default judgment against defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit (Docket no. 110). Defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit were permanently enjoined from using the 3M trademark as well as any other mark or name that includes 3M or any other mark confusingly similar to or diluting the 3M trademark. (Docket nos. 126-132). On May 3, 2012, an Amended Order and Final Judgment as to defendants KC, John B. LeStrange, 3MBKK, Wattana, MS, Tharinee Pinidrak, and Arthit was entered including additional relief under 15 U.S.C. § 1125(d)(1)(C), transferring several domain names to 3M, and awarding costs and attorney's fees. (Docket nos. 143-150). On June 5, 2012, 3M filed a motion for default judgment against defendants Luca Toni a/k/a Luca Tony ("Luca Toni") and Directi Internet Solutions Pvt Ltd d/b/a PublicDomainRegistry.com d/b/a PrivacyProtect.org ("Directi"). (Docket no. 157). On November 13, 2012, Final Orders adopting the undersigned's Reports and Recommendations as to Luca Toni and Directi (Docket nos. 164, 168) and granting 3M's motion for default judgment against defendant Luca Toni and Directi were entered. (Docket nos. 173, 174).

Given that this motion for default judgment is limited to the claims against the remaining two defaulting defendant domain names <thailand3m.net> and <thaimmm.net>, the following discussion in this proposed findings of fact and conclusions of law will now focus on the claims raised against these two defaulting defendant domain names.

As alleged in the complaint, Marcos, the registrant of the defendant domain names <thaimmm.net> and <thailand3m.net>, provided the following address in connection with those registrations: 323 Srilankamatan Road, Lanka Columbo, Columbo, Sri Lanka[2] 52211. (Compl. ¶ 6). In September 2011, plaintiff attempted to serve Marcos personally at the physical address provided in connection with the registration of the defendant domain names in Sri Lanka, pursuant to the terms of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. (Docket no. 113). On December 1, 2011, the summons as to Marcos was returned unexecuted along with a letter from the District Court in Colombo, Sri Lanka stating that the address provided in connection with Marcos's registration of the defendant domain names was nonexistent.[3] *Id.* Plaintiff also electronically served notice of this litigation to the e-mail address provided by Marcos in connection with the registration of the defendant domain names: "salamat1443@co.sr." (Docket no. 154-1) ("Larson Decl. I" at ¶¶ 2, 3). However, these e-mails were returned as undeliverable. (Larson Decl. I at ¶ 3).

On April 14, 2011, plaintiff's counsel sent a letter to the hosting service AttractSoft GmbH ("AttractSoft") indicating plaintiff's objection to the content displayed at <thailand3m.net>. (Docket no. 184-2) ("Espenshade Decl." at ¶ 2). On April 14, 2011, plaintiff's counsel also sent a letter to the hosting service SoftLayer Technologies, Inc. ("SoftLayer") indicating plaintiff's objection to the content displayed at <thaimmm.net>. (Espenshade Decl. at ¶ 3). Plaintiff states that after the April 14, 2011 correspondence, the content displayed at <thailand3m.net> was removed by AttractSoft and an e-mail from a

---

[2] Plaintiff uses the spellings "Colombo, Sri Lanka" and "Columbo, Sri Lanka" interchangeably.

[3] The unexecuted summons and other materials were stamped "filed" on November 30, 2011. (Docket no. 113).

representative confirmed the removal of such content from the domain name. (Espenshade Decl. at ¶ 4). Plaintiff also states that following the April 14, 2011 correspondence, the content displayed at <thaimmm.net> was somewhat altered. (Espenshade Decl. at ¶ 5).

On May 23, 2012, plaintiff filed a motion for leave to serve defendant Marcos by alternative means (Docket no. 153) along with a memorandum in support (Docket no. 154). Plaintiff requested leave to serve process and other papers on Marcos by publishing notice once each week for four successive weeks in a newspaper with distribution in Colombo, Sri Lanka. (Docket no. 154-4). On May 25, 2012, the undersigned entered an Order granting plaintiff leave to serve defendant Marcos by publication in a newspaper with circulation in Colombo, Sri Lanka. (Docket no. 156). Though noting that plaintiff had not addressed whether the court had personal jurisdiction over Marcos, the undersigned acknowledged that plaintiff had attempted to serve Marcos at his physical address through the Hague Convention and by e-mail at the addresses listed in connection with his ownership of the defendant domain names. *Id.* The undersigned also acknowledged that neither the physical nor the e-mail addresses provided by defendant Marcos in the WhoIs records for the defendant domain names was valid. *Id.* In granting leave for alternate service, the undersigned further noted that "service by publication in a newspaper in Colombo, Sri Lanka is reasonably calculated to put defendant Marcos on notice of this action and provide an opportunity to voice any objection." *Id.*

Following judgment against Luca Toni and Directi, on November 30, 2012, the court ordered 3M to submit a status report setting forth the claims remaining against all named defendants in this matter by December 14, 2012. (Docket no. 177). On December 14, 2012, 3M submitted a status report addressing outstanding issues in this litigation. (Docket no. 178). 3M indicated that three non-domain name defendants remained in the case: Marcos, Pramote

5

Polchocke, and Bettinghouse99 and that it would voluntarily dismiss Pramote Polchocke and Bettinghouse99. *Id.* With regard to Marcos, plaintiff stated that its counsel had repeatedly contacted all of the English-language print publications in Colombo, Sri Lanka starting May 31, 2012, but that these inquiries had predominantly been ignored.[4] *Id.* A telephonic status hearing was held before the District Judge on December 21, 2012. (Docket no. 182).

On January 7, 2013, 3M filed a motion to proceed *in rem* against the defendant domain names <thailand3m.net> and <thaimmm.net> and a motion to waive order of publication seeking: (1) permission to proceed *in rem* against <thailand3m.net> and <thaimmm.net>; and (2) an Order waiving the publication requirement of 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb). (Docket no. 184). In the motion to waive order of publication, plaintiff stated that the instant litigation had been substantially concluded as a combination of consent judgments, default judgments, and notices of dismissal had resulted in the dismissal of all but one of the original non-domain name defendants: Marcos, the owner of the domain names <thailand3m.net> and <thaimmm.net>. *Id.* On January 7, 2013, plaintiff also filed a notice of voluntary dismissal without prejudice as to defendant Marcos. (Docket no. 183). By Order signed by the District Judge, Marcos was dismissed from this lawsuit on January 7, 2013. (Docket no. 188).

On January 8, 2013, the District Judge issued an Order waiving the publication requirement of 15 U.S.C. § 1125(d)(2)(A)(ii)(II). (Docket no. 189). The Order noted that 3M "has elected to proceed *in rem* against the domain names" and stated that "3M has made significant and substantial efforts to locate and serve the registrant, including service by the

---

[4] Plaintiff did state that in July, one publication agreed to publish the notice so long as 3M provided full payment in advance, but after 3M wired the requested payment, the publication ceased contact with 3M. (Docket no. 178). Plaintiff also stated that a second publication agreed that it would publish notice, but wanted 3M to sign a burdensome indemnification agreement and that a third publication responded to an initial inquiry with contact information for its print publication, but never replied to 3M counsel's follow up inquiry. *Id.*

Hague Convention, with the result that the address given for the registrant does not exist." *Id.*

On March 3, 2013, 3M filed a request for entry of default as to <thailand3m.net> and <thaimmm.net> (Docket no. 191) supported by a declaration from Wendy C. Larson (Docket no. 191-1) ("Larson Decl. II"). 3M argued that service of process on the defendant domain names was complete as of the date of the court's Order waiving publication. (Docket no. 191). Accordingly, pursuant to Fed. R. Civ. P. 12(a), a responsive pleading was due by January 29, 2013, twenty-one days from the date of service. No responsive pleading has been filed by any of the defaulting defendants. On March 7, 2013, the Clerk entered a default against <thailand3m.net> and <thaimmm.net>. (Docket no. 192).

On March 15, 2013, 3M filed a motion for default judgment against <thailand3m.net> and <thaimmm.net> along with a memorandum in support and a notice of hearing date for March 29, 2013. (Docket nos. 194, 195, 196). In the motion for default judgment, plaintiff sought transfer of the defendant domain names to plaintiff, to be accomplished by directing VeriSign to change the registrar of the defendant domain names to Markmonitor or another registrar of 3M's choice and directing Markmonitor to transfer the domain names to plaintiff. (Docket no. 195-1). Copies of the motion for default judgment, memorandum in support, and notice of hearing date were sent to Marcos in Sri Lanka by United States mail on March 15, 2013. (Docket nos. 194, 195, 196). Neither of the defaulting defendants have responded to the complaint, the request for entry of default, or the motion for default judgment.

On Friday, March 29, 2013, counsel for the plaintiff appeared before the undersigned and no one appeared on behalf of either of the defaulting defendant domain names.

## Factual Background

The following facts are established by the amended complaint (Docket no. 25), the motion to waive order of publication and incorporated memorandum in support (Docket no. 184), and the motion for default judgment with its memorandum in support (Docket nos. 194, 195).

Plaintiff 3M is a corporation organized under the laws of the state of Delaware and has a principal place of business in the state of Minnesota. (Compl. ¶ 1). Marcos is located in Sri Lanka and is listed as the registrant for the defendant domain names <thaimmm.net> and <thailand3m.net>. (Compl. ¶ 6). The registry for the defendant domain names is VeriSign, which is located within this district in Dulles, Virginia. (Compl. ¶ 29).

Plaintiff 3M owns the mark and trade name 3M, as well as various other marks and names that include 3M ("the 3M mark"). (Compl. ¶ 36). Plaintiff has used the 3M mark in commerce continuously since 1906. *Id.* Plaintiff has registered the 3M mark with the United States Patent and Trademark Office and currently owns hundreds of U.S. registrations for the 3M mark for numerous products and services. (Compl. ¶ 49). These registrations are valid and subsisting and many of them are incontestable pursuant to 15 U.S.C. § 1065. *Id.* Plaintiff is a diverse company and it has expanded its use of the 3M mark to more than 50,000 products and services in a wide variety of fields under the 3M mark. (Compl. ¶ 37). Among its many products and services, 3M offers touchscreen solutions which are used worldwide in applications in the casino gaming industry for uses in slot games, video card games, and multi-player table games. (Compl. ¶ 38).

Over the years, 3M has also operated through a number of other names and entities bearing the 3M mark in connection with a wide variety of goods, services, and markets, such as

3M Export Sales, 3M Thailand Limited, 3M Automotive Industry Center, 3M Health Care, 3M Medical Products Group, 3M Document Systems, 3M Marine Trades Project, 3M Sound Products, 3M Life Sciences Sector, 3M Meeting Management Institute, and 3M Global Trading, Inc. (Compl. ¶ 40). For decades, 3M has used the 3M mark in connection with its charitable underwriting activities through the 3M Foundation in sponsoring various arts, education, healthcare, and environmental activities and causes. (Compl. ¶ 41). 3M has developed an enormous amount of goodwill in its 3M mark and the 3M mark is inherently distinctive and serves to identify and indicate the source of 3M's products and services to the consuming public. (Compl. ¶¶ 43, 44). As a result of the long use and promotion of the 3M mark by 3M, the 3M mark has become distinctive to designate 3M, to distinguish 3M and its products and services from those of other businesses, and to distinguish the source or origin of 3M's products and services. (Compl. ¶ 45). The 3M mark is widely recognized and associated with 3M and its diverse offering of products and services and through the efforts of 3M, the 3M mark has become famous throughout the United States. (Compl. ¶¶ 46, 47).

Plaintiff claims that the unauthorized use of the 3M mark by the defendant domain names is likely to cause confusion, mistake, and/or deceive consumers or potential customers as to some affiliation, connection, or association with 3M, or as to the origin, sponsorship, or approval of the services offered by the defendant domain names. (Compl. ¶ 62). 3M also states that the unauthorized use of the 3M mark falsely designates the origin of the products and services offered at the websites at the defendant domain names (Compl. ¶ 63), trades on the goodwill of 3M in the 3M mark (Compl. ¶ 64), and is likely to cause dilution by blurring and tarnishing 3M's famous 3M mark (Compl. ¶ 65). Plaintiff alleges that unless the defendant domain names are

restrained from further infringing activity, the activity will continue to cause irreparable harm to 3M and to the public for which there is no adequate remedy at law. (Compl. ¶ 69).

In the motion to waive order of publication, plaintiff contended that it had reason to believe that the registrant Marcos is the same or an affiliated person or entity as Luca Toni. (Docket no. 184). Plaintiff explained that this was because the domain name owned by Luca Toni automatically redirected to <thaimmm.net>, owned by Marcos; both entities provided invalid postal and e-mail addresses; both entities in registering their domain names provided likely fictitious names that are nearly identical to famous soccer players; and both entities listed addresses that include apparently fictitious street names that mimic the country of residence (*i.e.*, an address on "Italian Street" in Italy for Luca Toni and an address on "SriLankanmatan Road" in Sri Lanka for Marcos). *Id.*

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to the defendant domain names in a timely manner, the Clerk has entered a default as to both of the defendant domain names. (Docket no. 192).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a

court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. 3M asserts various claims under the ACPA, 15 U.S.C. § 1125(d), the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and claims under Virginia law. (Compl. ¶ 30). This court has subject matter jurisdiction over the Lanham Act and ACPA claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related Virginia law claims pursuant to 28 U.S.C. § 1367(a).

Having voluntarily dismissed the remaining registrant defendant Marcos (Docket no. 188) and indicated its intent to proceed against the two defendant domain names *in rem* (Docket no. 184), 3M contends that the court has *in rem* jurisdiction over the defendant domain names under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name exists where the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i). 3M owns hundreds of federally-registered trademarks for the 3M mark for numerous products and services (Compl. ¶ 49) and it claims that its rights in those marks are being violated by the registration and use of the defendant domain names.

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of

both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). First, given that Marcos, the current registrant of the defendant domain names, to the extent that he exists at all, resides in Sri Lanka and does not appear to have any ongoing business activities in the United States, 3M has established that it is unable to obtain personal jurisdiction over the registrant of the defendant domain names, who would otherwise be the defendant in a civil action under the ACPA. Second, 3M contends that it sent notice of this action to the postal address in Sri Lanka provided by the registrant to the registrar through the Hague Convention, sent electronic notice of this action to the e-mail address provided by the registrant to the registrar, and even undertook significant efforts to determine whether service in a publication circulated in Colombo, Sri Lanka could be accomplished. (Docket nos. 178, 184). 3M has shown and the court has previously recognized that despite 3M's efforts, the registrant Marcos appears to have provided invalid postal and e-mail addresses, registered the domain name using a likely fictitious name nearly identical to a famous soccer player, and used an apparently fictitious street address that does not exist. (Docket nos. 153, 189). Accordingly, 3M has shown that despite due diligence, it cannot find the person who would have been a defendant in this action.[5]

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign, Inc., which has offices within this district and division, is the exclusive registry controlling these defendant domain names with the top-level domain <.net>.

---

[5] Further support for this recommended finding is also found in the following section regarding service.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over the defendant domain names, and that venue is proper in this court.

## Service

In September 2011, plaintiff attempted to serve Marcos, the registrant for the defendant domain names, pursuant to the terms of the Hague Convention, at the physical address in Sri Lanka provided by Marcos to the registrar. (Docket no. 113). Plaintiff also attempted to serve Marcos by e-mail at the addresses listed in connection with his registration of the two defendant domain names. (Larson Decl. I at ¶ 3). On May 25, 2012, finding that it appeared that neither the physical nor the e-mail addresses provided by Marcos in the WhoIs records for the defendant domain names was valid, the undersigned entered an Order granting 3M leave to serve Marcos by publication in a newspaper with circulation in Colombo, Sri Lanka. (Docket no. 156). In the Status Report submitted on December 14, 2012, 3M indicated that it had been unsuccessful in its attempts to publish notice in an English-language print publication in Colombo, Sri Lanka. (Docket no. 178). On January 7, 2013, 3M filed a notice to proceed *in rem* against the domain names <thailand3m.net> and <thaimmm.net> and a motion to waive order of publication, providing several arguments as to why a waiver of the publication requirement should be granted. (Docket no. 184).

3M first argued that the court should grant a waiver of the publication requirement because plaintiff had provided notice of the pending action to the postal address in Sri Lanka and the e-mail address provided by the registrant of the defendant domain names to the registrar. *Id.* 3M stated that it attempted service by traditional means through the Hague Convention, but was advised by the District Court in Colombo, Sri Lanka that the address provided by the registrant

was non-existent. *Id.* 3M argued that the postal and e-mail addresses provided by the registrant were apparently false because the communications to those addresses were rejected. *Id.* 3M further argued that after being granted leave to serve this defendant by publication, plaintiff encountered great difficulty serving Marcos in Sri Lanka by publication. *Id.*

Second, plaintiff contended that it had reason to believe the registrant had actual notice of this lawsuit because it is likely that Marcos is the same or an affiliated person or entity as Luca Toni. *Id.* Specifically, plaintiff argued that the domain name owned by Luca Toni automatically redirected to the defendant domain name <thaimmm.net>, owned by Marcos; both entities provided invalid postal and e-mail addresses; both entities in registering their domain names provided likely fictitious names that are nearly identical to famous soccer players; and both entities listed addresses with apparently fictitious street names that mimic the country of residence (*i.e.*, an address on "Italian Street" in Italy for Luca Toni and an address on "SriLankanmatan Road" in Sri Lanka for Marcos). *Id.*

Third, plaintiff argued that all of the defendants in this case participated in a conspiracy respecting the activities that are the subject of this lawsuit. *Id.* The parties owned domain names for websites that were identical or substantially identical or were connected in some way with the domain name <mmmbet.net>, which was used as the cornerstone website for unlawful activities. *Id.* Fourth, plaintiff contended that on April 14, 2011, it contacted the hosting services for the defendant domain names, AttractSoft and SoftLayer, about the allegedly infringing content on these websites. Because AttractSoft subsequently removed the content from the defendant domain name, plaintiff argues that Marcos would have been made aware of plaintiff's objection to the content. *Id.* Finally, plaintiff argued that the purpose behind the ACPA to protect trademark owners from abusive domain name registrations is inconsistent with requiring the

trademark owner to bear the burden of extraordinary efforts to provide notice to a registrant who has provided false contact information in connection with its domain name registrations. *Id.*

In light of these arguments, on January 8, 2013, the District Judge, finding that the registrant Marcos did not appear to exist and that there seemed to be no reason to require notice by publication, entered an Order waiving the publication requirement of 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb). (Docket no. 189). 3M argues that based on the Order waiving publication, service was complete as of January 8, 2013 and any person claiming an interest in the defendant domain names was required to file an answer or other response to the complaint within 21 days from the date of entry of that Order. The twenty-one day time period for filing an answer or claim expired on January 29, 2013.

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). As shown in the declarations submitted by Wendy Larson in support of plaintiff's motion for leave to serve Marcos by publication (Docket no. 154-1), submitted by Steven Espenshade in support of plaintiff's motion to waive order of publication (Docket no. 184-2), and based on the District Judge's finding that 3M has made "significant and substantial efforts to locate and serve the registrant" and waiver of the publication requirement (Docket no. 189), 3M has complied with these provisions to the extent possible.

For these reasons, the undersigned recommends a finding that service of process as to the defendant domain names has been accomplished in this action.

## Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a), anyone asserting a claim to the defendant domain names was required to file an answer or response with the Clerk of Court by January 29, 2013, twenty-one days after service was deemed complete in the court's Order waiving the publication requirement of 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb). No responsive pleading or claim was filed by either the named registrant or anyone else claiming ownership to the defendant domain names and on March 3, 2013, 3M filed its request for entry of default as to <thailand3m.net> and <thaimmm.net>. (Docket no. 191). The Clerk of the Court entered a default on March 7, 2013 against each of the defendant domain names. (Docket no. 192). After obtaining these defaults, 3M filed its motion for default judgment and noticed it for a hearing on March 29, 2013. (Docket nos. 194, 196). 3M served a copy of the motion for default judgment, the memorandum in support and exhibits, and the notice of hearing by U.S. mail to the address in Sri Lanka provided by the registrant to the registrar. (Docket nos. 194, 195, 196).

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to the remaining defendant domain names in a timely manner, and that the Clerk of Court properly entered a default as to the defendant domain names.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). In the motion for default judgment, plaintiff seeks one of the available remedies for an *in rem* action: the transfer of the domain name to the owner of the mark. (Docket no. 195 at 11). In

particular, in the proposed order attached as an exhibit to the memorandum in support of the motion for default judgment, plaintiff seeks an Order that the defendant domain names be transferred to 3M by means of (a) directing the registry VeriSign to change the registrar of the defendant domain names to Markmonitor or another registrar of 3M's choosing and (b) directing the registrar Markmonitor or another registrar of 3M's choosing to transfer the defendant domain names to 3M.[6] (Docket no. 195-1).

As an initial matter, the court has already found that the registration and use of domain names including "3M" or "MMM" violates 3M's rights in its 3M mark. (Docket nos. 125, 143, 173, 174). Moreover, the court's finding that 3M was entitled to a preliminary injunction concerning all of the domain names necessarily implies that the court has already found that 3M had a likelihood of success on the merits of its claims. (Docket no. 46).

**Trademark Infringement and Unfair Competition (Counts I and III)**

To prevail on its claims for trademark infringement and unfair competition under the Lanham Act, 3M must establish that it has a valid, protectable trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). There is little doubt that 3M has carried its burden on these claims.

As alleged in the complaint, 3M has obtained hundreds of U.S. registrations for the 3M mark and those registrations are valid and subsisting. (Compl. ¶ 49). Many of those

---

[6] Given the limited remedies available in this *in rem* action, 3M has not presented any evidence to support an award of damages for the claims in counts VII and VIII for unjust enrichment and violation of Virginia's business conspiracy statute in this motion for default judgment. While the motion for default judgment makes a reference to those non-Lanham Act counts, it does not seek specific relief under those counts. Moreover, since the injunctive relief being sought in the motion for default judgment is based on violations of the Lanham Act and the *in rem* provisions of the ACPA, only those claims will be addressed in this section.

registrations are incontestable pursuant to 15 U.S.C. § 1065. *Id.* Accordingly, there is no question that 3M has a valid, protectable trademark.

A review of the defendant domain names and the websites offered at those domain names reveals that the use of the 3M mark or an imitation of that mark is likely to cause confusion among consumers. In assessing the likelihood of confusion issue, the Fourth Circuit has identified seven factors that should be considered: (1) the strength or distinctiveness of the [plaintiff's] mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 933 (4th Cir. 1995). Not all of these factors will be relevant in every trademark dispute and there is no need for each factor to support plaintiff's position on the likelihood of confusion issue, but the first factor -- the strength or distinctiveness of the plaintiff's mark -- is important to an assessment of the confusion issue. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). As discussed below, the 3M mark is not only distinctive, it has become a famous mark through its long use and promotion by the plaintiff. The uses of the 3M mark and imitations of that mark on the websites appearing at the defendant domain names support a finding of likelihood of confusion. Furthermore, plaintiff does provide goods and services used in the casino gaming industry (Compl. ¶ 38), so there is some similarity of the goods and services. Plaintiff has a significant presence on the internet and operates its own website at <www.3m.com>. (Compl. ¶ 42). While there is no direct evidence of the intent of the registrant in registering the defendant domain names, plaintiff has alleged that the registrant of the infringing defendant domain names intended to cause confusion and trade on 3M's vast goodwill

18

in the 3M mark (Compl. ¶ 72) and it is difficult to believe that the prominent use of the 3M mark was for any reason other than to trade on plaintiff's goodwill in that mark.

Each of the defendant domain names contains either "mmm" or "3M" as a part of the domain name. (Compl. ¶ 6). Based on the screenshot submitted by plaintiff from April 14, 2011, the website available at <thaimmm.net> contains, or at some point contained, a prominent use of the 3M mark on the banner at the top of the website. (Docket no. 184-2, Ex. 1). The website available at <thailand3m.net> also prominently displayed the 3M mark at one point.[7] (Docket no. 13-3, Ex. B). By use of the 3M mark and variations of the 3M mark, the defendant domain names <thaimmm.net> and <thailand3m.net> infringe or have infringed the 3M mark by containing the 3M mark or a variation of the 3M mark as part of the domain name and by displaying the 3M mark on the website available at the domain name.

For these reasons, the undersigned recommends a finding that the defendant domain names have infringed plaintiff's 3M mark in violation of 15 U.S.C. § 1114(1) and that their use of the 3M mark constitutes unfair competition under 15 U.S.C. § 1125(a).

**Trademark Dilution (Count II)**

To show trademark dilution, plaintiff must show that it owns a famous mark and that the use of that mark by another in commerce is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. *Volkswagen v. Volkswagentalk.com*, 584 F. Supp. 2d 879, 882 (E.D. Va. 2008). A mark is considered famous under the Lanham Act "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services

---

[7] Plaintiff states that following correspondence with the hosting service AttractSoft on April 14, 2011, content displayed at <thailand3m.net> was removed. (Espenshade Decl. at ¶ 4). Plaintiff has provided no new information about content that is currently displayed at this domain name.

of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) the degree of similarity between the mark or trade name and the famous mark; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) the degree of recognition of the famous mark; (v) whether the user of the mark or trade name intended to create an association with the famous mark; and (vi) any actual association between the mark or trade name and the famous mark. 15 U.S.C. § 1125(c)(2)(B). Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark. 15 U.S.C. § 1125(c)(2)(C).

The allegations in the complaint support a finding that the 3M mark is famous and that use of the famous 3M mark by the registrant of the defendant domain names in operating the online gambling websites located at the defendant domain names blurs and tarnishes plaintiff's famous mark. Plaintiff has used the 3M mark since 1906, it offers more than 50,000 products and services in a wide variety of fields and markets under the 3M mark, the 3M mark is distinctive and distinguishes the source of plaintiff's products and services, and plaintiff has

obtained hundreds of registrations for the 3M mark for numerous products and services. (Compl. ¶¶ 36, 37, 45, 49).

Given the prominent use of plaintiff's famous 3M mark and imitations of that mark as part of the defendant domain names and on the websites located at the defendant domain names, the distinctiveness of the 3M mark, the wide recognition by the consuming public of the 3M mark as a source of plaintiff's goods and services, the apparent attempt to trade on plaintiff's goodwill by using the 3M mark, and the lack of any association between the registrant of the defendant domain names or the defendant domain names and the plaintiff, the undersigned recommends a finding that the actions of the registrant in registering the defendant domain names constitutes dilution by blurring under 15 U.S.C. § 1125(c)(2)(B). In addition, given the use of the 3M mark in the operation of online gambling websites, the undersigned recommends a finding that the actions of the registrant in registering the defendant domain names and the use of the 3M mark on the websites located at the defendant domain names constitutes dilution by tarnishment under 15 U.S.C. § 1125(c)(2)(C).

**Cybersquatting (Count IV)**

The Anti-Cybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d) imposes civil liability on a person who

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark....

To state a claim under the ACPA, 3M must prove that the defendant domain names and/or their registrant registered, trafficked in, or used the defendant domain names with a bad faith intent to profit and that the defendant domain names are either identical or confusingly similar to a distinctive mark owned by 3M, or, upon a finding that a mark owned by 3M is famous, that the defendant domain names are identical or confusingly similar to, or dilutive of, 3M's famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registration of the 3M mark on the Principal Register is *prima facie* evidence that the mark is at least descriptive and has acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001).

Having previously recommended a finding that the 3M mark is famous and that the domain names and/or websites offered at those domain names infringe and dilute the famous 3M mark, the remaining issue for a claim under the ACPA for these defendant domain names that contain the 3M mark or a confusingly similar mark is whether the defendant domain names were registered or used with bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the defendant domain names were registered and used with the bad faith intent to profit from the 3M mark:

1.     The 3M mark, which has been incorporated into the defendant domain names, is at least distinctive within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

2.     The registrant of the defendant domain names does not have any valid trademark or intellectual property rights in the 3M mark or the defendant domain names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3.     None of the defendant domain names consist of the registrant's legal name, the ownership records do not contain a name that is commonly used to identify the legal owner, nor

do the defendant domain names in any way identify the registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4.     The registrant has not used the defendant domain names in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III) in that none of the defendant domain names is being used to sell 3M's goods or services, the only *bona fide* use of the 3M mark;

5.     The registrant has not used the defendant domain names for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV) in that the defendant domain names are being used for a purely commercial purpose, online gambling, and they do not contain any commentary about or comparisons to plaintiff's actual goods or services;

6.     The registrant's intent in obtaining the registrations for the defendant domain names and using those domain names was to divert 3M's consumers and to profit from the goodwill of the 3M mark, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V).  The wholesale incorporation of plaintiff's 3M mark indicates that the intent behind the registration and use of the defendant domain names was to trade upon plaintiff's goodwill in the 3M mark;

7.     The registrant has provided material and misleading false contact information in applying for the registrations of the domain names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VII) in that Marcos listed either fictitious or non-existent addresses in registration agreements with the registrars of the defendant domain names; and

8.     The registrant has registered or acquired more than one domain name known to be confusingly similar to the 3M mark within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

For these reasons, the undersigned recommends a finding that the defendant domain names and/or the registrant of the defendant domain names have violated the ACPA.[8]

**Relief Sought**

Despite its discussion of the basis for default judgment on all of the counts in the complaint, plaintiff's motion for default judgment properly seeks only a remedy that is available for an *in rem* action. The *in rem* provisions of the ACPA provide that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision").

For these reasons, the undersigned magistrate judge recommends a finding that the registrant's actions have violated the ACPA. The undersigned further recommends that an Order be entered requiring VeriSign, Inc. to change the registrar of record for the defendant domain names <thailand3m.net> and <thaimmm.net> to Markmonitor.com or a registrar specified by 3M and requiring Markmonitor.com or such other registrar as specified by 3M to register the defendant domain names in the name of 3M.[9]

---

[8] The undersigned notes that plaintiff's demonstration that the defendant domain names and/or the registrant of the defendant domain names have violated the ACPA is sufficient to grant the relief sought by plaintiff in this motion, despite the other Lanham Act claims pursued by plaintiff in the motion for default judgment and discussed in this proposed findings of fact and recommendations.

[9] This proposed relief differs slightly from the relief requested in the motion for default judgment and it was discussed with and agreed to by plaintiff's counsel during the hearing on March 29, 2013.

## **NOTICE TO PARTIES**

Failure to file written objections to these proposed findings of fact and recommendations within fourteen (14) days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

A copy of these proposed findings of fact and recommendations shall be sent to the registrant of the defendant domain names at Marcos (a/k/a 3M Specialist), 323 Srilankamatan Road, Colombo, 52211, Sri Lanka and by electronic means to <salamat1443@co.sr>.

ENTERED this ___ day of April, 2013.

_____/s/_____

John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia